Nos. 07-3605 and 08-1224

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

_____

DENNIS HECKER, JONNA DUANE, and JANICE RIGGINS,

     Plaintiffs-Appellants,

v.

DEERE & COMPANY, FIDELITY MANAGEMENT TRUST COMPANY
and  FIDELITY MANAGEMENT & RESEARCH COMPANY.

     Defendants-Appellees.

_____

On Appeal from the
United States District Court for the Western District of Wisconsin
Hon. John C. Shabaz
District Court No. 06-C-719-S

_____

JOINT CONSOLIDATED BRIEF AND REQUIRED SHORT APPENDIX
OF PLAINTIFFS-APPELLANTS,
DENNIS HECKER, JONNA DUANE and JANICE RIGGINS

_____

JEROME J. SCHLICHTER
DANIEL V. CONLISK
SCHLICHTER, BOGARD & DENTON
100 South Fourth Street, Ste. 900
St. Louis, MO 63102
(314) 621-6115
(314) 621-7151 (fax)

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court Nos.: 07-3605 and 08-1224

Short Caption: Hecker, *et al.* v. Deere & Company, *et al.*

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing the item #3):

Dennis Hecker, Jonna Duane, and Janice Riggins

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Schlichter, Bogard & Denton, 100 S. 4th Street, St. Louis, MO  63102

Solheim Billing & Grimmer, S.C., U.S. Bank Plaza, Ste. 301, One South Pinckney Street, PO Box 1644, Madison, WI 53701

(3) If the party or amicus is a corporation:

N/A

Attorney's Signature: /s/Jerome J. Schlichter      Date: March 6, 2008

Attorney's Printed Name:   JEROME J. SCHLICHTER

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). Yes X   No ___.

Address: 100 S. 4th Street, Ste. 900, St. Louis, MO  63102

Phone Number: (314) 621-6115;  Fax Number: (314) 621-7151

E-Mail Address: jschlichter@uselaws.com

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ........................................................... 1

STATEMENT OF ISSUES ................................................................... 2

STATEMENT OF THE CASE ................................................................ 3

STATEMENT OF FACTS ..................................................................... 5

SUMMARY OF ARGUMENT ................................................................. 7

ARGUMENT .................................................................................... 14

I.    Standard of Review ................................................................ 14

II.   The SAC States A Claim for Breach of Fiduciary Duty And the District
      Court Erred In Dismissing It. .................................................. 15

III.  The District Court Erred in Entering Judgment Based Upon the §404(c)
      Affirmative Defense Because That Defense Is Not Available for Fiduciary
      Breaches Involving The Selection Of Investment Options And Monitoring
      Their Performance And Costs. ................................................. 17

      A.    ERISA §404(c) And Its Regulations Make Clear That The §404(c)
            Defense Is Not Available Here. ....................................... 17

      B.    The Vast Majority of Courts And Commentators Agree That The
            §404(c) Defense Is Not Available For The Fiduciary Breaches That
            the Court Presumed Occurred Here. ................................ 19

      C.    The District Court Erred in Granting Defendants' Motion To Dismiss
            Because, Even If The §404(c) Defense Were Available For Such
            Breaches of Fiduciary Duty, Defendants Have Not Established It. 22

            1.    Defendants Bear The Burden of Proving the §404(c)
                  Affirmative Defense .......................................... 22

            2.    Defendants Have Not Shown That They Qualify For The
                  §404(c) Affirmative Defense. ............................... 23

                  a.    The SAC Includes No Allegations, Nor Gives Rise to Any
                        Inferences, That Defendants Have Complied With
                        §404(c)'s Extensive Requirements. ................. 23

b.    The SAC Alleges, And Gives Rise to Inferences, That Defendants Concealed Material Information, Rendering Them Ineligible For §404(c) Protection. ......................25

c.    The Exhibits Defendants Attached To The Motions To Dismiss Do Not Establish Their Compliance With Each Element of §404(c). ......................................................27

IV.    The District Court Erred In Finding That Defendants' Misrepresentations And Concealment Were Not A Breach Of Fiduciary Duty. ........................29

A.    ERISA Requires Defendants To Provide Complete and Truthful Information To Participants. ............................................................29

B.    The District Court Erred in Analyzing the Plans' *Regulatory* Responsibility to Make Disclosures *to the Department of Labor*, Rather Than Defendants' *Fiduciary* Duties of Candor and Disclosure *to Participants.* ....................................................................33

V.    *Langbecker v. EDS*, On Which The Court Principally Relies, Is Wrong As A Matter Of Law And Distinguishable On Its Facts. ....................................35

A.    *Langbecker* Is Wrong As A Matter Of Law. .....................................35

B.    *Langbecker* is Distinguishable on Its Facts. ....................................36

VI.    The District Court Erred in Dismissing Plaintiffs' Claims Against Fidelity. 37

A.    The District Court Ignored the Undisputed Fact that Fidelity Was A Fiduciary In Some Capacity. ............................................................38

B.    The District Court Failed to Apply ERISA's Functional Definition of "Fiduciary." ........................................................................................38

1.    ERISA Requires Consideration of Fidelity's Actual Role in the Plans. ......................................................................................38

2.    Deere And Fidelity Can Be Fiduciaries Regarding The Same Plan Functions. ......................................................................39

3.    The District Court Misinterpreted the Trust Agreements. ....39

C.    Plaintiffs' Claims Against Fidelity Should Survive Defendants' Motions to Dismiss. ..........................................................................40

1.  Because ERISA Requires A Fact-Intensive Inquiry, Courts Should Not Determine Fiduciary Status In A 12(b)(6) Motion. ...................................................................... 40

2.  The SAC Sufficiently Alleges That The Fidelity Defendants Were Fiduciaries. ................................................. 41

    a.  The SAC Sufficiently Alleges FMRCo's Status As A Fiduciary. ......................................................... 41

    b.  The SAC Sufficiently Alleges FMTC's Status As A Fiduciary. ......................................................... 42

VII.    By Considering Evidence Outside The Pleadings, The District Court Improperly Converted Defendants' Motions to Dismiss Into Motions for Summary Judgment. ..................................................................... 43

VIII.   The District Court's Decision Destroys ERISA's Protection Of Retirees... 45

IX.     The District Court Erred In Denying Plaintiffs Motion to Alter Or Amend The Judgment Under Rule 59, And Their Request To Amend, Because Newly-Discovered Evidence Proved Plaintiffs' Claims Were Well-Founded and Refuted Defendants' §404(c) Defense. ................................................... 47

    A.  Standard of Review. ........................................................... 47

    B.  Newly-Discovered Evidence Confirms That Plaintiffs' Claims Are Well-Founded and Should Have Been Such Allowed To Proceed, Or, Alternatively, The Court Should Have Considered Such Evidence If It Converted The Motions To Dismiss Into Motions For Summary Judgment. ........................................................ 47

X.      The District Court Erred In Holding That Plaintiffs Must File An Amended Complaint Setting Forth Newly Discovered Evidence To Prevail On A Rule 59(e) Motion. ................................................................. 52

XI.     The District Court Erred in Awarding Costs to Defendants. .................... 53

    A.  The District Court Wrongly Awarded Fidelity $141,022 in Unrecoverable "Processing" Costs. .................................. 53

    B.  The District Court Wrongly Awarded Deere Excessive Costs for Document Duplication. ...................................................... 54

CONCLUSION. ...................................................................... 55

# TABLE OF AUTHORITIES

## *Cases*

*Abbott v. Lockheed Martin*, No. 06-0701, 2007 WL 2316485 (S.D.Ill. Aug. 13, 2007) ..................................................................................................33

*Airborne Beepers & Video v. AT&T Mobility*, 499 F.3d 663, 667-68 (7th Cir. 2007) ...................................................................................................14

*Allen v. United States Steel*, 665 F.2d 689, 697 (5th Cir. 1982) ...........................54

*Allison v. Bank One Denver*, 289 F.3d 1223, 1238 (10th Cir. 2002) ......................22

*American Fed'n of Unions v. Equitable Life Assurance Soc'y*, 841 F.2d 658, 662-63 (5th Cir. 1988) ...................................................................................39

*Baker v. Kingsley*, 387 F.3d 649, 664 (7th Cir. 2004) ...........................................14

*Beck v. Pace Int'l Union*, 127 S. Ct. 2310, 2317 (2007) ...........................................35

*Bell Atlantic v. Twombly*, 127 S.Ct. 1955, 1964 (2007) ...........................................14

*Blatt v. Marshall and Lassman*, 812 F.2d 810, 812-13 (2d Cir. 1987) .............38, 39

*Boxerman v. Walmart Stores*, 226 F3d 574, 590 (7th Cir. 2000) ...........................30

*Brock v. Robbins*, 830 F.2d 640, 644, 648 (7th Cir. 1987) ................................15, 39

*Brosted v. Unum Life Ins. Co. of Am.*, 421 F.3d 459, 465 (7th Cir. 2005) .............16

*Central States, Southeast and Southwest Areas Pension Fund v. Central Transport*, 472 U.S. 559, 569-71 (1985) ................................................................45

Chicago District Council of Carpenters Welfare Fund v. Caremark, 474 F.3d 463 (7th Cir. 2007) ......................................................................................42

*Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995) ...........................................14

*Conley v. Gibson*, 355 U.S. 41, 47 (1957) ................................................................14

*Del Rio v. Toledo Edison Co.*, 2005 WL 1001430 at *3 (6th Cir. 2005) .................30

*DiFelice v. U.S. Airways, Inc.*, 397 F.Supp.2d 758, 775-77 (E.D. Va. 2005) ....20, 21

*DiFelice v. U.S. Airways, Inc.*, 404 F. Supp. 2d 907, 909 (E.D. Va. 2005).............36

*DiFelice v. U.S.Airways,* 497 F.3d 410, 420-21 (4th Cir. 2007) .................15, 19, 21

*E.E.O.C. v. Concentra Health Services,* 496 F.3d 773, 776 (7th Cir. 2007) ...........14

*E.E.O.C. v. V. & J. Foods, Inc.,* 507 F.3d 575, 580  (7th Cir. 2007) .......................22

*EEOC v. Kenosha Unified S. Dist. No. 1*, 620 F.2d 1220, 1227-28 (7th Cir. 1980) 54

*Franklin v. First Union Corp.,* 84 F.Supp.2d 720, 732 (E.D.Va. 2000) .................19

*Griggs v. E.I. DuPont de Nemours,* 237 F.3d 371, 381-84 (4th Cir. 2001) ............30

*Haddock v. Nationwide Financial Services*, 419 F.Supp.2d 156 (D.Conn. 2006)...41

*Howe v. Varity,* 36 F.3d 746, 753-54 (8th Cir. 1994)...............................................31

*In re AEP ERISA Litig.*, 327 F.Supp.2d 812, 829-30 (S.D. Ohio 2004) .................22

*In re Cardinal Health, Inc., ERISA Litig.,* 424 F.Supp.2d 1002, 1030 (S.D.Ohio
      2006) ................................................................................................................40

*In re CMS Energy ERISA Litig.,* 312 F.Supp.2d 898, 909 (E.D.Mich. 2004).........40

*In re Dynegy, Inc. ERISA Litig.,* 309 F.Supp.2d 861, 893-94 (S.D.Tex. 2004).18, 19

*In re Elec. Data Sys. Corp. "ERISA" Litig.*, 305 F.Supp.2d 658, 672-73 (E.D.Tex.
      2004) ................................................................................................................40

*In re Enron Corp. Sec., Derivative & ERISA Litig.,* 284 F.Supp.2d 511, 574-79
      (S.D.Tex. 2003) .............................................................................................18, 19

*In re Ferro Corp. ERISA Litig.*, 422 F.Supp.2d 850 (D.Ohio 2006) .......................24

*In re Mut. Funds Inv. Litig.*, 403 F.Supp.2d 434, 448 (D.Md. 2005) .....................23

*In re Prince*, 85 F.3d 314, 324 (7th Cir. 1996) .......................................................47

*In re Reliant Energy ERISA Litig.*, 336 F.Supp.2d 646, 669 (S.D. Tex. 2004) ......23

*In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 446 n. 24 (3d Cir. 1996)...............24, 36

*In re WorldCom, Inc.*, 263 F.Supp.2d 745, 763-65 (S.D.N.Y. 2003)........................19

*In re Xcel Energy,* 312 F.2d 1165, 1178-79 (D.Minn. 2004)...................................40

*Johnson v. Georgia-Pacific*, 19 F.3d 1184, 1189 (7th Cir. 1994) ............................ 41

*Kalda v. Sioux Valley Physician Partners*, 2007 WL 925245 at * 3 (8th Cir. 2007) ................................................................................................................ 30

*Kamler v. H/N Telecomm. Serv., Inc.*, 305 F.3d 672, 681 (7th Cir. 2002) .............. 30

*Kanawi v. Bechtel,* No. C 06-05566 CRB, at 4-5 (N.D.Cal. May 15, 2007) ...... 28, 32

*Kurzweil v. Philip Morris Companies,* 1997 WL 167043 (S.D.N.Y. 1997) ............. 48

*LaRue v. DeWolff, Boberg & Assocs.,* 128 S.Ct. 1020, 1025 (2008) ................... 7, 45

*Leigh v. Engle*, 727 F.2d 113, 122-23 (7th Cir. 1984) ............................................. 24

*Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998) ..................................... 44

*Lively v. Dynegy,* 2007 WL 685861 at *8, *9-*13 & *11 n.5 (S.D.Ill. Mar. 2, 2007) ................................................................................................................ 18, 19

*Majeske v. City of Chicago*, 218 F.3d 816, 824 (7th Cir. 2000) .............................. 53

*Martin v. Feilen*, 965 F.2d 660, 664 (8th Cir. 1992) ............................................... 24

*McMillan v. Collection Professionals Inc.*, 455 F.3d 754, 758 (7th Cir. 2006) ....... 14

*Mertens v Hewitt Assocs.*, 508 U.S. 248, 262 (1993) ......................................... 37, 38

*Midlock v. Apple Vacations West*, 406 F.3d 453, 457-58 (7th Cir. 2005) .............. 19

*Northbrook Excess & Surplus Insur. v. Proctor & Gamble,* 924 F.2d 633, 642 (7th Cir. 1991) ................................................................................................... 53

*Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449 (7th Cir. 1998) ................................................................................................... 44

*Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) .................... 48

*Peacock v. Bd. Of School Commissioners of City of Indianapolis,* 721 F.2d 210, 213 (7th Cir. 1983) ................................................................................................... 48

*Peoria Union Stockyards Co. v. Penn Mutual Life Ins. Co.*, 698 F.2d 320, 326 (7th Cir.1983) ................................................................................................... 30

*Peralta v. Hispanic Business, Inc.*, 419 F.3d 1064, 1071-72 (9th Cir. 2005) .......... 30

*Perez v. Illinois*, 488 F.3d 773, 776 (7th Cir. 2007) ..................................................14

*R.J.R. Services v. Aetna Casualty & Sur.,* 895 F.2d 279, 281 (7th Cir. 1989) .......43

*Rankin v. Rots*, 278 F. Supp. 2d 853, 872-73 (E.D. Mich. 2003).................23, 40, 42

*Rothner v. City of Chicago,* 929 F.2d 297, 302 (7th Cir. 1991) ..............................15

*Rud v. Liberty Life Assurance Co.*, 483 F.3d 772, 774-75 (7th Cir. 2006).............39

*Ruiz v. Continental Cas.,* 400 F.3d 986, 990 (7th Cir. 2005) ..................................38

*Schmidt v Sheet Metal Workers' Nat'l Pension Fund*, 128 F.3d 541, 548-49 (7th Cir. 1997) ...............................................................................................................30

*Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996)..............................47

*Shea v. Esensten*, 107 F.3d 625, 628 (8th Cir.1997) .........................................30, 31

*Siemers v. Wells Fargo & Co.*, 2007 WL 1140660 at *6-10 (N.D.Ca. 2007) ...........27

*Siemers v. Wells Fargo & Co.*, 2007 WL 760750, *12-15 (N.D.Ca. 2007).........26, 29

*SK Hand Tool v. Dresser Indus.,* 852 F.2d 936, 943 (7th Cir. 1988) ...............15, 53

*Taylor v. United Technologies,* No. 06-1494, 2007 WL 2302284 (D.Conn. Aug. 9, 2007) .....................................................................................................................33

*Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002) ..............................................43

*Travel Over the World v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1430 (7th Cir. 1996) .....................................................................................................................43

*Tussey v. ABB, Inc.*, 2008 WL 379666 at *3 (W.D.Mo. Feb. 11, 2008) .......27, 28, 41

*Twohy v. First Nat'l Bank*, 758 F.2d 1185, 1196 (7th Cir. 1985)...........................52

*U.S. v. Metropolitan St. Louis Sewer Dist.*, 440 F.3d 930 n.3 (8th Cir. 2006).......48

*Valone v. CNA Financial Corp.*, 375 F.3d 623, 640-41 (7th Cir. 2004) ............30, 31

*Varity Corp. v. Howe,* 516 U.S. 489, 506 (1996) ...............................................29, 30

*Woods v. Southern Co.*, 396 F.Supp.2d 1351, 1367 (N.D. Ga. 2005) .....................23

*Statutes*

28 U.S.C. §1291 .................................................................................. 1

28 U.S.C. §1331 .................................................................................. 1

29 U.S.C. §§1109 ............................................................................... 1

29 U.S.C. §1001 ............................................................................... 45

29 U.S.C. §1002(21)(A) ................................................................... 38

29 U.S.C. §1104(a)(1) ...................................................................... 15

29 U.S.C. §1104(a)(1)(A)(i)&(ii) ...................................................... 15

29 U.S.C. §1104(c)(1)(B) ................................................................. 17

29 U.S.C. §1132(e)(1) ........................................................................ 1

ERISA §1132 (a)(2) and (3) .............................................................. 1

ERISA §404(a)(1)(A)(i)&(ii) ............................................................. 15

ERISA §409 ........................................................................................ 1

ERISA §502(a)(2) ......................................................................... 1, 36

ERISA §502(a)(3) ............................................................................... 1

## Other Authorities

Amended Brief of the Secretary of Labor as Amicus Curiae, *In re Enron Corp. Sec. Derivative & ERISA Litig.*, 284 F.Supp. 2d 511 (S.D.Tex. 2003) (No. CIV.A.H-01-3193), 2002 WL 32913114 ............................................................. 18

Brief of Amicus Curiae Elaine L. Chao, Secretary of the United States Department of Labor, *In re Schering-Plough Corp. ERISA Litig.,* 420 F.3d 231 (3d Cir. 2005) (No. 04-3073), 2004 WL 5215266 ................................ 18

Brief of Elaine Chao, Secretary, Department of Labor as Amicus Curiae, *Langbecker v. EDS*, 476 F.3d 299 (5th Cir. 2007) (No. 04-41760) ...................... 18

Brief of the Secretary of Labor, Elaine L. Chao, as Amicus Curiae, *Lively v. Dynegy*, 07-2073 (7th Cir. 2007), 2007 WL 3081709 ........................... 18

x

Dept. of Labor Op. No. 97-15A (1997), 1997 WL 277980, at \*3 ............................. 41

Dept. of Labor Op. No. 98-04A, at \*3 n.1 (1998), 1998 WL 326300 ....................... 18

Letter from the Pension and Welfare Benefits Administration, U.S. Department of Labor, to Douglas O. Kant (Nov. 26, 1997), 1997 WL 1824017, at \*2 ............... 18

United States Department of Labor, Advisory Council on Employee Welfare and Pension Benefit Plans, *Report of the Working Group on Fee and Related Disclosures to Participants* 1 (2004) .................................................................... 34

United States Department of Labor, Advisory Council on Employee Welfare and Pension Benefit Plans, *Report of the Working Group on Plan Fees and Reporting on Form 5500* (2004) .......................................................................... 47

## Rules

Fed.R.Civ.P. 10(c) ..................................................................................................... 43

Fed.R.Civ.P. 12(b) .................................................................................................... 43

## Regulations

29 C.F.R. §2550.404(c)(1)(d)(2) .................................................................................. 18

29 C.F.R. §2550.404c-1 ............................................................................................... 24

29 C.F.R. §2550.404c-1(a)(1) ..................................................................................... 19

29 C.F.R. §2550-404c-1(c)(2) ...................................................................................... 27

29 C.F.R. 2550.404c-1(c)(2)(ii) .................................................................................. 25

57 Fed. Reg. 46,922 (Oct. 13, 1992) ......................................................................... 18

Final Regulation Regarding Participant Directed Individual Account Plans (ERISA §404(c) Plans), 57 Fed.Reg. 46906, 46924 n.27 (Oct. 13, 1992) ............. 19

**APPELLANTS' BRIEF AND REQUIRED SHORT APPENDIX**

**JURISDICTIONAL STATEMENT**

Plaintiffs-Appellants Dennis Hecker, Jonna Duane and Janice Riggins brought suit pursuant to the Employee Retirement Income Security Act of 1974 (ERISA) §§409, 502(a)(2) and 502(a)(3), codified at 29 U.S.C. §§1109, 1132 (a)(2) and (3), on behalf of two 401(k) plans and their plan participants. Federal jurisdiction is based upon 28 U.S.C. §1331 and 29 U.S.C. §1132(e)(1).

This Court has appellate jurisdiction under 28 U.S.C. §1291, as this is an appeal from a final judgment entered by the U.S. District Court for the Western District of Wisconsin. The District Court entered judgment as to all parties and claims on June 22, 2007. Plaintiffs-Appellants timely filed a Rule 59 Motion to Alter or Amend Judgment on July 3, 2007. The District Court denied that motion on October 22, 2007. Plaintiffs timely filed a Notice of Appeal on October 25, 2007.

The District Court subsequently entered an Order on Bill of Costs on December 31, 2007. Plaintiffs-Appellants timely filed a Notice of Appeal of that Order on January 28, 2008.

## STATEMENT OF ISSUES

1.  Did the District Court err in dismissing the Second Amended Complaint ("SAC") based upon ERISA's §404(c) affirmative defense when the Department of Labor ("DOL") and the vast majority of courts and commentators agree that the defense is inapplicable to Plan fiduciaries' breaches, like those here, involving the selection of investment options and the monitoring of their performance and costs?

2.  Even if §404(c) were a defense to such fiduciary breaches, did the District Court err in dismissing the SAC based upon it where Defendants did not meet their burden of showing their compliance with its numerous elements and they misrepresented and concealed a litany of material information regarding the Plans' administration, fees and expenses, and the manner in which they are assessed against the Plan?

3.  In light of ERISA fiduciaries' extensive candor and disclosure obligations pursuant to their duties of loyalty, prudence and good faith, did the District Court err in holding that such obligations were not breached where Plan fiduciaries misrepresented and concealed material information about Plan expenses, how they are paid, who pays them, whether they are reasonable, and other material matters?

4.  Did the District Court err in disregarding ERISA's functional fiduciary analysis in determining that the Fidelity Defendants were not fiduciaries when the SAC alleged as a factual matter that they were functional fiduciaries?

2

5.  Did the District Court improperly convert Defendants' 12(b)(6) Motions into motions for summary judgment when it based its dismissal on more than 900 pages of extraneous materials submitted by Defendants?

6.  Did the District Court err in denying Plaintiffs' Motion to Alter Or Amend Judgment after Plaintiffs had submitted extensive evidence, garnered in the discovery process following 12(b)(6) motion briefing, which confirmed Plaintiffs' allegations of Defendants' fiduciary breaches and noncompliance with §404(c)?

7.  Did the District Court err in awarding Defendants costs for items not authorized under 28 U.S.C. §1920 and in awarding costs that were excessive and unnecessary?

## STATEMENT OF THE CASE

Plaintiffs filed their Complaint on December 8, 2006. R. 2. They amended it, as a matter of right, on December 28, 2006. R. 3.  They alleged that the fiduciaries of Deere & Company's ("Deere") 401(k) plans violated their ERISA fiduciary duties: by selecting investment options that assessed excessive fees and undisclosed administrative charges against the Plans; failing to ensure that the Plans paid only reasonable expenses; and failing to otherwise act as would a prudent expert and loyal fiduciary in managing 401(k) plans of similar size (over $3 billion) and character. R. 2 ¶38.

Fidelity Management Trust Company ("FMTC") and Fidelity Management & Research Company ("FMRCo")(collectively "Fidelity"), answered on January 23, 2007, and Deere answered on February 1, 2007. R. 11 and R. 21. The Court set a

September 2, 2007, trial date and a June 1, 2007, dispositive motions deadline. R. 20.

On March 2, 2007, Plaintiffs filed their SAC.  It differed from the earlier two Complaints only in that it corrected the identification of the Plans and added Plaintiff Riggins.  On March 9, 2007, the Fidelity Defendants moved to dismiss. R. 36.  On March 19, 2007, Deere moved to dismiss. R. 39.  By April 19, 2007, both motions were briefed and submitted. R. 54.

Discovery proceeded apace.  Deere and the Fidelity Defendants filed their Motions for Summary Judgment on June 1, 2007. R. 80 and R. 88.  While those motions were pending, the District Court granted both Motions to Dismiss and entered Judgment on June 22, 2007. R. 102 and R. 103, attached at Tabs A & B. Plaintiffs timely filed a Rule 59 motion. R. 104.  The Court denied that motion on October 22, 2007.  R. 112, attached at Tab C.  Plaintiffs filed their Notice of Appeal of both orders on October 25, 2007.  R. 113.

Defendants-Appellees filed Bills of Costs as Prevailing Parties on November 9 and November 20, 2007, to which Plaintiffs objected.  R. 116, 118, 121, 124.  The District Court entered an Order on Bill of Costs on December 31, 2007.  R. 132, attached at Tab D.  Plaintiffs-Appellants timely filed a Notice of Appeal of that Order on January 28, 2008.  R. 133.

On January 31, 2008, this Court on its own motion ordered that these appeals, Nos. 07-3605 and 08-1224, be consolidated.

4

## STATEMENT OF FACTS

Deere sponsors two ERISA 401(k) plans – the Savings & Investment Plan and the Tax-Deferred Savings Plan (collectively the "Plan" or "Plans").  A0003 ¶10, A00012 ¶30.  Plaintiffs are participants in the Plans. A0003-04  ¶¶12, 13, 16. The Plans are identical.  R. 39 ¶1 n. 1.

ERISA governs the Plans.  A00016-20 ¶¶47-61.  Plaintiffs allege that Defendants breached their fiduciary duties by selecting investment options that assessed excessive administrative fees against the Plans via Fidelity's undisclosed "revenue-sharing" program and thereby causing the Plans to pay unreasonable expenses, and by failing to exercise the prudence and loyalty ERISA requires of fiduciaries operating a $3 billion retirement plan. A00014 ¶39.

In 1991, Deere contracted with FMTC or its affiliates to provide all Plan services, including trustee, recordkeeping, investment management, and others. A00013 ¶34.  Deere agreed that the Plan would include *only* Fidelity investments managed by FMRCo. A00013 ¶35. The Plan offered almost exclusively Fidelity retail mutual funds. A00013 ¶36.

From 1991 through 2007, the parties amended their agreement 27 times to add new Fidelity services and products and to adjust the administrative costs initially paid by Deere, but later secretly shifted to the Plan by Fidelity's undisclosed "revenue-sharing" program.  A00013 ¶ 35; A00294 ¶¶18 & A00297

5

¶46.[1]  By ensuring that the Plans used only Fidelity products and services Defendants virtually guaranteed that the excess fees that the Plan paid to Fidelity would increase.  A0005 ¶21; A00297 ¶¶45-49.  Deere never sought to negotiate with Fidelity to secure competitive prices, nor did it enter the 401(k) Plan services market seeking better pricing.  Tab A; A0002-03 ¶16; Tab C.

Under these agreements, the amount of Plan administrative fees that Deere paid decreased over time as those fees were shifted to the Plan, and thus its participants, under Fidelity's undisclosed "revenue-sharing" program.  A00025 ¶90; A00295 ¶¶27-29.  Although Deere told participants that the Company paid the administrative costs of the Plan, in truth, under Fidelity's "revenue-sharing" program, the Plan and its participants were unknowingly paying all such costs.  A00020 ¶66; A00294 ¶18.  This amounted to millions of dollars each year. A00024 ¶87.

In the Fidelity revenue-sharing program, asset-based fees (expense ratios) that Fidelity assessed against Plan investment options (Fidelity mutual funds) – ostensibly collected for operation and investment management of the mutual funds – were inflated to collect excessive and unreasonable amounts for Plan administrative expenses. A00024 ¶87.  Fidelity unilaterally controlled these expense ratios, and the "revenue-sharing" allocation paid to Fidelity as Plan

---

[1] By agreement of the parties, Plaintiffs have withheld Exhibit 1 to the Declaration of Troy A. Doles, A00292-301, pending this Court's disposition of the Fidelity Defendants' Motion to Seal Joint Appendix, filed February 28, 2008.  A notation has been included in the Appendix, and Plaintiffs are prepared to submit this document immediately upon resolution of Fidelity's motion, which Plaintiffs oppose.

administrative fees. A00021-22 ¶¶71-74.  The resulting administrative fees assessed against the Plans were unreasonable for the services provided and, because they were asset-based, increased as Plan assets grew. A00023 ¶80.

Defendants disclosed none of this to participants, instead falsely representing that FMTC received no fees for its services, and either that the Company paid all administrative fees and/or that the Plan paid no administrative fees at all. A00020 ¶66.  Defendants concealed the existence of Fidelity's "revenue-sharing" program and a litany of other material information. A00031-33 ¶105.

## SUMMARY OF ARGUMENT

401(k) plans are quickly becoming working Americans' primary hope for retirement income.  *See LaRue v. DeWolff, Boberg & Assocs.,* 128 S.Ct. 1020, 1025 (2008).  Such plans are called "defined contribution" plans because the employer makes a fixed contribution – usually matching an employee's own – and the employee's account bears the risk of both investment losses and fees.[2]  Fees assessed against these plans, over time, significantly reduce assets available for retirement.[3]

The District Court's decision has staggering implications for 401(k) plans. ERISA mandates that 401(k) savings enjoy extensive fiduciary protections.  The

---

[2] These plans differ from the traditional American pension plan, a "defined benefit" plan, in which the employer bears the investment risk.

[3] The Government Accountability Office in 2006 noted that a 1-percentage-point difference in fees over a 20-year period would reduce an account balance at retirement by 17%. United States Government Accountability Office, *Private Pensions: Changes Needed to Provide 401(k) Plan Participants and the Department of Labor Better Information On Fees*, GAO-07-21, at 7 (Nov. 2006).

Court effectively erases those protections, holding that Plan fiduciaries may ignore the fees assessed against their 401(k) plans in selecting and retaining investment options – and enjoy immunity from their fiduciary breaches in doing so – as long as they blithely select a menu of retail mutual funds and provide a brokerage window. Thus, 401(k) plan participants would receive no more fiduciary protection and oversight than individual investors shopping for mutual funds on the Internet. Further, they would lose the substantial benefit that would otherwise derive from the bargaining leverage that accompanies large 401(k) plans. According to the District Court, as long as participants *might* receive prospectuses from such retail mutual funds, plan fiduciaries enjoy absolute immunity under §404(c). This would work a great harm on plans and their participants.

In reaching this result, the District Court *did not* hold that Plaintiffs failed to state a claim for breach of fiduciary duty; in fact it presumed they did. Plaintiffs alleged that Defendants breached their fiduciary duties by failing to prudently select Plan investment options; failing to monitor the performance of Plan investment options and their costs; through these breaches, causing the Plan to pay excessive and undisclosed administrative fees; failing to undertake any prudent process to understand and control such fees; and misrepresenting and concealing material information about such matters from Plan participants. A00028-33 ¶¶104, 105.

8

The District Court recognized that "Deere could have negotiated lower fees with Fidelity Research, or could have selected different funds from different providers with lower rates *but made no effort to do so*." Tab A pp. 4-5; Tab C p. 3 (emphasis added). The Court *"[a]ssum[ed] for purposes of the present motion that defendants failed to satisfy their fiduciary obligation to consider expenses when selecting mutual fund investment options"* but found that Defendants "are nevertheless insulated from liability by the [§404(c)] safe harbor provision because of the nature and breadth of funds made available to participants under the plans." Tab A pp. 6-17 (emphasis added). In denying Plaintiffs' Rule 59(e) Motion to Alter or Amend the Judgment, the District Court presumed "*that Deere's process in selecting investments was flawed and that Deere was ill-informed in its understanding of costs.*" Tab C p. 3 (emphasis added).

The Order does not rest upon a deficiency in Plaintiffs' claims, but rather on the Court's determination that §404(c)'s affirmative defense bars them. The §404(c) defense provides plan fiduciaries with protection from liability only where they comply with a lengthy list of statutory and regulatory requirements. The Court's finding that Defendants were entitled to §404(c) immunity turned upon the Plans' inclusion of retail Fidelity mutual funds as investment options and the inclusion of a costly brokerage window (with hidden payments to Fidelity). Through this window, participants would lose the Plans' fiduciary protections and be on their own in picking from thousands of mutual funds. Deere does not even suggest that it evaluated the myriad investments in the brokerage window for

9

prudence or reasonableness of fees.  Thus, Participants lacked the benefit of fiduciary review of brokerage window mutual funds and the benefit of the Plans' enormous bargaining power.

The DOL, the vast majority of courts and commentators, and the language of the statute and regulations make clear that the §404(c) defense does not apply to claims, like those here, that plan fiduciaries have breached their duties to prudently select investment options and to monitor their performance and costs. The reason for this is simple: §404(c)'s safe harbor applies only where fiduciary breaches or Plan losses *directly result* from participants' control over their individual accounts.  The defense necessarily is unavailable for fiduciary breaches involving the selection of Plan investment options and the monitoring of their performance and fees *exactly because* those functions are entirely within Plan fiduciaries' control and always precede participants' investment decisions. Participants have no authority over and play no role in them.

Even if §404(c)'s affirmative defense were theoretically available for the fiduciary breaches here, Defendants bear the burden of proving it.  They have not done so.  §404(c) regulations require that Defendants fulfill approximately 25 discrete preconditions to qualify for §404(c)'s safe harbor.  At the pleading stage, the Defendants have not made such a showing, the SAC does not contain allegations establishing them, and the District Court may not – as it did here – infer that Defendants may do so.

Moreover, on top of these 25 discrete preconditions, §404(c) regulations contain a "catchall" provision which denies §404(c)'s safe harbor where Defendants have concealed material information. Plaintiffs allege (and, in fact, the evidence shows) that Deere falsely assured participants that the Company pays the administrative costs of the Plans when, in actuality, such expenses are surreptitiously shifted to the Plan through Fidelity's undisclosed "revenue-sharing." Defendants also concealed a litany of material information regarding the Plan, its investment options and costs, conflicts of interest, administrative fees, how they are paid, and by whom. In light of this misrepresentation and concealment, Defendants cannot qualify for §404(c) protection.

Releasing Defendants from their duties of candor and disclosure, the District Court held that such misrepresentation and concealment did not constitute a breach of fiduciary duty because DOL regulations do not specifically require disclosure of information regarding "revenue-sharing." In so doing, the Court disregarded the clear law of this, and virtually every other, circuit, which holds that mere compliance with regulatory mandates – which are limited to a narrow band of fiduciary conduct – does not fulfill ERISA fiduciaries' obligations of candor and disclosure arising out of their duties of prudence, loyalty, and good faith. Fiduciary obligations require disclosure of, and candor regarding, information participants need to understand and protect their interests. Undisclosed compensation arrangements and conflicts of interest through which the Plan pays excessive and unreasonable fees certainly fall in this category.

11

In dismissing Plaintiffs' claims against Fidelity, the District Court failed to follow – and wholly ignored – this Court's controlling functional analysis for determining the fiduciary status of parties involved in ERISA plans. Instead, the District Court relied *entirely* upon the formal delineation of duties in trust agreements, even though this Court has cautioned that a party's actions, not its technical position according to plan documents, controls functional fiduciary status. The SAC alleges (and the evidence shows) that Fidelity exercises discretion over the Plans and Plan assets by, among other things, prescreening Plan investment options and unilaterally setting the amounts assessed against Plan assets as administrative and other fees.

To reach the foregoing conclusions, the District Court relied extensively on approximately 900 pages of materials that Defendants submitted with their 12(b)(6) Motions. These materials were neither attached to nor, referenced in the SAC, and they are not central to Plaintiffs' claims. The District Court thus improperly converted Defendants' 12(b)(6) Motions into motions for summary judgment.

In the interim between briefing of the Motions to Dismiss and the District Court's Order, Plaintiffs obtained, and were in the process of obtaining, substantial discovery that confirmed and expanded the factual bases of their claims. In their Rule 59(e) Motion, Plaintiffs submitted this newly-discovered evidence and requested that the Court alter its dismissal or grant them leave to amend. The evidence overwhelmingly showed that the Defendants profoundly

abdicated their fiduciary obligations to operate the Plan prudently and solely in the interest of participants, instead making it a cash cow for Fidelity. The District Court nonetheless denied Plaintiffs' Rule 59(e) Motion. It erred in doing so.

Finally, Defendants filed Bills of Costs as Prevailing Parties, in which they requested reimbursement far exceeding that which is properly taxable under 28 U.S.C. §1920. Plaintiffs objected in great detail. The District Court entered an Order on Bill of Costs that erroneously awarded Defendants reimbursement for unreasonable and unnecessary expenditures and for items that are not allowable under §1920.

This Court should reverse the District Court's Order and Judgment of Dismissal and its denial of the Rule 59(e) Motion; remand to the District Court with instructions that the case proceed to trial, or, alternatively, that Plaintiffs be granted leave to amend; and, in light of the extensive evidence Plaintiffs submitted in their Rule 59(e) Motion, rule that genuine issues of material fact exist so as to preclude summary judgment and require a trial. In addition, this Court should reverse the District Court's Order on Bill of Costs.

# ARGUMENT

## I.    Standard of Review

This Court reviews an order granting a Rule 12(b)(6) motion *de novo.*
*McMillan v. Collection Professionals Inc.*, 455 F.3d 754, 758 (7th Cir. 2006).  To
the extent the District Court considered facts outside the pleadings, thereby
improperly converting the putative Rule 12 motion into a Rule 56 motion, this
Court's review is also *de novo.  Perez v. Illinois*, 488 F.3d 773, 776 (7th Cir. 2007).

To state a claim under Rule 12(b)(6), a complaint need only include a "short
and plain statement …showing that the pleader is entitled to relief." Fed. R. Civ.
Proc. 8(a)(2).  A complaint need only (1) give "fair notice of what the . . . claim is
and the grounds on which it rests," and (2) "plausibly suggest that the plaintiff
has a right to relief." *E.E.O.C. v. Concentra Health Servs.,* 496 F.3d 773, 776 (7th
Cir. 2007)(quoting *Bell Atlantic v. Twombly*, 127 S.Ct. 1955, 1964 (2007)(quoting
*Conley v. Gibson,* 355 U.S. 41, 47 (1957))).[4]  In breach of fiduciary duty cases, this
standard is applied liberally, because "facts will frequently be in the exclusive
possession of the breaching fiduciary." *Concha v. London,* 62 F.3d 1493, 1503 (9th
Cir. 1995); *see also Baker v. Kingsley,* 387 F.3d 649, 664 (7th Cir. 2004).  Further,
Plaintiffs' claims, although based on well-established fiduciary law, are in some
ways the first of their kind.  They are profoundly significant to millions of

---

[4]The Seventh Circuit has expressed doubt that the Supreme Court's recent decision in
*Bell Atlantic v. Twombly,* 127 S.Ct. 1955 (2007), changed federal pleading requirements.
*See E.E.O.C. v. Concentra Health Services*, 496 F.3d 773, 782 n.4 (7th Cir. 2007);
*Airborne Beepers & Video v. AT&T Mobility*, 499 F.3d 663, 667-68 (7th Cir. 2007).

Americans.  Thus, dismissal on the pleadings is particularly inappropriate.  *See*

*Rothner v. City of Chicago,* 929 F.2d 297, 302 (7th Cir. 1991).

In reviewing the District Court's Order on Bill of Costs, the Court of Appeals

must "review carefully whether an expense is recoverable." *SK Hand Tool v.*

*Dresser Indus.,* 852 F.2d 936, 943 (7th Cir. 1988).  Once the Court of Appeals has

determined that there is "statutory authority for allowing a particular item to be

taxed as a cost," then the District Court's determination that allowed costs are

reasonable is reviewed for abuse of discretion.

## II.    The SAC States A Claim for Breach of Fiduciary Duty And the District Court Erred In Dismissing It.

ERISA requires fiduciaries to administer the Plan for the *exclusive* purpose of

"providing benefits to participants and their beneficiaries" and "defraying

reasonable expenses of administering the plan."  ERISA §404(a)(1)(A)(i)&(ii), 29

U.S.C. §1104(a)(1)(A)(i)&(ii).  They must discharge their duties "with respect to a

plan solely in the interest of the participants and beneficiaries." 29 U.S.C.

§1104(a)(1).  They must also do so "with the care, skill, prudence, and diligence

under the circumstances then prevailing that a prudent man acting in a like

capacity and familiar with such matters would use in the conduct of an enterprise

of a like character and with like aims." *Id.* §1104(a)(1)(B) (the prudent expert

rule).  Fulfilling this duty of prudence requires a proper process and thorough

investigation.  *See DiFelice v. U.S.Airways,* 497 F.3d 410, 420-21 (4th Cir. 2007);

*Brock v. Robbins*, 830 F.2d 640, 644, 648 (7th Cir. 1987).

Here, the SAC alleges that Defendants breached these duties by, among other things, failing to employ appropriate methods to investigate the fees charged to the participants, and as a result of this failure, imprudently selecting investment options, causing excess administrative expenses, and failing to ensure that Plan assets were used for the exclusive purpose of providing benefits to participants. A0004-06 ¶¶ 18-23, A00017-24 ¶¶53-87, A00031-32 ¶¶105(a), 105(b), 105(f),105(g), 105(j).  Based on these allegations, the District Court recognized that "Defendant Deere could have negotiated lower fees with Fidelity Research, or could have selected different funds from different providers with lower rates *but made no effort to do so.*"  Tab B.

Appellants respectfully submit that these allegations state a claim for breach of fiduciary duty. *See Brosted v. Unum Life Ins. Co. of Am.,* 421 F.3d 459, 465 (7th Cir. 2005).  The District Court did not hold otherwise, instead finding that an unpleaded affirmative defense barred Appellants' claims: "[a]ssuming for purposes of the present motion that defendants failed to satisfy their fiduciary obligation to consider expenses when selecting mutual fund investment options, they are nevertheless insulated from liability by the [§404(c)] safe harbor provision because of the nature and breadth of funds made available to participants under the plans." Tab A pp.16-17.  As set forth below, the District Court erred.

16

III.    **The District Court Erred in Entering Judgment Based Upon the §404(c) Affirmative Defense Because That Defense Is Not Available for Fiduciary Breaches Involving The Selection Of Investment Options And Monitoring Their Performance And Costs.**

   A.  **ERISA §404(c) And Its Regulations Make Clear That The §404(c) Defense Is Not Available Here.**

ERISA §404(c), 29 U.S.C. §1104(c), provides that where a fiduciary proves it has fulfilled all conditions enumerated in §404(c),[5] it is not liable for losses to the plan that result from a participant's selection of investments in his/her account. 29 U.S.C. §1104(c)(1)(B). Thus, §404(c) shields fiduciaries from liability only for losses or breaches "which resulted from" participants' exercise of control. 29 U.S.C. §1104(c)(1)(B); *LaRue.,* 128 S.Ct. 1020 at 1025. Fiduciaries remain responsible for losses and fiduciary breaches that do not "result from" participants' exercise of control. Thus, §404(c) provides no defense to the fiduciary breach claims here, which arise out of Defendants' selection of investment options for the Plan, because such selection necessarily *precedes* – and cannot *result from* – a participant's decision.

DOL's §404(c) regulations reflect this. They provide that §404(c) is a potential defense for fiduciary breaches only where the loss is "the *direct and necessary result* of that participant's or beneficiary's exercise of control." 29 C.F.R.

---

[5] As discussed below in §III.C., Defendants have not made such a showing in this case. Moreover, the evidence submitted with Plaintiffs' Rule 59(e) Motion demonstrates that there are disputed issues of material fact requiring a trial on these issues. *See infra* §IX.B.

§2550.404(c)(1)(d)(2) (emphasis added); *see also id*. §(b)(2)(i)(B)(1)(i).  In issuing
these regulations, DOL emphasized that:

> the act of designating investment alternatives … in an ERISA
> section 404(c) plan is a fiduciary function to which the limitation on
> liability provided by section 404(c) is not applicable. All of the
> fiduciary provisions of ERISA remain applicable to both the initial
> designation of investment alternatives and investment managers
> and the ongoing determination that such alternatives and managers
> remain suitable and prudent investment alternatives for the plan.

57 Fed. Reg. 46,922 (Oct. 13, 1992).

DOL further emphasized that a fiduciary's act of selecting an investment
option for inclusion in the plan i*s not a direct and necessary result of any
participant action*:  "the plan fiduciary has a fiduciary obligation to prudently
select…[and] periodically evaluate the performance of [investment] vehicles to
determine … whether [they] should continue to be available as participant
investment options."  *Id.* n.27.

In short, under ERISA's language and the DOL's regulations, Defendants
always retain the fiduciary obligation to prudently choose Plan investment
options, to monitor them, and to remove them if they cease to be prudent.[6]

---

[6]DOL has consistently, and recently, reaffirmed this interpretation.  *See, e.g.,* Dept. of
Labor Op. No. 98-04A, at *3 n.1 (1998), 1998 WL 326300; Letter from the Pension and
Welfare Benefits Administration, U.S. Department of Labor, to Douglas O. Kant (Nov. 26,
1997), 1997 WL 1824017, at *2; *see also* Brief of the Secretary of Labor, Elaine L. Chao,
as Amicus Curiae, *Lively v. Dynegy*, 07-2073 (7th Cir. 2007), 2007 WL 3081709; Brief of
Elaine Chao, Secretary, Department of Labor as Amicus Curiae, *Langbecker v. EDS*, 476
F.3d 299 (5th Cir. 2007) (No. 04-41760); Brief of Amicus Curiae Elaine L. Chao, Secretary
of the United States Department of Labor, *In re Schering-Plough Corp. ERISA Litig.,* 420
F.3d 231 (3d Cir. 2005) (No. 04-3073), 2004 WL 5215266; Amended Brief of the Secretary
of Labor as Amicus Curiae, *In re Enron Corp. Sec. Derivative & ERISA Litig.*, 284
F.Supp. 2d 511 (S.D.Tex. 2003) (No. CIV.A.H-01-3193), 2002 WL 32913114.

**B. The Vast Majority of Courts And Commentators Agree That The §404(c) Defense Is Not Available For The Fiduciary Breaches That the Court Presumed Occurred Here.**

In the Plans, participants invest their retirement savings by selecting from investment options chosen by Plan fiduciaries have chosen. A00015 ¶¶43-46. As set forth above, in very limited circumstances, §404(c), 29 U.S.C. §1104(c), provides an affirmative defense for Plan fiduciaries against liability for losses resulting from a "participant or beneficiary's exercise of control." But, as the Fourth Circuit recently explained, "although section 404(c) does limit a fiduciary's liability for losses that occur when participants make poor choices from a satisfactory menu of options, *it does not insulate a fiduciary from liability for assembling an imprudent menu in the first instance."* DiFelice v. U.S. Airways, Inc., ("DiFelice II") 497 F.3d 410, 418 n.3 (4th Cir. 2007)(emphasis added). This is the overwhelming majority view. The DOL[7], the vast majority of courts[8], and

---

[7]*See* 29 C.F.R. §2550.404c-1(a)(1); Final Regulation Regarding Participant Directed Individual Account Plans (ERISA §404(c) Plans), 57 Fed.Reg. 46906, 46924 n.27 (Oct. 13, 1992).

[8]*See, e.g., Lively v. Dynegy,* 2007 WL 685861 at *8, *9-*13 & *11 n.5 (S.D.Ill. Mar. 2, 2007); *DiFelice v. U.S. Airways,* 397 F.Supp.2d 758, 774-78 (E.D.Va. 2005); *In re Dynegy, Inc. ERISA Litig.,* 309 F.Supp.2d 861, 893-94 (S.D.Tex. 2004); *In re Enron Corp. Sec., Derivative & ERISA Litig.,* 284 F.Supp.2d 511, 574-79 (S.D.Tex. 2003); *In re WorldCom, Inc.,* 263 F.Supp.2d 745, 763-65 (S.D.N.Y. 2003); *Franklin v. First Union Corp.,* 84 F.Supp.2d 720, 732 (E.D.Va. 2000). In citing these and other district court cases, Plaintiffs are aware that such cases do not constitute controlling precedent for this Court. *See Midlock v. Apple Vacations West,* 406 F.3d 453, 457-58 (7th Cir. 2005). Plaintiffs nevertheless cite selected district court cases as "well-reasoned decision[s] that persuade by the quality of [their] reasoning." *Id.* at 458. Here these cases also show unanimity among these judges and other interpreting authorities.

ERISA commentators[9] have interpreted §404(c) as inapplicable to plan fiduciaries' breach of core fiduciary duties in the selection of investment options and monitoring of their performance and costs.

In *DiFelice v. U.S. Airways, Inc. ("DiFelice I")* the court refused to apply §404(c) to immunize the defendants' imprudent inclusion of a company stock fund among plan investment options. 397 F.Supp.2d 758, 775-77 (E.D. Va. 2005). There, as here, defendants argued that participants had "exercised control" by choosing to invest in the fund, which thereby absolved defendants of their fiduciary breach for including the fund. *Id.* at 774. Rejecting this, the court reasoned:

> [T]he alleged breach in this instance is not the type envisioned by Congress when it drafted §404(c)'s exemption from liability for breach, *as [Fiduciary] U.S. Airways clearly had sole and plenary authority under the Plan to select and retain the various Plan investment options that was in no way contingent on Plan participants' acts.*

*Id.* at 776 (emphasis added).

Here, the District Court held that §404(c) immunizes Defendants' fiduciary breaches, which include selecting investment options that secretly assessed excessive unreasonable fees, by Defendants' simply *claiming* status as a "§404(c) plan" and contending that participants exercised control by investing in such investment options. *DiFelice I* unambiguously rejected this:

---

[9] *See Langbecker v. EDS*, 476 F.3d 299, 321 n.4 (5th Cir. 2007) (Reavley, J., dissenting), for an extensive list.

This conclusion [finding §404(c) defense inapplicable] is supported by the absurdity of the alternative. If a participant's direction to invest a portion of his account in a given investment shielded the named fiduciary from liability for its imprudent selection and retention of that investment in the plan, then by logical extension, a fiduciary who offered only imprudent plan investment options likewise would be shielded from liability by the mere fact that a plan participant decided to participate in the plan at all. *The claim that Congress intended such a broad exception to the otherwise demanding standard of fiduciary conduct required by ERISA strains credulity.*

397 F.Supp.2d at 776 (emphasis added).

The Fourth Circuit agreed. It reasoned that *although the plan complied with ERISA §404(c)*,[10] "which limits the liability of fiduciaries for actions undertaken as a direct result of investment instructions given by participants," *DiFelice II*, 497 F.3d at 418 n.3, the §404(c) defense was not available:

[T]his safe harbor provision does not apply to a fiduciary's decisions to select and maintain certain investment options within a participant-driven 401(k) plan. Rather, "limiting or designating investment options which are intended to constitute all or part of the investment universe of an ERISA 404(c) plan is a *fiduciary function*," and "responsible plan fiduciaries are ... subject to ERISA's general fiduciary standards in initially choosing or continuing to designate investment alternatives offered by a 404(c) plan".

*Id.* at 418 (citations omitted); *see also id.* at 423. ("[A] fiduciary must initially determine, and continue to monitor, the prudence of each investment option available to plan participants. *Here the relevant "portfolio" that must be prudent is each available Fund considered on its own*, including the Company Fund, not

---

[10] In sharp contrast, here Defendants have not carried their burden of proving the many elements of the §404(c) affirmative defense and the SAC does not support them. *See infra* at III.C.

the full menu of Plan funds." (emphasis added)). Thus, as fiduciaries, Defendants

must determine the prudence of each fund offered through the brokerage window.

*DiFelice II's* reasoning applies here. Defendants have selected Plan

investment options, decided how much participants would pay for them, and

arranged for such payments via hidden "revenue-sharing" removed from

participants' accounts. A00020 ¶66. With respect to these functions, "responsible

plan fiduciaries are…subject to ERISA's general fiduciary stands," regardless of

the applicability of §404(c) in other circumstances. *DiFelice II,* 497 F.3d at 418

(citations omitted).

### C. The District Court Erred in Granting Defendants' Motion To Dismiss Because, Even If The §404(c) Defense Were Available For Such Breaches of Fiduciary Duty, Defendants Have Not Established It.

#### 1. Defendants Bear The Burden of Proving the §404(c) Affirmative Defense.

Even if it were theoretically applicable, reliance on §404(c) is an affirmative

defense on which the Defendants have not met their burden of pleading and proof.

*E.E.O.C. v. V. & J. Foods, Inc.*, 507 F.3d 575, 580 (7th Cir. 2007). Accordingly, it

is not the proper basis for a Rule 12(b)(6) dismissal. *Allison v. Bank One Denver,*

289 F.3d 1223, 1238 (10th Cir. 2002); *see also In re AEP ERISA Litig.*, 327

F.Supp.2d 812, 829-30 (S.D. Ohio 2004) ("[C]ourts routinely refuse to dismiss an

ERISA action because the defendant argues §404(c) applies. … §404(c) is in the

nature of an affirmative defense, which generally is not an appropriate

consideration on a motion to dismiss."); *In re Reliant Energy ERISA Litig.*, 336

F.Supp.2d 646, 669 (S.D. Tex. 2004)("The §404(c) provision is a safe harbor provision on which defendant bears the burden of pleading and proof. Section 404(c) does not provide a basis for dismissal ….").[11]

### 2. Defendants Have Not Shown That They Qualify For The §404(c) Affirmative Defense.

Based upon the facts alleged in the SAC, Defendants have not established and cannot establish their entitlement to the §404(c) defense.  First, Defendants have not shown (and the SAC does not allege) that Defendants complied with each of the approximately 25 separate elements required to attain §404(c) complaint status.[12]   Second, Defendants are not eligible for protection under §404(c) because they have concealed – or outright misrepresented – material information regarding the Plan, its fees, and how they are paid.  Neither the SAC nor the exhibits Defendants attached to their Motions to Dismiss overcome these shortcomings.

### a. The SAC Includes No Allegations, Nor Gives Rise to Any Inferences, That Defendants Have Complied With §404(c)'s Extensive Requirements.

ERISA heavily relies upon, and borrows from, the law of trusts in establishing the highest standards of fiduciary conduct for Plan fiduciaries.  *Martin v. Feilen*,

---

[11] *Woods v. Southern Co.*, 396 F.Supp.2d 1351, 1367 (N.D. Ga. 2005); *In re Mut. Funds Inv. Litig.*, 403 F.Supp.2d 434, 448 (D.Md. 2005); *Rankin v. Rots*, 278 F. Supp. 2d 853, 872-73 (E.D. Mich. 2003).

[12] For a knowledgeable discussion of the high bar set by §404(c), see Kathleen Sheil Scheidt and David L. Wolfe, "Current Considerations and New Challenges for ERISA §404(c) Compliance," *available at* http://www.drinkerbiddle.com/files/Publication/abdabb34-2c0a-46a8-96f7-ebf6ff02a455/Presentation/PublicationAttachment/ac2111de-5f4a-4f0b-8130-f2237d4a1699/CurrentConsiderationsAndNewChallengesForERISA.pdf.

965 F.2d 660, 664 (8th Cir. 1992); *Leigh v. Engle*, 727 F.2d 113, 122-23 (7th Cir. 1984). In limiting the circumstances where a fiduciary is relieved from liability for violations of these fiduciary standards, ERISA also borrows from trust law. *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 446 n.24 (3d Cir. 1996)

Consistent with extensive disclosures required by trust law, §404(c) and its regulations require Plan fiduciaries to prove that they have made an extensive list of specific disclosures to invoke §404(c) "safe harbor" protections. In *In re Ferro Corp. ERISA Litig.*, 422 F.Supp.2d 850 (D.Ohio 2006), the court expressly held that the §404(c) defense requires "fact-intensive inquiries into whether the plan meets all of the relevant DOL regulatory requirements. *See* 29 C.F.R. §2550.404c-1. Such inquiries are especially complex in cases, such as the instant one, when material information was allegedly withheld from plan participants." 422 F.Supp.2d at 862. Thus, Defendants must prove that they have fulfilled approximately 25 specific requirements for §404(c) compliance. *Id.; see also* "Current Considerations," *supra* note 12, at 1.

Here, the SAC simply does not include everything necessary to satisfy the §404(c) affirmative defense. Plaintiffs nowhere concede that the Plans were "§404(c) plans," nor do they plead facts indicating that the Plans qualify for §404(c) status. Although the SAC quotes from portions of the §404(c) regulations, the SAC does not purport to consider each element of §404(c) that a defendant must prove. *See, e.g.,* A00018 ¶58 (Items enumerated are "*among other things*" that Deere must fulfill to comply with §404(c)"); A00019 ¶60 (Information §404(c)

24

requires "*includes*" the listed information.).  Instead, the SAC sets forth Deere's

*non-compliance* with the disclosure portions of the §404(c) regulations and its

misrepresentations and concealment. A00025-26 ¶¶ 91-95.

> b. **The SAC Alleges, And Gives Rise to Inferences, That Defendants Concealed Material Information, Rendering §404(c) Inapplicable**.

Again harkening to trust law, §404(c)'s regulations include a catch-all

provision that denies protection to fiduciaries who withhold material information.

*See* 29 C.F.R. 2550.404c-1(c)(2)(ii) ("a participant's or beneficiary's exercise of

control is not independent in fact *if* ... *(ii) A plan fiduciary has concealed material*

*non-public facts regarding the investment from the participant or beneficiary.*"

(emphasis added)).  The court in *In re Xerox Corp. ERISA Litig.*, 483 F.Supp 206,

213 (D.Conn. 2007), relied on this catchall provision in denying defendants'

motion to dismiss, reasoning that:

> participants do not exercise control within the meaning of ERISA unless plan fiduciaries provide them with complete and accurate information concerning the investments.  Here, the plaintiffs have alleged that they did not exercise control over the investments because the defendants failed to provide them with complete and accurate information regarding Xerox stock.

(citations omitted); *see also In Re Unisys Sav. Plan Litig.,* 74 F.3d at 445 n.22.

Here, Defendants failed to disclose and misled Plan participants regarding a

wealth of material information about the Plan, its fees, administration, and costs.

A00028-33 ¶¶ 104-05.  By selecting investment options in the first instance,

Defendants suggested to Plan participants that their fees were reasonable, and

that such investments were prudently chosen for the Plan.  R. 105 ¶21; *see also*
Department of Labor, Pension and Welfare Benefits Administration, "Study of
401(k) Plan Fees and Expenses" §4.1 (Apr. 13, 1998)("In selecting a 401(k)
provider, a plan sponsor has effectively acknowledged that the plan's fees and
expenses are reasonable."), available at http://www.dol.gov/ebsa/pdf/401kRept.pdf.
They then falsely represented to Plan participants that the Company paid the
Plan's administrative costs, when Defendants were actually causing the Plan to
pay excessive administrative costs via Fidelity's undisclosed "revenue-sharing."
*Id.*  Defendants failed to disclose Fidelity's conflicts of interest in paying itself
"revenue-sharing" in undisclosed amounts; in its selection of mutual funds with
high expenses to maximize its "revenue-sharing" profits; and in its selection of
brokerage window funds that kicked-back revenue to Fidelity.  *Id.*

    *Siemers v. Wells Fargo & Co.*, 2007 WL 760750, *12-15 (N.D.Ca. 2007)
(*"Siemers I"*), held that undisclosed "revenue-sharing" arrangements in
investment funds are materially misleading.  In rejecting Defendants' exact
arguments, the court held:

> It seems true, as defendants state, that all fees were disclosed and no
> fees--sham or otherwise--were removed from the common fund
> beyond the total disclosed. *But investors were not warned of the size
> and scope of the established revenue-sharing arrangements and the
> fact, as alleged, that excessive fees were being authorized in the first
> place to pay for the revenue-sharing program rather than for the
> ostensible reasons. Based on the ostensible reasons, investors would
> have expected some benefit from the fees whereas, as alleged, to the
> extent of the excess, there was no benefit.* Nor were they warned of
> the adviser's conflict of interest.

*Id.* at *13 (emphasis added); *see also Tussey v. ABB, Inc.*, 2008 WL 379666 at *3 (W.D.Mo. Feb. 11, 2008). The same is true here. By disguising and concealing information concerning the existence, nature and extent of Fidelity's "revenue-sharing" programs *and* the amount removed from the Plan to support those programs, Defendants concealed material information from participants. *Id.*; *see Siemers v. Wells Fargo & Co.*, 2007 WL 1140660 at *6-10 (N.D.Ca. 2007)("*Siemers II*")("The full extent – as well as the very existence – of the Wells Fargo "revenue-sharing" regime were material facts."). Under the catch-all provision in §404(c) regulations, 29 C.F.R. 2550.404c-1(c)(2)(ii), this deception disqualifies Defendants from invoking §404(c), even if it were otherwise applicable to their breaches.

   c.   **The Exhibits Defendants Attached To The Motions To Dismiss Do Not Establish Their Compliance With Each Element of §404(c)**.

Proving a §404(c) defense is extremely fact-intensive. *See, e.g.*, 29 C.F.R. §2550-404c-1(c)(2) ("depends on the facts and circumstances of the particular case."). To protect plan participants, the regulations strictly limit which plans fall within §404(c)'s ambit by demanding that plan fiduciaries seeking protection have satisfied a laundry list of approximately 25 requirements. *See* "Current Considerations," *supra* note 12, at 1.

Deere's efforts to establish the affirmative defense were woefully inadequate. First, although Plaintiffs' claims cover *at least* the period from 2000 through

2006,[13] information submitted by the Defendants did not cover most of this period. Deere offered SPDs covering calendar years 2005, 2006 and 2007 for the SIP (R.41, Exs. A-C), four undated SPDs for the TDS (R.41-42, Exs. D-G), and prospectuses from assorted dates in 2006 for three mutual funds (R.42, Exs. H-J).[14] Even if Defendants' exhibits established compliance with each §404(c) for the periods they cover, they provide no basis for dismissing claims accruing in years to which they do not apply. The District Court drew extensive inferences in Defendants favor to find otherwise.

Considering a virtually identical 12(b)(6) motion to Defendants', the court in *Kanawi v. Bechtel* deferred a determination of the applicability of §404(c):

> It is not possible to determine, at the pleadings stage, whether Defendants' conduct falls within ERISA's safe harbor provision. …[T]he Section 404(c) defense in this case does not appear on the face of the complaint. Rather, the only thing that appears on the complaint's face is that it may eventually be appropriate, depending on the facts of the case, for Defendants to invoke the "safe harbor" provision. *Adjudication of that defense at the pleadings stage is only appropriate where the merits of the defense, as opposed to merely the possibility of the defense, appears on the face of the complaint.*

No. C 06-05566 CRB, at 4-5 (N.D.Cal. May 15, 2007)(order denying motion to dismiss)(citations omitted), A00314-15; *see Tussey,* 2008 WL 379666 at *3-4;

*Spano v. Boeing Co.*, No. 06-743-DRH, (S.D. Ill. Apr. 17, 2007) 2007 WL 1149192,

---

[13] The ERISA statute of limitations provides that a claim is barred either six years after "the date of the last action which constituted a part of the breach," or three years after "the earliest date on which the plaintiff had actual knowledge of the breach," whichever occurs first. 29 U.S.C. §1113. However, the statute may be tolled indefinitely in cases of fraud or concealment, like this one. *Id.*

[14] In fact, Defendants' §404(c) showing was weaker than here described, because even this spotty information came from documents not properly before the District Court. *See infra* §VII.

at *5, A00330; *George v. Kraft Foods Global, Inc.*, No. 06-798-DRH (S.D. Ill. Mar.
16, 2007) 2007 WL 853998, at *4, A00347-48.  Like in these cases, even if §404(c)
were potentially applicable to Defendants' breaches, it was impossible for the
District Court to determine Defendants' eligibility for its protection upon a Motion
to Dismiss.  This Court should reverse and remand for further proceedings.

**IV.    The District Court Erred In Finding That Defendants' Misrepresentations
And Concealment Were Not A Breach Of Fiduciary Duty.**

    **A.  ERISA Requires Defendants To Provide Complete and Truthful
Information To Participants.**

The District Court held that if the ERISA statute and regulations do not
expressly require specific disclosures regarding Plan fees and the undisclosed
"revenue-sharing" arrangements, Defendants are free to conceal this information,
as they did here, distribute "half-truths," s*ee Siemers I*, 2007 WL 760750 at *14,
or make outright misrepresentations.  *See* Tab A pp. 11, 16-17.  In doing so,
Defendants render participants incapable of determining whether they are paying
excessive fees for administration and management, and wholly unaware of many
conflicts of interest.

ERISA does not countenance such conduct.  In *Varity Corp. v. Howe*, the
Supreme Court held that a fiduciary has a duty under ERISA §404(a) to avoid
providing any misleading information to plan participants. 516 U.S. 489, 506
(1996).  Consistent with *Varity*, this Court repeatedly has rejected the District
Court's narrow view of ERISA fiduciaries' obligations.  As part of their core
fiduciary duty of loyalty, ERISA fiduciaries must disclose "material facts affecting

the interests of plan participants and beneficiaries." *Kamler v. H/N Telecomm. Serv., Inc.*, 305 F.3d 672, 681 (7th Cir. 2002); *see Schmidt v Sheet Metal Workers' Nat'l Pension Fund*, 128 F.3d 541, 548-49 (7th Cir. 1997).[15]  Without regard for whether such disclosures are required by a particular provision of ERISA statutes or regulations, this Court has "made clear that fiduciaries must communicate material facts affecting the interest of plan participants or beneficiaries and that this duty to communicate exists when a participant or beneficiary 'asks for information, and even when he or she does not.'" *Valone v. CNA Financial Corp.*, 375 F.3d 623, 640-41 (7th Cir. 2004)(quoting *Boxerman v. Walmart Stores*, 226 F3d 574, 590 (7th Cir. 2000)).[16]

Simply stated, "misrepresentations and omissions [are] breaches of ... fiduciary obligations.  Lying is inconsistent with the duty of loyalty owed by all fiduciaries and codified in section 404(a)(1) of ERISA." *Peoria Union Stockyards Co. v. Penn Mutual Life Ins. Co.*, 698 F.2d 320, 326 (7th Cir.1983).  Thus, "misleading communications to plan participants regarding plan administration ... will

---

[15] *See also Kalda v. Sioux Valley Physician Partners*, 2007 WL 925245 at * 3 (8th Cir. 2007); *Shea v. Esensten*, 107 F.3d 625, 628 (8th Cir.1997).

[16] *See Peralta v. Hispanic Business, Inc.*, 419 F.3d 1064, 1071-72 (9th Cir. 2005)("[I]n order to give meaning and effect to ERISA's fiduciary purpose, more must be required of an administrator than mere compliance with ERISA's express reporting and disclosure provisions . . .[I]f the fiduciary duty applied to nothing more than activities already controlled by other specific legal duties, it would serve no purpose."(quoting *Varity*, 516 U.S. at 504)); *Griggs v. E.I. DuPont de Nemours,* 237 F.3d 371, 381-84 (4th Cir. 2001) (When a fiduciary is aware that a participant is laboring under a material misunderstanding fostered by the fiduciary's own communications, it has a §404(a) duty to provide disclosures beyond what §§101-111 require for the purpose of correcting the misinformation.); *see also Del Rio v. Toledo Edison Co.*, 2005 WL 1001430 at *3 (6th Cir. 2005).

support a claim for breach of fiduciary duty." *Howe v. Varity,* 36 F.3d 746, 753-54 (8th Cir. 1994) (citations omitted); *see Valone*, 375 F.3d at 640.

The fees assessed against participants' retirement savings are material – especially where, as here, Defendants cause unreasonable administrative fees to be assessed against the Plan via undisclosed "revenue-sharing" that, unbeknownst to participants, enrich the Fidelity Defendants while, at the same time, Defendants mislead participants by stating the Company pays such fees. A00020 ¶66. Obviously, such secret compensation arrangements are material, and fiduciaries must disclose them. *Shea v. Esensten*, 107 F.3d 625, 628-29 (8th Cir. 1997).

In *Shea,* the Eighth Circuit noted that ERISA's duty of loyalty "requires an ERISA fiduciary to communicate any material facts which could adversely affect a plan member's interests." 107 F.3d at 628. The Court held that "a financial incentive scheme" that could influence a doctor's referral of patients to specialists "is certainly a material piece of information" because a patient "relies on the doctor's advice about treatment options." *Id.* at 628. Thus, "the patient must know whether the advice is influenced by self-serving financial considerations created by the health insurance provider." *Id.* at 628-29.

The Eighth Circuit's reasoning in *Shea* applies directly here. Deere serves its own financial interest by surreptitiously transferring Plan administrative costs to participants while claiming to pay such costs itself. Fidelity serves its own financial interest to kick-back "revenue-sharing" to its affiliates while collecting

31

excessive fees from the Plan.  Participants are not told, and left entirely unaware,

that any of this is occurring.

   In light of this virtually undisputed view of fiduciaries' obligations of candor

and disclosure, the Court in *Kanawi, et al. v. Bechtel, et al.*, No. C 06-05566 CRB

(N.D. Cal. May 15, 2007), A00311, directly rejected the reasoning that the District

Court accepted here.   *Kanawi*, as here, is an ERISA 401(k) breach of fiduciary

duty case brought by plan participants alleging excessive fees and undisclosed

"revenue-sharing" programs.  *Kanawi*, No. C 06-05566 CRB at 2-3, A00312-13.

Denying defendants' motion to dismiss, the court held:

> Defendants note that the complaint nowhere alleges a failure to
> comply with applicable statutes and regulations …. Defendants
> argue that the failure to allege a violation of the applicable statutes
> and regulations is fatal to the complaint.
>
> The Court is unpersuaded. The Supreme Court and the Ninth
> Circuit have explicitly stated that mere compliance with applicable
> statutes and regulations under ERISA is not sufficient to establish
> that a fiduciary has satisfied its obligations under the law.  Thus,
> Plaintiffs' failure to allege a violation of such statutes and
> regulations is not fatal to their claims.
>
> The charge here is that Defendants manipulated, disguised, and
> misrepresented the nature of the fees and expenses incurred by the
> Plan, thereby causing the participants to incur costs that were
> excessive and not for their benefit.  Based on those allegations, the
> Court cannot say that it appears beyond doubt that the plaintiffs can
> prove no set of facts in support of their claim that Defendants
> breached their duty to manage the Plan "solely in the interests of the
> participants and beneficiaries," and to provide "sufficient information
> to make informed decisions with regard to investment alternatives."
> To hold otherwise would be to hold that any amount of
> misrepresentation or dishonest dealing on behalf of the Plan, at least
> with respect to the fees and expenses charged against the Plan,
> cannot provide the basis for a cause of action so long as such fees and

expenses are disclosed in the manner prescribed by ERISA and the
Department of Labor's regulations. Defendants have provided no
authority for such a proposition, and the Court declines to adopt that
position here.

*Id.* at 3-4 (citations omitted), A00313-14.[17]

> **B. The District Court Erred in Analyzing the Plans' *Regulatory*
> Responsibility to Make Disclosures *to the Department of Labor*, Rather
> Than Defendants' *Fiduciary* Duties of Candor and Disclosure *to
> Participants*.**

In analyzing whether ERISA requires 401(k) fiduciaries to disclose fee and

"revenue-sharing" arrangements, the District Court relied partially on the fact

that the DOL recently proposed amended regulations governing plans' annual

Form 5500 filings with the DOL. The amendments would require plan sponsors

to disclose "revenue-sharing" arrangements on their annual Form 5500 filing with

the DOL. R. 109 p. 9. In the District Court's view, the DOL's proposal of these

new regulations confirmed that existing regulations did not require disclosure of

revenue-sharing. *Id.*

The District Court's reasoning is flawed in several respects. Most

fundamentally, as discussed above, the District Court fails to distinguish between

regulatory requirements and fiduciary duties. *See supra* §IV.A. ERISA does not

---

[17]In additional excessive fee, "revenue-sharing" breach of fiduciary duty cases, district
courts have uniformly rejected similar motions to dismiss. *See Abbott v. Lockheed
Martin*, No. 06-0701, 2007 WL 2316485 (S.D.Ill. Aug. 13, 2007) (order); *Taylor v. United
Technologies,* No. 06-1494, 2007 WL 2302284 (D.Conn. Aug. 9, 2007) (order); *Spano v.
Boeing*, No. 06-743, 2007 WL 1149192 (SD.Ill. Apr. 18, 2007) (order), A00319-39; *George
v. Kraft Foods Global,* No. 06-798, 2007 WL 853998 (S.D.Ill. Mar. 16, 2007) (order),
A00340-55. Plaintiffs cite these district court cases as persuasively reasoned and
significant in their unanimity, even if not precedential. *See supra* note 8.

contemplate that specific regulations will define the universe of potential fiduciary breaches.

The District Court's analysis also wrongly equates a plan sponsor's filings with the DOL and a fiduciary's disclosures to participants. Form 5500, the subject of the cited proposed regulations, prescribes only a plan's disclosures to the DOL. Plaintiffs' claims relate to fiduciaries' duties of candor and disclosure to participants.

DOL's ERISA Advisory Council recognized this distinction when it established two separate working groups to consider the two separate types of disclosure: the Form 5500 Working Group cited by the District Court was tasked with evaluating the adequacy of disclosures on Form 5500, while the Working Group on Fee and Related Disclosures to Participants simultaneously was charged with "study[ing] fee and related disclosures to participants."[18] The Participant Disclosure Working Group disclaimed any application to an ERISA fiduciaries' general disclosure duties: "[W]e do not purport to address the general fiduciary duties of sponsors under such plans as those duties may relate to participant disclosures." *See* Disclosure Report at 5.

---

[18] *See* United States Department of Labor, Advisory Council on Employee Welfare and Pension Benefit Plans, *Report of the Working Group on Fee and Related Disclosures to Participants* 1 (2004) (hereinafter "Disclosure Report"), *available at* http://www.dol.gov/ebsa/pdf/ac_111704_report.pdf; *see also* 2004 ERISA Advisory Council Working Group Reports, *available at* http://www.dol.gov/ebsa/publications/ main.html#section8 (identifying separate working groups).

**V.**   ***Langbecker v. EDS*, On Which The Court Principally Relies, Is Wrong As A Matter Of Law And Distinguishable On Its Facts.**

The District Court relied on *Langbecker v. EDS*, 476 F.3d 299 (5th Cir. 2007), in holding that §404(c) immunized Defendants' fiduciary breaches in failing to prudently select investment options and monitor their fees. In *Langbecker*, the court remanded the issue of class certification for consideration of how the §404(c) defense affected the decision to certify the class.  *Id.* at 313.  The Fifth Circuit held that §404(c) may immunize fiduciaries from breaches in selecting and monitoring plan investment options because "[p]articipants have access to information about the Plan's investment options" and "are furnished with risk-diversified investment options" so that they "are not helpless victims of every error."  *Id.* at 312.  Plaintiffs respectfully submit that the District Court erred in relying on *Langbecker*.

**A.** ***Langbecker* Is Wrong As A Matter Of Law.**

In *Langbecker*, a Fifth Circuit panel, over a vigorous dissent, *see id.* at 319-26, rejected the DOL's interpretation of its own §404(c) regulations, ignored virtually all ERISA scholars and commentators, and dismissed other courts' contrary holdings.  *Id.* at 309-312; *see supra* §III.B.  In *Beck v. Pace Int'l Union,* 127 S.Ct. 2310, 2317 (2007), the Supreme Court made clear that it would not have so cavalierly dismissed the DOL's guidance:  "interpreting ERISA … to attempt to answer these questions without the views of the agencies responsible for enforcing ERISA would be to embark upon a voyage without a compass …" (internal

35

citations omitted). Plaintiffs respectfully suggest that the Fifth Circuit did exactly that.[19]

### B. *Langbecker* is Distinguishable on Its Facts.

*Langbecker* was a securities fraud class action based on public misrepresentations of EDS' financial condition. 476 F.3d at 363. When EDS revealed its true condition in an earnings warning, its stock dropped. *Id.* at 303-304. In ERISA fiduciary breach claims mirroring plaintiffs' securities fraud claim, plaintiffs alleged that it was imprudent to include the EDS stock fund as an investment option in the EDS 401(k) plan. *Id.* at 304.

The Fifth Circuit panel opined that class certification under ERISA §502(a)(2) was proper, but it questioned whether the §404(c) defense might inject individual reliance issues, in that participants reacted differently after the earnings warning. *Id.* at 307-09. In remanding on that basis, the panel noted that §404(c) protection is available only where plan fiduciaries comply with all applicable regulations – clearly not the case here, s*ee supra* §III.C.

But in *Langbecker* the panel *assumed* compliance with §404(c) because the Defendant had made full corrective disclosures (in the earnings warning) of the previously hidden financial conditions underlying the plummet of EDS stock. 476 F.3d at 314. Class representatives were fully aware of such disclosures but

---

[19] *In re Unisys Sov. Plan Litig,* 74 F 3d 420 (3d Cir. 1996), which *Langbecker* and the District Court cites, interpreted §404(c) without the benefit of the DOL's regulations and guidance, which had not been released at the time of the underlying facts in that case. *See DiFelice v. U.S. Airways, Inc.*, 404 F.Supp. 2d 907, 909 (E.D. Va. 2005)(finding *In re Unisys Sav. Plan Litig.* non-dispositive because it was decided prior to DOL regulations).

continued to trade – profitably – in the stock. *Id.* at 315. In sharp contrast, here Defendants have not met their burden of showing compliance with §404(c) and did not disclose the facts underlying their fiduciary breaches.

## VI.    The District Court Erred in Dismissing Plaintiffs' Claims Against Fidelity.

This Court should reverse the District Court's dismissal of Plaintiffs' claims against Deere. The Court should correspondingly reinstate Plaintiffs' claims against Fidelity. The District Court dismissed them based on its dismissal of the Deere claims. Tab A p. 17.

The District Court also dismissed Plaintiffs' claims against Fidelity because, it concluded, Fidelity did not have fiduciary responsibility for "making plan investment decisions." Tab A p. 17. It held that trust agreements submitted by Fidelity "unequivocally provide that Defendant Deere has sole responsibility for selection of plan investment options." *Id.* According to the Court, because Deere *was* a fiduciary with respect to Plan investment decisions, the Fidelity Defendants were not. *Id.* pp. 17-18.

The District Court ignored applicable law. ERISA provides a broad, functional definition of "fiduciary," which requires that courts look beyond plan documents to consider the role a party actually plays. *See, e.g.*, *Mertens v Hewitt Assocs.*, 508 U.S. 248, 262 (1993). Under this standard, the District Court could not have dismissed Plaintiffs' claims.

**A. The District Court Ignored the Undisputed Fact that Fidelity Was A Fiduciary In Some Capacity.**

FMTC was the Plan's fiduciary investment manager for two plan investment options. A0005 ¶20; R. 37 ¶12. The District Court ignored this.

**B. The District Court Failed to Apply ERISA's Functional Definition of "Fiduciary."**

**1. ERISA Requires Consideration of Fidelity's Actual Role in the Plans.**

ERISA assigns fiduciary status broadly, to any entity that: "exercises any discretionary authority or discretionary control respecting management" of an ERISA plan, "or exercises any authority or control respecting management or disposition of its assets," or "has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. §1002(21)(A). Thus, ERISA "defines 'fiduciary' not in terms of formal trusteeship, but in functional terms ...." *Mertens*, 508 U.S. at 262; *see Ruiz v. Continental Cas.,* 400 F.3d 986, 990 (7th Cir. 2005). The focus of a fiduciary determination is what a party does. *See Ruiz,* 400 F.3d at 990; *Blatt v. Marshall and Lassman,* 812 F.2d 810, 812-13 (2d Cir. 1987).

Despite this, the District Court relied solely on the terms of trust agreements to determine Fidelity's fiduciary status. This Court should reverse the District Court's dismissal and hold that Plaintiffs have sufficiently alleged Fidelity's fiduciary status.

### 2. Deere And Fidelity Can Be Fiduciaries Regarding The Same Plan Functions.

The District Court reasoned that if Plan documents assigned one fiduciary, Deere, responsibility for choosing Plan investment options, another party, Fidelity, could not have related fiduciary duties. But this Court has held that two fiduciaries can share responsibility for the same plan function. *See Rud v. Liberty Life Assurance Co.*, 483 F.3d 772, 774-75 (7th Cir. 2006). A party need not exercise "absolute discretion" to be a fiduciary. *Blatt,* 812 F.2d at 812; *see also American Fed'n of Unions v. Equitable Life Assurance Soc'y*, 841 F.2d 658, 662-63 (5th Cir. 1988). Even indirect actions evince "control over plan assets" sufficient to confer fiduciary status. *See Blatt,* 812 F.2d at 813; *Brock v. Hendershott*, 840 F.2d 339, 342 (6th Cir. 1988). In short, one party's fiduciary status does not diminish or preclude another's.

### 3. The District Court Misinterpreted the Trust Agreements.

Even if the District Court's exclusive reliance on the trust agreements were appropriate, it misinterpreted them. There is nothing "sole" about Deere's responsibility over plan investment decisions under the Trust Agreements. A00049. Instead, the Trust Agreements allocate to Deere the right to "direct [Fidelity] as to what investment options Plan participants may invest in, *subject to [six enumerated] limitations*." *Id.* The limitations then narrow Deere's choices to almost exclusively funds managed by or offered by Fidelity. *Id.* Thus, drawing inferences in *Plaintiffs'* favor, this divides responsibility for choosing investment

39

options between Fidelity, who initially greatly narrows the fund choices, and

Deere, who affirms Fidelity's recommendations among those limited choices.  The

Court should have ruled that Fidelity's conduct in culling thousands of mutual

funds, as well as separately managed accounts and myriad investment options, so

as to leave only Fidelity funds, was the exercise of discretion and control.

### C.  Plaintiffs' Claims Against Fidelity Should Survive Defendants' Motions to Dismiss.

#### 1.  Because ERISA Requires A Fact-Intensive Inquiry, Courts Should Not Determine Fiduciary Status In A 12(b)(6) Motion.

If the District Court followed ERISA's "functional fiduciary" analysis, it should

have determined that assessing fiduciary status is fact-intensive and cannot be

accomplished in the context of a motion to dismiss.  *See, e.g., In re Cardinal*

*Health, Inc., ERISA Litig.,* 424 F.Supp.2d 1002, 1030 (S.D.Ohio 2006)("[F]iduciary

status is a 'fact-intensive inquiry, making the resolution of that issue

inappropriate for a motion to dismiss.'"); *In re Xcel Energy,* 312 F.2d 1165, 1178-

79 (D.Minn. 2004); *In re CMS Energy ERISA Litig.,* 312 F.Supp.2d 898, 909

(E.D.Mich. 2004); *In re Elec. Data Sys. Corp. "ERISA" Litig.*, 305 F.Supp.2d 658,

672-73 (E.D.Tex. 2004).  Such pleading standards are particularly appropriate in

fiduciary litigation, because "the manner in which each defendant . . . operated"

remains "something of a black box" prior to discovery.  *Rankin v. Rots,* 278

F.Supp.2d 853, 879 (E.D.Mich. 2003).  "To expect a plaintiff to be able to turn on

the light and point to the particular individuals who exercised decision making

authority is simply too much to require" at the pleading stage.  *Id.*

40

**2. The SAC Sufficiently Alleges That The Fidelity Defendants Were Fiduciaries.**

Plaintiffs adequately alleged that the Fidelity Defendants were fiduciaries because they exercise discretionary authority and control over choosing investment options and setting and distributing fees.  A0005-06 ¶20-23, A00024 ¶¶84-87.  In a very similar case, the Court expressly so held.  *Tussey*, 2008 WL 379666 at *6-9.

**a. The SAC Sufficiently Alleges FMRCo's Fiduciary Status.**

The SAC identified two functions that FMRCo performs in connection with the Plans.  First, FMRCo, either alone or with FMTC, decides how much the Plans pay for recordkeeping and other administrative services and to whom they pay it.  A0006 ¶22, A00024 ¶¶84-87.  Second, FMRCo, with FMTC, decides which mutual funds to offer Deere for inclusion in the Plans.  In doing so, Fidelity eliminates thousands of mutual funds and non-mutual-fund investment options.  A0005 ¶21, A00026 ¶95, A00027-28 ¶100.  These decisions, made within Fidelity's exclusive discretion, affect the fees paid out of participants' accounts and Fidelity's compensation.  This is sufficient to confer fiduciary status.  *Johnson v. Georgia-Pacific*, 19 F.3d 1184, 1189 (7th Cir. 1994); *see Haddock v. Nationwide Financial Services*, 419 F.Supp.2d 156 (D.Conn. 2006)(holding that Nationwide could be a fiduciary because it exercised authority or control over plan's assets by generating a list of mutual funds to make available as investment options); *see also* Dept. of Labor Op. No. 97-15A (1997), 1997 WL 277980, at *3.

41

The Seventh Circuit's decision in *Chicago District Council of Carpenters Welfare Fund v. Caremark*, 474 F.3d 463 (7th Cir. 2007), cited by the District Court, does not alter this conclusion. There, the Court held that Caremark, a pharmacy benefits manager, was not a fiduciary to a pharmacy benefits plan by virtue of negotiating and retaining rebates with drug providers as part of its own compensation. The rebates had no effect on the disposition of plan assets or the prices the plan paid because such prices were set according to benchmarks beyond the control of either party. 474 F.3d at 472-73 (emphasis added). Unlike Fidelity's actions here, Caremark's actions could not affect plan assets, so it was not a fiduciary. *Id.* at 476.

### b.  The SAC Sufficiently Alleges FMTC's Fiduciary Status.

In addition to serving as trustee to both plans, and fiduciary investment manager of two investment funds, FMTC exercised many of the same functions as FMRCo. A0005-06 ¶¶20-22. Although its exact role is clouded, since it remains within the "black box" of Plaintiffs' pre-discovery knowledge, *Rankin*, 278 F. Supp. 2d at 879, FMTC is a fiduciary because it exercises discretion over the amount of "revenue-sharing" payments it receives for two funds, and possibly for the funds managed by FMRCo. A0006 ¶22. It effectively sets its own compensation. FMTC is also a fiduciary because as the SAC alleges, like FMRCo, it exercises discretion in determining which investment options Deere will include in the Plans. A0005-06 ¶ 21.

VII.    **By Considering Evidence Outside The Pleadings, The District Court Improperly Converted Defendants' Motions to Dismiss Into Motions for Summary Judgment.**

Deere attached to its Motions to Dismiss 900 pages of evidentiary material, including some, but not all, Summary Plan Descriptions for some, but not all, years at issue and some, but not all, investment option prospectuses. *See supra* §III.C.2.c.  Fidelity tendered two trust agreements with their Motion.  Although Plaintiffs objected to consideration of all of this material, the District Court's dismissal turns on it.

By relying on material outside the pleadings, the District Court converted Defendants' Motions to Dismiss into Motions for Summary Judgment without providing Plaintiffs with notice and opportunity to respond.  Fed.R.Civ.P. 12(b); *Travel Over the World v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1430 (7th Cir. 1996). This can constitute reversible error.  *Id.; R.J.R. Services v. Aetna Casualty & Sur.,* 895 F.2d 279, 281 (7th Cir. 1989).

The District Court held that consideration of the reams of material submitted by Defendants was appropriate because the documents fell within a narrow exception to Rule 12(b)(6)'s prohibition that allows consideration of *only* materials that are "referred to in the complaint, are concededly authentic and are central to the plaintiff's claim." Tab A p. 6 (citing *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002)); *see* Fed.R.Civ.P. 10(c).  This exception applies where, for example, a plaintiff omits a contract in a straightforward action for its breach.  *See Tierney,* 304 F.3d at 738.

43

The Defendants' haphazard and incomplete collection of SPDs, prospectuses and "plan documents" falls well outside this exception. *See Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998). First the SAC did not refer to all the materials on which the District Court relied. Second, none of Defendants' materials is "central" to Plaintiffs' claims for breach of fiduciary duty, which arise out of ERISA and depend on the facts alleged. Third, Fidelity's status as a functional fiduciary requires development of the facts; it cannot be established by mere reference to plan documents. Nor could Deere's compliance with each element of §404(c) and its regulations be established by SBDs and prospectuses. In sum, no contract or document defines the full parameters of Defendants' duties and responsibilities; ERISA does. Thus no document is "central" to Plaintiffs' claims.

Finally, even if the District Court could properly reclassify the Defendants' documents as "attached" to the SAC, this Court does not require Plaintiffs to adopt their content and vouch for its truth. In *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449 (7th Cir. 1998), this Court held:

> To require district courts to accept unilateral statements in documents written by a defendant as true simply because they were attached as exhibits to a plaintiff's complaint would be contrary to the concept of notice pleading. It would enable parties to hide behind untested, self-serving assertions.

*Id.* at 456. Here, to the extent Plaintiffs are somehow deemed to have attached Defendants' documents to their Complaint, Plaintiffs should not be forced to accept the content as true when their claims, in part, are based on the facts that

44

those very documents are inaccurate, false and misleading.  In short: (1) the SPDs falsely state that the Company pays the Plans' administrative expenses; (2) the fee disclosures in the prospectuses conceal Fidelity's "revenue-sharing" program; and (3) the trust agreements suggest that only Deere – not Fidelity – is a fiduciary, when Plaintiffs have alleged facts indicating the opposite.

By considering these documents, as if Plaintiffs adopted them, the District Court converted Defendants' 12(b)(6) motions into summary judgment motions while ignoring Rule 56.  This Court should reverse the District Court's dismissals.

## VIII.  The District Court's Decision Destroys ERISA's Protection Of Retirees.

As the United States Supreme Court recently recognized, defined contribution plans, like the Plans here, have become the primary source of retirement savings for workers in the United States.  *LaRue,* 128 S.Ct. 1020 at 1025.  The District Court's Order, if affirmed, would strip participants in defined contribution plans of ERISA's protections by: (1) eliminating fiduciaries' role in protecting participants from excessive fees and imprudent investment choices; and (2) eliminating fiduciaries' obligations to exercise a plan's market power to benefit participants.

Congress adopted ERISA in 1974 to ensure that workers' retirement savings would receive the protection of fiduciary management at least as strong as that enjoyed by common law trusts.  *See, e.g., Central States, Southeast and Southwest Areas Pension Fund v. Central Transport,* 472 U.S. 559, 569-71 (1985).  Broadly protective in purpose, *see* 29 U.S.C. §1001, ERISA established a system

45

whereby retirees would have the benefit of a sophisticated fiduciary, loyal only to participants, wielding leverage in the market for retirement investment products and services and monitoring fees to assure they are reasonable.

Instead of enforcing these protections, the District Court held that fiduciaries of *multibillion*-dollar 401(k) plans need not determine what fees are being charged for what services, and also need not exercise their enormous bargaining power to drive fees to levels which the market sets for similarly-sized plans. As long as such fiduciaries offer pricy retail mutual funds and include a brokerage window (and even if such funds and brokerage window are conduits of excessive fees and "revenue-sharing" kickbacks to Fidelity), the District Court held that ERISA §404(c) provides them an impregnable defense. They enjoy this immunity even if they are utterly incompetent in the discharge of their duties or make no effort to fulfill them. The Court actually acknowledged that "Defendant Deere could have negotiated lower fees with Fidelity Research, or could have selected different funds from different providers with lower rates *but made no effort to do so.*" Tab A (emphasis added).

Accordingly, under the District Court's decision, ERISA provides 401(k) participants with an unenviable choice between: (1) placing their retirement savings in a plan assessing fees that fiduciaries need not disclose, negotiate, or even investigate; or (2) using a brokerage window to enter the mutual fund market on their own, without any Plan fiduciary investigation of the funds

offered, and without knowledge of arrangements or revenue shared with the

window's gatekeeper, Fidelity, for this "shelf-space."[20]

By the wholesale elimination of fiduciaries' responsibilities in these areas the

District Court's decision would destroy, year after year, participants' ability to

attain the level of retirement savings that they deserve from ERISA's guarantee

of prudent fiduciary protections.

**IX. The District Court Erred In Denying Plaintiffs Motion to Alter Or Amend The Judgment, And Their Request To Amend, Because Newly-Discovered Evidence Proved Plaintiffs' Claims Were Well-Founded and Refuted Defendants' §404(c) Defense.**

**A. Standard of Review.**

This Court reviews the denial of a motion to alter or amend judgment and the

denial of a motion for leave to amend the complaint for abuse of discretion.  *In re*

*Prince*, 85 F.3d 314, 324 (7th Cir. 1996); *Shanahan v. City of Chicago*, 82 F.3d

776, 781 (7th Cir. 1996).

**B. Newly-Discovered Evidence Confirms That Plaintiffs' Claims Are Well-Founded and Should Have Been Such Allowed To Proceed, Or, Alternatively, The Court Should Have Considered Such Evidence If It Converted The Motions To Dismiss Into Motions For Summary Judgment.**

Pursuant to Rule 59(e), Plaintiffs requested that the District Court alter or

amend its judgment so as to reinstate the SAC or to allow Plaintiffs to amend

---

[20]The DOL has noted its concern that "bundled arrangements" such as those here contribute to market inefficiency.  By allowing fiduciaries to deprive participants of the benefits of the market for investment services, the District Court's decision perpetuates this inefficiency.  *See* United States Department of Labor, Advisory Council on Employee Welfare and Pension Benefit Plans, *Report of the Working Group on Plan Fees and Reporting on Form 5500* (2004) (hereinafter "Form 5500 Report"), *available at* http://www.dol.gov/ebsa/pdf/ac_111804_report.pdf.

based on substantial newly-discovered evidence.  The District Court denied
Plaintiffs' motion, reasoning that it had presumed "*that Deere's process in
selecting investments was flawed and that Deere was ill-informed in its
understanding of costs*," and thus any new evidence was immaterial. Tab C.
Appellants respectfully request that the Court reverse the Rule 59 Order,
reinstate the SAC, and remand with instructions that Plaintiffs' claims should
proceed.

    Under Rule 59(e), newly-discovered evidence is a proper basis for a court to
alter or amend its order.  *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th
Cir. 2000).  For example, the court in *Kurzweil v. Philip Morris Companies,* 1997
WL 167043 (S.D.N.Y. 1997), reinstated a complaint in light of "newly discovered
evidence."  The court found that the documents plaintiffs had obtained before the
dismissal, but after the motion to dismiss was filed, constituted "newly discovered
evidence."[21]  *Kurzweil,* 1997 WL 167043 at *5.  It reasoned that "important
interest [in] deciding cases on the merits" and in doing "substantial justice"
justified relief from the order of dismissal. *Id.*

    Here, Plaintiffs presented substantial newly-discovered evidence, which
Plaintiffs collected in the same sequence presented in *Kurzweil.*  Briefing on the
motions to dismiss was complete on April 9, 2007.  *See* R.53.  All substantial

---

[21] Although *Kurzweil* proceeded under Rule 60(b)(2), the same standards for new
evidence apply under Rule 59.  *See U.S. v. Metropolitan St. Louis Sewer Dist.*, 440 F.3d
930 n.3 (8th Cir. 2006); *see also Peacock v. Bd. Of School Commissioners of City of
Indianapolis,* 721 F.2d 210, 213 (7th Cir. 1983).

discovery occurred thereafter.  *See* A00288-301.[22]  Also after April 9, 2007,

Plaintiffs' five expert witnesses prepared reports based, in large part, on their

analysis of the newly discovered evidence.  *See* A00292-93 ¶¶8, 14.  These reports

provide a compelling compilation of the facts that demonstrate Defendants'

profound fiduciary breaches and the damages such breaches caused.

If the District Court did, in fact, convert the 12(b)(6) motions into summary

judgment motions, and if such conversion was proper, then Plaintiffs' newly-

discovered evidence should have been considered.  The newly-discovered evidence

Plaintiffs submitted in support of their Rule 59(e) Motion included, as set forth in

detail at Tab 5 of the Joint Appendix:

- Deere did not know the identity of the named fiduciaries for the Plans.
  A00292-93 ¶¶1, 10-12; A00305-06;

- For seventeen years, Deere never inquired about the Plans' fees, never
  cared about fees, and never compared them to fees of other service
  providers.  A00293-94 ¶16; A00302-04

- Deere thought there were no [administrative] fees or expenses assessed
  against the Plans or charged to participants.  A00294.¶ 18;

- For seventeen years, Deere never had an investment policy statement for
  the Plans.  A00293 ¶ 13;

---

[22] Plaintiffs took all deposition testimony and Defendants produced virtually all
documents submitted as new evidence after April 9, 2007.  Discovery was ongoing at the
time of the Court's June 21, 2007 Order.  Indeed, on the day of the District Court's Order,
Plaintiffs were reviewing, in Boston, documents that Fidelity had just tendered.  R. 105
pp. 6-8, 11**.**

- Deere never calculated the total Plan costs.  A00293-94 ¶ 16;

- Deere admitted that it is has not been direct in its communications to the Plans' participants about fees.  A00296 ¶ 34; A00307-09;

- Deere admitted that the fees associated with the Fidelity mutual fund investment options were excessive.  A00301 ¶ 70;

- The funds available through the Brokerage Link option were more expensive than the "core" funds.  A00296 ¶ 35;

- Deere admitted that the performance of the Fidelity mutual fund investment options was poor for long periods and that over 90% of them underperformed the market.  A00294 ¶ 20;

- Nevertheless, Deere was the fifth most profitable of Fidelity's 143 large-plan clients.  A00298 ¶55;

- Fidelity discouraged Deere from adding non-Fidelity funds to the Plan's primary investment options menu, and Deere never did so.  A00301 ¶¶70-72;

- Fidelity exercised control and discretion over the Plans' assets and administrative functions in numerous ways.  A00299-301 ¶¶60-75;

- Fidelity exercised control regarding the investment of Plan assets.  A00299-301. ¶¶60-62, 66-72;

- Fidelity controlled the float and benefited from float interest on Plan assets.  A00301 ¶¶73-75

Plaintiffs could not have obtained this evidence prior to April 9, 2007. Plaintiffs were extremely diligent in discovery, R. 105 ¶¶6-9, 11; such evidence was unavailable through other means.  In fact, Defendants deemed much of it so "Confidential" that it had to be filed under seal.  R. 105 ¶12.  The evidence also consists almost exclusively of statements and admissions by Defendants.  R. 105.

The Plaintiffs' newly-discovered evidence presents a compelling case of serious fiduciary breaches.  It documents a pattern of Deere fiduciaries being asleep at the switch for seventeen years without so much as an investment policy statement, without any analysis of fees, without calculation of costs, without capturing or even negotiating for the substantial float, ostensibly believing Deere had "free" 401(k) plans, knowing Fidelity funds were expensive, knowing that they consistently underperformed, allowing Fidelity to set its own fees and turning over effective decision making and control to Fidelity.  A00299-301 ¶¶60-62, 66-72.  Fidelity in turn exercised *de facto* control over investment choices, over addition of its funds to the Plans, over who would provide services such as record keeping to the Plans, over how much service providers would be paid, and over who would receive the float, which it appropriated to itself.  A00299-301 ¶¶60-62, 73-75.

These are profound fiduciary breaches that participants could not avoid by reviewing mutual fund prospectuses and choosing from a menu of imprudently-selected investment options.  Plaintiffs respectfully submit the District Court

erred in allowing Defendants to escape responsibility for this conduct by blithely

invoking – without proving their entitlement to – §404(c)'s safe harbor.

## X.    The District Court Erred In Holding That Plaintiffs Must File An Amended Complaint Setting Forth Newly Discovered Evidence To Prevail On A Rule 59(e) Motion.

At a minimum, Plaintiffs' newly-discovered evidence demonstrates additional

allegations that Plaintiffs would include in an amended complaint.  Plaintiffs

requested that the Court amend its order of dismissal and allow Plaintiffs to file

an amended complaint.  Denying this request, the Court held that Plaintiffs'

failure to proffer a "proposed third amended complaint" indicated a lack of

diligence and good faith justifying denial of leave to amend.  Tab C ¶3.  This is

directly contrary to Seventh Circuit law.  *See Twohy v. First Nat'l Bank*, 758 F.2d

1185, 1196 (7th Cir. 1985).  In *Twohy*, this Court held that: "once a district court

enters judgment upon a dismissal (as opposed to a mere dismissal of the

complaint), the plaintiff may amend the complaint under Rule 15(a), Fed.R.Civ.P.,

solely with 'leave of court' after a motion under Rule 59(e) or 60(b), Fed.R.Civ.P.,

has been made and the judgment has been set aside or vacated." *Id.*  The District

Court's holding that Plaintiffs were required to tender a proposed amended

complaint with their Rule 59(e) motion is simply wrong.  Plaintiffs could not have

complied with Seventh Circuit law unless they waited until the District Court

granted the Rule 59(e) Motion.

## XI.    The District Court Erred in Awarding Costs to Defendants

If, despite the foregoing, the Court of Appeals should affirm the District Court's dismissal with respect to any Defendant, it should nevertheless reverse the District Court's Order on Bill of Costs and remand for recalculation.

A district court must determine that each claimed cost is allowable under 28 U.S.C. §1920.  *Northbrook Excess & Surplus Insur. v. Proctor & Gamble,* 924 F.2d 633, 642 (7th Cir. 1991).  The court must then determine that the amount of each allowable expense is both reasonable and necessary.  *Majeske v. City of Chicago,* 218 F.3d 816, 824 (7th Cir. 2000).

On appeal, this Court must "review carefully whether an expense is recoverable."  *SK Hand Tool v. Dresser Indus.,* 852 F.2d 936, 943 (7th Cir. 1988).  This Court must also review for abuse of discretion the District Court's determination that particular costs were reasonable and necessary.  *See id.*

Here, careful review reveals that the District Court wrongly awarded Defendants costs that are not recoverable under §1920.  Moreover, the District Court abused its discretion in awarding costs that were excessive and unnecessary.

### A.  The District Court Wrongly Awarded Fidelity $141,022 in Unrecoverable "Processing" Costs.

In their Bill of Costs, Fidelity claimed costs of $159,728.40 for duplicating documents for production.  R. 118.  However, the itemized bills reveal that Fidelity paid only $17,289.41 for the production costs of bates endorsing,

"confidential" endorsing, OCR (scanning to electronic format), document
conversion, CD creation, and copying of documents, and spent the remaining
$141,022 on "processing."  Exs. 31-37 to Fidelity Bill of Costs, R. 120.  Fidelity has
described "processing" as "selection and conversion of electronic documents into a
Bates-numbered producible electronic format."  R. 130 at 4.  However, since the
invoices state the conversion and Bates numbering were included in the
$17,289.41 noted above, Fidelity's description of "processing" leads to the
conclusion that they spent $141,022 on document "selection," which is
unrecoverable under §1920.  *See, e.g. Allen v. United States Steel*, 665 F.2d 689,
697 (5th Cir. 1982) (holding that §1920(4) does not allow recovery of the cost of
gathering documents prior to duplication).

Moreover, even if Fidelity incurred this $141,022 for some allowable purpose,
their failure adequately to identify that purpose makes it impossible for the
District Court to evaluate whether the unit costs and total amount of the expense
were both reasonable and necessary.  The District Court should have denied
Fidelity this $141,022.

### B.  The District Court Wrongly Awarded Deere Excessive Costs for Document Duplication.

§1920(4) allows a party to recover costs for "exemplification of documents
necessarily prepared for use in the case."  The phrase "for use in the case" refers
to materials actually prepared for use in presenting evidence to the court."  *EEOC
v. Kenosha Unified S. Dist. No. 1*, 620 F.2d 1220, 1227-28 (7th Cir. 1980) (citation

54

omitted).  In light of this requirement, it was an abuse of discretion for the District Court to award Deere the costs of copying more than 90,000 documents for deposition preparation, or $12,152.04.  Deere failed to show that it was necessary to copy 90,000 documents when it marked only approximately 1,420 pages during depositions and only produced a total of 42,110 documents. Plaintiffs suggested in their Objections to Deere's Bill of Costs, R. 121, that the court generously assume that it was reasonable to copy 21, 437 pages, in which case $2,572.44 would be properly taxable in this category.  The award of $12,152.04 was an abuse of discretion.

The District Court also abused its discretion in awarding Deere $30,131.84 for discovery copies.  Deere produced approximately 42,110 pages.  Assuming the copy rate of $.19 Deere would only be entitled to $24,002.  Moreover, it appears from Exhibit 3 to Deere's Bill of Costs, on an invoice dated 3/19/07 in the amount of $13,500, that Deere may be seeking that amount of reimbursement for duplication related to a different matter.  R. 116.  Removing the $13,500 that is not properly supported from Deere's $30,340.76 claim, Deere should recover at most $16,840.76 in this category.

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court reverse the District Court's Memorandum And Order Of Dismissal With Prejudice; reinstate Plaintiffs' Second Amended Complaint and remand for further proceedings under it; order that, based upon the substantial and newly-

55

discovered evidence presented in Plaintiffs' Motion To Alter Or Amend Judgment

Under Rule 59(e), genuinely-disputed issues of material fact preclude summary

judgment and require a trial, or; in the alternative, that Plaintiffs be granted

leave to amend the Second Amended Complaint; and, in addition, that the Court

grant any additional relief that it deems appropriate.  Plaintiffs also respectfully

request that the Court reverse the District Court's Order on Bill of Costs and,

should Defendants eventually qualify for costs, order recalculation of their

allowable, reasonable and necessary expenses.

Respectfully submitted,

SCHLICHTER, BOGARD & DENTON


_____/s/ Jerome J. Schlichter_____
JEROME J. SCHLICHTER
jschlichter@uselaws.com
DANIEL V. CONLISK
SCHLICHTER, BOGARD & DENTON
100 South Fourth Street, Suite 900
St. Louis, MO 63102
Telephone:   314.621.6115
Fax: 314.621.7151

## CERTIFICATE OF COMPLIANCE WITH F.R.A.P. RULE 32(a)(7)

The undersigned, counsel of record for the Plaintiff-Appellant, Jerome J.

Schlichter, furnishes the following in compliance with F.R.A.P. Rule 32(a)(7):

I hereby certify that this brief conforms to the rules contained in F.R.A.P. Rule

32(a)(7) for a brief produced with a proportionally spaced font.  The length of the

brief is 13,888 words.

Dated ___3/6/08_____.


                                   SCHLICHTER, BOGARD & DENTON


                                   _____/s/ Jerome J. Schlichter_____
                                   JEROME J. SCHLICHTER
                                   Attorney for the Plaintiffs-Appellants
                                   Dennis Hecker, Jonna Duane, and
                                   Janice Riggins


SCHLICHTER, BOGARD & DENTON
100 South Fourth Street, Suite 900
St. Louis, MO 63102
Telephone: 314.621.6115
Fax: 314.621.7151

## PROOF OF SERVICE

The undersigned, counsel for the Plaintiff-Appellant, Jerome J. Schlichter,

hereby certifies that on March 7, 2008, two copies of the Joint Consolidated Brief

and Required Short Appendix of Appellant and one copy of the Plaintiffs-

Appellants Appendix as well as a digital version containing the brief, were

delivered by US. Postal Mail to counsel for the Defendant-Appellee.

Dated    3/6/08   .

SCHLICHTER, BOGARD & DENTON


_____/s/ Jerome J. Schlichter_____
JEROME J. SCHLICHTER
Attorney for the Plaintiffs-Appellants
Dennis Hecker, Jonna Duane, and
Janice Riggins

SCHLICHTER, BOGARD & DENTON
100 South Fourth Street, Suite 900
St. Louis, MO 63102
Telephone: 314.621.6115
Fax: 314.621.7151

58

## CIRCUIT RULE 30(d) STATEMENT

Pursuant to Circuit Rule 30(d), counsel certifies that all material required by

Circuit Rule 30(a) are included in the short appendix.  Material required by

Circuit Rule 30(b) are included in the Plaintiffs' Appendix.


SCHLICHTER, BOGARD & DENTON


_____/s/ Jerome J. Schlichter_____
JEROME J. SCHLICHTER
Attorney for the Plaintiffs-Appellants
Dennis Hecker, Jonna Duane, and
Janice Riggins


SCHLICHTER, BOGARD & DENTON
100 South Fourth Street, Suite 900
St. Louis, MO 63102
Telephone: 314.621.6115
Fax: 314.621.7151