Nos. 07-3605 and 08-1224

══════════════════════════════════

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT
―――――――――

DENNIS HECKER, JONNA DUANE, and JANICE RIGGINS,
*Plaintiffs-Appellants*,

v.

DEERE & COMPANY, FIDELITY MANAGEMENT TRUST COMPANY and
FIDELITY MANAGEMENT & RESEARCH COMPANY,
*Defendants-Appellees.*
―――――――――

Appeal from the United States District Court
for the Western District of Wisconsin
Case No. 06-C-719-S C 6969
The Honorable John C. Shabaz
―――――――――

**BRIEF OF DEFENDANTS-APPELLEES**
**FIDELITY MANAGEMENT TRUST COMPANY and**
**FIDELITY MANAGEMENT & RESEARCH COMPANY**
―――――――――

STEPHEN M. SHAPIRO          WALTER DELLINGER
TIMOTHY S. BISHOP           ROBERT N. ECCLES
MAYER BROWN LLP             BRIAN D. BOYLE
71 South Wacker Drive       JONATHAN D. HACKER
Chicago, Illinois 60606     O'MELVENY & MYERS LLP
(312) 782-0600              1625 Eye Street, N.W.
(312) 701-7711 (fax)        Washington, D.C. 20006
                            (202) 383-5285
                            (202) 383-5414 (fax)

*Attorneys for Defendants-Appellees Fidelity Management Trust Company*
*and Fidelity Management & Research Company*

══════════════════════════════════

**CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No:     07-3605 and 08-1224 (consolidated)

Short Caption:     Hecker v. Deere & Co.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

**[  ]     PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing the item #3):

Fidelity Management Trust Company ("FMTC")

Fidelity Management & Research Company ("FMR Co.")

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

O'Melveny & Myers LLP

Mayer Brown LLP

Goodwin Procter LLP

Reinhart Boerner Van Deuren s.c.

(3)  If the party or amicus is a corporation:

i)  Identify all its parent corporations, if any; and

FMTC and FMR Co. are wholly-owned subsidiaries of FMR LLC

ii)  list any publicly held company that owns 10% or more of the party's or amicus' stock:

No publicly held company owns 10% or more of the shares of either FMTC or FMR Co.

Attorney's Signature:  /s/ Walter Dellinger                Date:   May 8, 2008

Attorney's Printed Name:   Walter Dellinger

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Cir. Rule 3(d). Yes__ No _X_.

Address: O'Melveny & Myers LLP

          1625 Eye Street, N.W.

          Washington, D.C. 20006

Phone Number   202.383.5300                Fax Number:    202.383.5414

E-Mail Address:    wdellinger@omm.com

**CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No:     07-3605 and 08-1224 (consolidated)

Short Caption:     Hecker v. Deere & Co.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

**[   ]     PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing the item #3):

Fidelity Management Trust Company ("FMTC")
Fidelity Management & Research Company ("FMR Co.")

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

O'Melveny & Myers LLP

Mayer Brown LLP

Goodwin Procter LLP

Reinhart Boerner Van Deuren s.c.

(3) If the party or amicus is a corporation:

i) Identify all its parent corporations, if any; and

FMTC and FMR Co. are wholly-owned subsidiaries of FMR LLC

ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

No publicly held company owns 10% or more of the shares of either FMTC or FMR Co.

Attorney's Signature:   /s/ Robert N. Eccles     Date:   May 8, 2008

Attorney's Printed Name:   Robert N. Eccles

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Cir. Rule 3(d). Yes _X_ No ___.

Address: O'Melveny & Myers LLP

1625 Eye Street, N.W.

Washington, D.C. 20006

Phone Number   202.383.5300     Fax Number:   202.383.5414

E-Mail Address:   beccles@omm.com

**CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: ___07-3605 and 08-1224 (consolidated)___

Short Caption: ___Hecker v. Deere & Co.___

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> **[   ]    PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing the item #3):

Fidelity Management Trust Company ("FMTC")

Fidelity Management & Research Company ("FMR Co.")

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

O'Melveny & Myers LLP

Mayer Brown LLP

Goodwin Procter LLP

Reinhart Boerner Van Deuren s.c.

(3)  If the party or amicus is a corporation:

i)  Identify all its parent corporations, if any; and

FMTC and FMR Co. are wholly-owned subsidiaries of FMR LLC

ii)  list any publicly held company that owns 10% or more of the party's or amicus' stock:

No publicly held company owns 10% or more of the shares of either FMTC or FMR Co.

Attorney's Signature: _/s/ Brian D. Boyle___     Date: ___May 8, 2008___

Attorney's Printed Name: ___Brian D. Boyle___

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Cir. Rule 3(d). Yes__ No _X_.

Address: O'Melveny & Myers LLP

1625 Eye Street, N.W.

Washington, D.C. 20006

Phone Number ___202.383.5300___     Fax Number: ___202.383.5414___

E-Mail Address: ___bboyle@omm.com___

**CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: _____07-3605 and 08-1224 (consolidated)_____

Short Caption: _____Hecker v. Deere & Co._____

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> **[   ]    PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing the item #3):

Fidelity Management Trust Company ("FMTC")
Fidelity Management & Research Company ("FMR Co.")

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

O'Melveny & Myers LLP

Mayer Brown LLP

Goodwin Procter LLP

Reinhart Boerner Van Deuren s.c.

(3)  If the party or amicus is a corporation:

   i)  Identify all its parent corporations, if any; and

   FMTC and FMR Co. are wholly-owned subsidiaries of FMR LLC

   ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

   No publicly held company owns 10% or more of the shares of either FMTC or FMR Co.

Attorney's Signature:  _/s/ Jonathan D. Hacker_____        Date:   _May 8, 2008_____

Attorney's Printed Name:   _Jonathan D. Hacker_____

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Cir. Rule 3(d). Yes__ No _X_.

Address: O'Melveny & Myers LLP

   1625 Eye Street, N.W.

   Washington, D.C. 20006

Phone Number   _202.383.5300_____Fax Number:   _202.383.5414_____

E-Mail Address:   _jhacker@omm.com_____

**CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No:    07-3605 and 08-1224 (consolidated)

Short Caption:    Hecker v. Deere & Co.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

**[   ]    PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing the item #3):

Fidelity Management Trust Company ("FMTC")

Fidelity Management & Research Company ("FMR Co.")

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

O'Melveny & Myers LLP

Mayer Brown LLP

Goodwin Procter LLP

Reinhart Boerner Van Deuren s.c.

(3) If the party or amicus is a corporation:

i)  Identify all its parent corporations, if any; and

FMTC and FMR Co. are wholly-owned subsidiaries of FMR LLC

ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

No publicly held company owns 10% or more of the shares of either FMTC or FMR Co.

Attorney's Signature:  /s/ Stephen M. Shapiro              Date:   May 8, 2008

Attorney's Printed Name:   Stephen M. Shapiro

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Cir. Rule 3(d). Yes__ No _X_.

Address: Mayer Brown LLP

71 South Wacker Drive

Chicago, Illinois  60606

Phone Number   312.782.0600              Fax Number:   312.701.7711

E-Mail Address:    sshapiro@mayerbrown.com

**CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: ___07-3605 and 08-1224 (consolidated)___

Short Caption: ___Hecker v. Deere & Co._____

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> **[   ]   PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing the item #3):

Fidelity Management Trust Company ("FMTC")
Fidelity Management & Research Company ("FMR Co.")

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

O'Melveny & Myers LLP

Mayer Brown LLP

Goodwin Procter LLP

Reinhart Boerner Van Deuren s.c.

(3) If the party or amicus is a corporation:

  i)   Identify all its parent corporations, if any; and

  FMTC and FMR Co. are wholly-owned subsidiaries of FMR LLC

  ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

  No publicly held company owns 10% or more of the shares of either FMTC or FMR Co.

Attorney's Signature: _/s/ Timothy S. Bishop_____    Date: __May 8, 2008_____

Attorney's Printed Name: __Timothy S. Bishop_____

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Cir. Rule 3(d). Yes__ No _X_.

Address: Mayer Brown LLP_____

   71 South Wacker Drive_____

   Chicago, Illinois  60606_____

Phone Number __312.782.0600_____Fax Number: __312.701.7711_____

E-Mail Address: ___tbishop@mayerbrown.com_____

# TABLE OF CONTENTS

**Page**

STATEMENT CONCERNING ORAL ARGUMENT ............................................... viii

JURISDICTIONAL STATEMENT .............................................................. 1

INTRODUCTION ............................................................................... 1

STATEMENT OF THE ISSUES PRESENTED .................................................. 3

STATEMENT OF THE CASE................................................................... 4

    A.    Statutory Background ................................................................ 4

    B.    Factual Background ................................................................... 8

        1.    The Parties.................................................................... 8

        2.    The Trust Agreements................................................... 9

    C.    Proceedings Below ................................................................ 11

        1.    Plaintiffs' Allegations Against The Fidelity
              Entities................................................................... 11

        2.    Pre-trial Proceedings................................................. 14

        3.    District Court's Ruling .............................................. 15

        4.    Post-Judgment Rulings .............................................. 16

SUMMARY OF ARGUMENT ............................................................... 17

STANDARD OF REVIEW.................................................................... 19

ARGUMENT .................................................................................. 21

I.    THE CONDUCT PLAINTIFFS ATTRIBUTE TO THE
    FIDELITY ENTITIES IS NOT FIDUCIARY CONDUCT
    UNDER ERISA ....................................................................... 21

    A.    The Fidelity Entities' Lack Of Functional Fiduciary
        Status Can Properly Be Determined On The Basis Of
        The Pleadings And Plan Documents .................................... 21

    B.    Neither Of The Functions Cited By Plaintiffs Constitutes
        The Exercise Of Fiduciary Authority ................................... 25

        1.    The Fidelity Entities Exercise No Discretion
              Over Deere's Investment Choices .............................. 26

        2.    FMR Co.'s Decision About How To Dispose Of Its
              Fully Disclosed Fees For Managing Mutual
              Funds Is Not A Fiduciary Act .................................... 32

II.    THE FIDELITY ENTITIES BORE NO DISCLOSURE DUTY
    AS TO THEIR INTERNAL REVENUE ALLOCATIONS.............................. 38

i

**TABLE OF CONTENTS**
**(Continued)**

Page

III. THE DISTRICT COURT CORRECTLY REJECTED
PLAINTIFFS' RULE 59 MOTION .................................................................. 43

    A.     Plaintiffs' Failure To Proffer An Amended Complaint
        Justified Rejection Of Their Motion ...................................... 43

    B.     Because Plaintiffs' Rule 59 Motion Did Not Rest On
        New Evidence, Their Request To Amend Their
        Complaint Was Untimely........................................................ 45

    C.     The Evidence Plaintiffs Cited Did Nothing To Cure
        The Defects In Their Complaint .......................................... 47

IV. THE DISTRICT COURT'S COSTS AWARD WAS NOT AN
ABUSE OF DISCRETION.................................................................. 48

CONCLUSION................................................................................... 50

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Allen v. U.S. Steel Corp.,*
   665 F.2d 689 (5th Cir. 1982)....................................................................... 49

*Anweiler v. Am. Elec. Power Co.,*
   3 F.3d 986 (7th Cir. 1993)........................................................................... 40

*Bannon v. Univ. of Chi.,*
   503 F.3d 623 (7th Cir. 2007)....................................................................... 31

*Baptist v. City of Kankakee,*
   481 F.3d 485 (7th Cir. 2007)....................................................................... 21

*BDT Prods. v. Lexmark Int'l, Inc.,*
   405 F.3d 415 (6th Cir. 2005)....................................................................... 49

*Beddall v. State St. Bank & Trust Co.,*
   137 F.3d 12 (1st Cir. 1998) .................................................................. 22, 23

*Bell Atlantic Corp. v. Twombly,*
   127 S. Ct. 1955 (2007)................................................................................ 20

*Bressner v. Ambroziak,*
   379 F.3d 478 (7th Cir. 2004)................................................................. 43, 47

*Chi. Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.,*
   474 F.3d 463 (7th Cir. 2007)............................................................... *passim*

*Coleman v. Nationwide Life Ins. Co.,*
   969 F.2d 54 (4th Cir. 1992) ................................................................... 7, 23

*Comm. for First Amendment v. Campbell,*
   962 F.2d 1517 (10th Cir. 1992) .................................................................. 45

*County of McHenry v. Ins. Co. of the West,*
   438 F.3d 813 (7th Cir. 2006)....................................................................... 44

*Credit Suisse Secs. (USA) LLC v. Billing,*
   127 S. Ct. 2383 (2007)................................................................... 37, 38, 42

*Crestview Vill. Apartments v. U.S. Dept. of Hous. & Urban Dev.,*
   383 F.3d 552 (7th Cir. 2004)....................................................................... 44

*Curtiss-Wright Corp. v. Schoonejongen,*
   514 U.S. 71 (1995)................................................................................... 4, 39

*Custer v. Sweeney,*
   89 F.3d 1156 (4th Cir. 1996) ................................................................ 22, 24

*Daily Income Fund, Inc. v. Fox,*
   464 U.S. 523 (1984)..................................................................................... 36

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*DiFelice v. US Airways, Inc.,*
  397 F. Supp. 2d 735 (E.D. Va. 2005) ................................................. 6, 22

*Eddy v. Colonial Life Ins. Co.,*
  919 F.2d 747 (D.C. Cir. 1990) ........................................................... 40

*Egelhoff v. Egelhoff,*
  532 U.S. 141 (2001) ......................................................................... 41

*Ehlmann v. Kaiser Found. Health Plan,*
  198 F.3d 552 (5th Cir. 2000) ......................................................... 39, 40

*Farm King Supply, Inc. Integrated Profit Sharing Plan & Trust*
  *v. Edward D. Jones & Co.,*
  884 F.2d 288 (7th Cir. 1989) ........................................................... 8, 31

*Figgie Int'l, Inc. v. Miller,*
  966 F.2d 1178 (7th Cir. 1992) ....................................................... 45, 47

*Grindstaff v. Green,*
  133 F.3d 416 (6th Cir. 1998) ............................................................. 6

*Haddock v. Nationwide Fin. Servs.,*
  419 F. Supp. 2d 156 (D. Conn. 2006) ............................................ 31, 35

*In re Merrill Lynch Inv. Mgmt. Funds Sec. Litig.,*
  434 F. Supp. 2d 233 (S.D.N.Y. 2006) ............................................... 42

*In re Morgan Stanley & Van Kampen Mut. Fund Sec. Litig.,*
  2006 U.S. Dist. LEXIS 20758 (S.D.N.Y. Apr. 18, 2006) ................... 42, 43

*Johnson v. Georgia-Pacific Corp.,*
  19 F.3d 1184 (7th Cir. 1994) ........................................................ 34, 35

*Killingsworth v. HSBC Bank Nev., N.A.,*
  507 F.3d 614 (7th Cir. 2007) ........................................................ 19, 20

*Klosterman v. Western Gen. Mgmt., Inc.,*
  32 F.3d 1119 (7th Cir. 1994) ............................................................. 8

*Kurzweil v. Philip Morris Cos., Inc.,*
  1997 WL 167043 (S.D.N.Y. Apr. 9, 1997) ........................................... 46

*LaRue v. DeWolff, Boberg & Assocs.,*
  128 S. Ct. 1020 (2008) ...................................................................... 5

*Limestone Dev. Corp. v. Vill. of Lemont,*
  __ F.3d __, 2008 U.S. App. LEXIS 6891 (7th Cir. Apr. 1, 2008) ........ 20, 22

*Little v. Mitsubishi Motors N. Am., Inc.,*
  514 F.3d 699 (7th Cir. 2008) ............................................................ 20

TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Lockheed Corp. v. Spink,*
517 U.S. 882 (1996)................................................................ 4

*Mertens v. Hewitt Assocs.,*
508 U.S. 248 (1993)................................................ 6, 8, 22, 37

*Nelson v. Hodowal,*
512 F.3d 347 (7th Cir. 2008)................................................ 40

*Olson v. E.F. Hutton & Co.,*
957 F.2d 622 (8th Cir. 1992)................................................ 24

*Otto v. Variable Annuity Life Ins. Co.,*
814 F.2d 1127 (7th Cir. 1986)............................................. 44

*Pappas v. Buck Consultants, Inc.,*
923 F.2d 531 (7th Cir. 1991)................................................ 22

*Pegram v. Herdrich,*
530 U.S. 211 (200).................................................... *passim*

*Plumb v. Fluid Pump Serv.,*
124 F.3d 849 (7th Cir. 1997)..................................... *passim*

*Pohl v. Nat'l Benefits Consultants, Inc.,*
956 F.2d 126 (7th Cir. 1992)................................................. 7

*Pugh v. Tribune Co.,*
__ F.3d __, 2008 U.S. App. LEXIS 6912 (7th Cir. Apr. 2, 2008) ........................... 47

*Rankin v. Rots,*
278 F. Supp. 2d 853 (E.D. Mich. 2003) ................................ 22

*Reich v. Lancaster,*
55 F.3d 1034 (5th Cir. 1995).............................................. 24

*Ridings v. Riverside Med. Ctr.,*
2007 U.S. Dist. LEXIS 21145 (C.D. Ill. 2007)........................ 49

*Rush Prudential HMO, Inc. v. Moran,*
536 U.S. 355 (2002)............................................................. 4

*Schiller v. Physicians Res. Group, Inc.,*
342 F.3d 563 (5th Cir. 2003).............................................. 45

*Schloegel v. Boswell,*
994 F.2d 266 (5th Cir. 1993)........................................ 24, 31

*Schmidt v. Sheet Metal Workers' Nat'l Pension Fund,*
128 F.3d 541 (7th Cir. 1997)................................................. 8

*Schulist v. Blue Cross of Iowa,*
717 F.2d 1127 (7th Cir. 1983)........................................ 28, 29

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Siemers v. Wells Fargo & Co.,*
   2007 WL 760750 (N.D. Cal. 2007)..........................................................43

*Tierney v. Vahle,*
   304 F.3d 734 (7th Cir. 2002)................................................................20

*Twohy v. First Nat'l Bank,*
   758 F.2d 1185 (7th Cir. 1985).............................................................44

*U.S. v. Dabney,*
   498 F.3d 455 (7th Cir. 2007)................................................................31

*Varity Corp. v. Howe,*
   516 U.S. 489 (1996)...............................................................................38

*Vicom, Inc. v. Harbridge Merchant Servs.,*
   20 F.3d 771 (7th Cir. 1994)..................................................................44

**STATUTES**

15 U.S.C. § 77a...........................................................................................41

15 U.S.C. § 77aa.........................................................................................41

15 U.S.C. § 78a...........................................................................................41

15 U.S.C. § 78l............................................................................................41

15 U.S.C. § 80a-1........................................................................................41

15 U.S.C. § 80a-8..................................................................................41, 42

15 U.S.C. § 80a-29......................................................................................42

15 U.S.C. § 80a-36......................................................................................36

15 U.S.C. § 80b-1........................................................................................41

29 U.S.C. § 1002(21) ..........................................................................6, 8, 34

29 U.S.C. § 1101...................................................................................8, 33

29 U.S.C. § 1102...........................................................................................5

29 U.S.C. § 1103...........................................................................................5

29 U.S.C. § 1104...........................................................................................5

29 U.S.C. § 1109...........................................................................................5

29 U.S.C. § 1132...........................................................................................5

29 U.S.C. §§ 1021-31..................................................................................39

**REGULATORY MATERIALS**

17 C.F.R. § 270.30e-1.................................................................................42

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

29 C.F.R. § 2509.75-8 (DOL Interp. Bull. 75-8) ..............................................7

29 C.F.R. § 2510.3-21 ......................................................................................8

29 C.F.R. § 2520.101-1 ...................................................................................39

Department of Labor's Advisory Opinion 97-15A, 1997 WL
    277980 (May 22, 1997)...............................................................................31

DOL Field Assistance Bulletin 2004-03 (2004) ..............................................6

Fee and Expense Disclosures to Participants in Individual
    Account Plans, 72 Fed. Reg. 20,457 (Apr. 25, 2007)................................41

**LEGISLATIVE MATERIALS**

H.R. 3185, 110th Cong. (as reported by H. Comm. on Educ. &
    Labor, April 16, 2008) ..............................................................................41

H.R. Rep. No. 93-1280 (1974) (Conf. Rep.)...................................................36

S. Rep. 91-184 (May 21, 1969).......................................................................36

## STATEMENT CONCERNING ORAL ARGUMENT

Appellees Fidelity Management Trust Company ("FMTC") and Fidelity Management & Research Company ("FMR Co.") (collectively, "the Fidelity entities") respectfully request oral argument. Although the Fidelity entities submit that this appeal is controlled by existing precedent squarely rejecting plaintiffs' theory of fiduciary liability under the Employee Retirement Income Security Act ("ERISA"), it is the very novelty of plaintiffs' theory – and the profound impact adoption of that theory would have on the mutual fund industry – that renders the appeal unusually significant. The Fidelity entities believe oral argument would assist the Court in understanding why plaintiffs' fiduciary-status theory cannot be squared with the precedents of this Court and others.

## JURISDICTIONAL STATEMENT

Appellants' jurisdictional statement is complete and correct.

## INTRODUCTION

This putative class action is one of more than a dozen filed around the country – most by the same counsel within a six-month period – seeking to invoke the fiduciary standards of ERISA to impose a new form of judicial regulation on the relationship between 401(k) employee benefit plans and entities that provide administrative services and investment products to such plans.

Deere & Company ("Deere") is the sponsor of two ERISA-governed 401(k) employee benefit plans. FMTC is the directed trustee and recordkeeper for the Deere plans, and manager of two of the 26 investment options available to participants in the Deere plans. FMR Co. is the investment adviser to mutual funds offered as investment options under the Deere plans.

Plaintiffs sued Deere and both Fidelity entities under ERISA for breaching fiduciary duties allegedly owed to plan participants. Plaintiffs' theory is that the Deere plans pay excessive fees, and that the Fidelity entities in turn receive undisclosed and excessive compensation, because unbeknownst to plan participants, FMR Co. allegedly shares with FMTC a portion of the fees it receives from Fidelity mutual funds in which the Deere plans invest.

The underlying theory of plaintiffs' suit is utterly without substance as a matter of fact and law:  because both the 401(k) plan recordkeeping and mutual fund markets are intensely competitive, economic forces constrain businesses in

such markets from charging excessive fees, and neither ERISA nor the Department of Labor ("DOL") – which has prescribed numerous disclosures it deems necessary to protect participants' interests – requires disclosure of how mutual-fund advisers dispose of their revenues.

But those flaws in plaintiffs' action are beside the point for present purposes. As the district court recognized, and as the analysis in DOL's amicus brief confirms, there is a threshold legal defect in plaintiffs' case against the Fidelity defendants: plaintiffs assert claims for breach of fiduciary duty, but the Fidelity entities *had no fiduciary authority with respect to the conduct at issue in this action.* The hallmark of fiduciary status under ERISA is the exercise of discretionary authority over the plan. But according to plaintiffs' own complaint, the only role played by the Fidelity entities in Deere's choice of investment options was entering into contractual agreements with Deere limiting the Plans' investment options mainly to Fidelity-managed funds. Numerous precedents of this Court and others make clear that a plan's service provider does not exercise discretionary authority over the plan when the provider negotiates an arm's-length contract with the plan fiduciary over the products and services to be provided. And as to FMR Co.'s disposition of fees received from Fidelity mutual funds, the plain text of ERISA provides – and DOL's brief confirms – that mutual fund assets are not plan assets, and thus fees paid out of mutual fund assets are not plan assets. Accordingly, what FMR Co. decides to do with its fees, including allegedly sharing some with its sister entity FMTC, raises no fiduciary issues under ERISA whatsoever.

2

Plaintiffs, in short, allege no legally cognizable basis for holding the Fidelity entities liable as fiduciaries with respect to selection of the Deere plans' investment options or disclosure about the extent to which compensation earned from Fidelity mutual funds is shared between Fidelity affiliates. There are no obscure facts to be found or mysteries to be unwound through elaborate discovery (though there was, in fact, elaborate pre-dismissal discovery here). The complaint alone tells the Court everything necessary to understand that the Fidelity entities do not perform any fiduciary functions relevant to plaintiffs' allegations. The order dismissing the complaint against the Fidelity entities should be affirmed.

## STATEMENT OF THE ISSUES PRESENTED

1.  Whether the Fidelity entities performed fiduciary functions by:

> (a) making Fidelity mutual funds available for consideration and selection by Deere as required by the Trust Agreements, where the terms of the Agreements explicitly provide that Deere has the exclusive authority to select which funds to provide as plan investment options and plaintiffs allege no facts showing that the Fidelity entities controlled Deere's decisions; or

> (b) allegedly allocating to FMTC a percentage of the revenues received by FMR Co. from Fidelity-managed funds.

2.  Whether the Fidelity entities breached a fiduciary duty to disclose to participants their alleged intra-corporate revenue payments.

3.  Whether the district court abused its discretion in rejecting plaintiffs' Rule 59 motion when (a) plaintiffs failed to proffer a proposed amended complaint, (b) the evidence presented in that motion was available to the plaintiffs prior to judgment, and (c) the evidence added nothing to the complaint's legally defective and factually insufficient allegations of fiduciary status.

4.  Whether the district court's costs award was an abuse of discretion.

## STATEMENT OF THE CASE

This case arises under ERISA § 502(a), 29 U.S.C. § 1132(a), which provides a federal cause of action to participants in ERISA-governed employee benefit plans for breach of fiduciary duties imposed by ERISA § 404, 29 U.S.C. § 1104; *see* 29 U.S.C. § 1132(a)(2), and for other appropriate equitable relief, *see id.* § 1132(a)(3). Plaintiffs are participants in 401(k) plans sponsored by appellant Deere. They assert that Deere and the Fidelity entities breached fiduciary duties to the Deere plans and their participants with respect to the fees paid and Fidelity entities' compensation earned for products and services provided to the plans.

### A.    Statutory Background

ERISA neither compels employers to establish employee benefit plans nor dictates the substantive features of any voluntarily established plan. *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996); *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 71, 78 (1995). ERISA's protections instead are contractual and procedural in nature: once an employer decides to establish a benefit plan, ERISA essentially makes its substantive terms (whatever they may be) enforceable in federal court, and requires that the plan include certain internal administrative mechanisms to ensure sound plan management and protect participants' rights under the plan. *See Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 385 (2002).

Chief among ERISA's protections is the requirement that every plan be managed by "one or more named fiduciaries" identified in the written instrument

establishing the plan. 29 U.S.C. § 1102(a)(1). A named fiduciary must have "authority to control and manage the operation and administration of the plan," *id.*, and it must do so "solely in the interests of the participants and beneficiaries," *id.* § 1104(a)(1). "The principal statutory duties imposed on fiduciaries [by ERISA] relate to the proper management, administration and investment of fund assets, with an eye toward ensuring that the benefits authorized by the plan are ultimately paid to participants and beneficiaries." *LaRue v. DeWolff, Boberg & Assocs.*, 128 S. Ct. 1020, 1024 (2008) (quotation omitted). Participants may bring suit under ERISA to challenge not only allegedly improper benefit determinations by named fiduciaries, 29 U.S.C. § 1132(a)(1)(B), but also any other breach of fiduciary duty stemming from discretionary authority over the plan or control of plan assets, *id.* §§ 1109(a), 1132(a)(2) & (a)(3).

In addition to the "named fiduciary" that must be designated in writing as responsible for management of the plan, ERISA recognizes several other types of fiduciaries. One is the trustee of plan assets. ERISA requires (with exceptions not relevant here) that the assets of the plan be held in trust by a trustee named in the plan or the trust document. *Id.* § 1103(a). The trustee generally has "exclusive authority and discretion to manage and control the assets, *except to the extent that … the plan expressly provides that the trustee … [is] subject to the direction of [the] named fiduciary … in which case the trustee[] shall be subject to the proper directions of such fiduciary." *Id.* § 1103(a)(1) (emphasis added). Because the actions of "directed trustees" concerning plan assets are subject to control by a

named fiduciary, the Department of Labor and numerous courts have recognized that the fiduciary duties of a directed trustee are "significantly narrower than the duties generally ascribed to a discretionary trustee under common law trust principles." DOL Field Assistance Bulletin 2004-03 (2004), *available at* www.dol.gov/ebsa/regs/fab_2004-3.html; *see DiFelice v. US Airways, Inc.*, 397 F. Supp. 2d 735, 749 (E.D. Va. 2005) (directed trustee's duty is to follow named fiduciary's instructions unless they "patently violate" terms of plan or requirements of ERISA); *see also Grindstaff v. Green*, 133 F.3d 416, 425-26 (6th Cir. 1998).

An entity also may be deemed a plan fiduciary based on its conduct. Under ERISA § 3(21) (reprinted in Statutory Addendum), an entity is a fiduciary "to the extent" the entity "exercises any discretionary authority or discretionary control" over plan management, "discretionary authority or discretionary responsibility" over plan administration, or "any authority or control respecting management or disposition" of plan assets. 29 U.S.C. § 1002(21)(A). Under this "functional" definition, a fiduciary under ERISA is not limited to an entity formally designated as such in the plan documents, but includes any entity that in fact exercises "control and authority over the plan" – i.e., "real power to control what the plan did." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993); *see Chi. Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 471 (7th Cir. 2007). Because an entity is a fiduciary only "to the extent" it exercises control or authority over the plan or its assets, an entity "may be an ERISA fiduciary for some purposes" – i.e., those for which it exercises control or authority – "but not for others." *Plumb*

*v. Fluid Pump Serv.*, 124 F.3d 849, 854 (7th Cir. 1997); *see Caremark*, 474 F.3d at

472; *Coleman v. Nationwide Life Ins. Co.,* 969 F.2d 54, 61 (4th Cir. 1992).

Accordingly, to make out a claim for breach of fiduciary duty under ERISA, a

plaintiff must allege and prove that the defendant exercised control or authority

"*with respect to the particular activity at issue.*"  *Plumb*, 124 F.3d at 854 (emphasis

added); *see Pegram v. Herdrich*, 530 U.S. 211, 226 (200) ("threshold question" in

ERISA fiduciary case is whether defendant "was performing a fiduciary function"

with respect to "the action subject to complaint"); *Caremark*, 474 F.3d at 472.

ERISA's "functional" definition of fiduciary does not encompass the

performance of administrative functions under the plan – even complex functions

essential to the plan's operation – where the entity performing those functions is

simply following the requirements of the plan and the directions of the named

fiduciary, and therefore lacks independent discretion over plan features or the

disposition of plan assets.  *See Caremark*, 474 F.3d at 477 (entity does not "become

an ERISA fiduciary simply by performing administrative functions and claims

processing within a framework of rules established by the plan especially when the

ultimate decision belong[s] to the plan"); 29 C.F.R. § 2509.75-8 (DOL Interp. Bull.

75-8) (entity that performs "administrative functions … within a framework of

policies, interpretations, rules, practices and procedures made by other persons"

is not a fiduciary).  Because "ERISA makes the existence of discretion a *sine qua*

*non* of fiduciary duty," *Pohl v. Nat'l Benefits Consultants, Inc.*, 956 F.2d 126, 129

(7th Cir. 1992), there can be no fiduciary liability on the part of those who lacked

power to control the plan, *see Mertens*, 508 U.S. at 262, but instead were merely

obliged to do as instructed by the plan and its fiduciaries, *see Schmidt v. Sheet*

*Metal Workers' Nat'l Pension Fund*, 128 F.3d 541, 547 (7th Cir. 1997); *Plumb*, 124

F.3d at 854; *Klosterman v. Western Gen. Mgmt., Inc.*, 32 F.3d 1119, 1124-25 (7th

Cir. 1994).

Finally, ERISA's fiduciary definition also includes a specific reference to

mutual-fund advisers.  The definition includes a person who renders investment

advice for a fee with respect to plan assets, 29 U.S.C. § 1002(21)(A), but it expressly

provides that an adviser to a mutual fund in which the plan invests is not, by virtue

of that role, an ERISA fiduciary to the plan, *id.* § 1002(21)(B).  Further, a plan's

investment in a mutual fund does not render the fund's assets "plan assets" under

ERISA; the plan's assets consist only of the mutual fund shares owned by the plan.

*Id.* § 1101(b)(1).[1]

## B.    Factual Background

### 1.    *The Parties*

Deere is a Fortune 100 publicly-traded corporation, which sponsors two

"defined contribution" or "individual account" 401(k) plans for its employees – the

Deere & Co. Savings and Investment Plan and the Tax-Deferred Savings and

---

[1] A strict set of conditions must be satisfied for an entity to be deemed a fiduciary under the investment advice prong of ERISA's fiduciary definition.  *See* 29 C.F.R. § 2510.3-21(c)(1); *Farm King Supply, Inc. Integrated Profit Sharing Plan & Trust v. Edward D. Jones & Co.*, 884 F.2d 288, 293-94 (7th Cir. 1989) (explaining conditions and distinguishing investment advice prong of fiduciary definition from discretionary control prong).  The investment advice prong is not relevant here – plaintiffs have not invoked it, either below or on appeal, and have never purported to square Fidelity's role with the strict requirements of this provision.

Investment Plan (collectively, "Deere Plans" or "Plans"). Participants may direct that contributions into their individual accounts be invested in any of the investment options offered by the Plans. A00013 (Second Amended Complaint ("SAC" or "complaint") ¶ 36), A00015 (SAC ¶ 44). Deere is the administrator and named fiduciary of the Plans. A0004-5 (SAC ¶ 18).

FMTC is the directed trustee of both Plans, pursuant to written Trust Agreements established between Deere and FMTC, as required by ERISA. FMTC also manages two of the non-mutual-fund investment options selected by Deere for Plan participants under the terms of the Trust Agreements. A0005 (SAC ¶ 20).

FMR Co. is an investment adviser registered under the Investment Advisers Act of 1940. It is the adviser to Fidelity mutual funds made available by Deere for selection by plan participants. A0006 (SAC ¶ 22). FMR Co. is not a party to the Trust Agreements or to any service or other agreement with Deere or its Plans.

2.    *The Trust Agreements*

Deere and FMTC entered into the initial Trust Agreements establishing FMTC's duties to the Plans in 1990. A00043 (SAC ¶ 34), A00163 (SAC ¶ 42). Although there are separate Trust Agreements for each Plan, they are identical in all respects relevant here. Three provisions of the Trust Agreements are pertinent to this case.

First, as authorized by ERISA, the Trust Agreements establish FMTC as a "directed trustee." The Agreements state that "[t]he Named Fiduciary [Deere] shall direct the Trustee as to what investment options Plan participants may invest in"

9

and that "[t]he Trustee shall have no responsibility for the selection of investment options under the Trust and shall not render investment advice to any person in connection with the selection of such options." A00049, A00169; *see also* A0004 (SAC ¶ 18) ("In its role as administrator, [Deere] has the authority and discretion to select the investments available to Plan participants and beneficiaries[.]"), A0005 (SAC ¶ 21) ("Deere as Plan Administrator ha[s] final authority for the selection of the investment options").

Second, the Trust Agreements specify "limitations" on the investment options Deere may make available to its Plans' participants. A00049-50, A00169-70. As the complaint states, the Trust Agreements provide that "Deere would limit its selection [of investment options] to those securities issued by investment companies for which [FMR Co.] serves as investment adviser or for which FMTC itself provides investment advice, subject to an exception for certain pre-existing guaranteed investment contracts (GICs) and the Deere Common Stock Fund." A0005-6 (SAC ¶ 21); *see* A00049-50, A00169-70. In 1997, the Trust Agreements were amended to add another significant option, Fidelity's BrokerageLink® service, which allows participants to invest in more than 2500 other mutual funds, including thousands of non-Fidelity mutual funds. Pls. Br., Tab A ("MTD Op."), at 16; A00140-42, A00239-41. The Agreements were amended again later to allow Deere to select "collective investment funds maintained by entities other than [FMTC] for qualified plans." A00101, A00207. As of 2004, Deere had selected as investment options for plan participants 23 Fidelity mutual funds, the BrokerageLink window covering

10

thousands of other non-Fidelity mutual funds, two other investment funds managed by FMTC, and the Deere Common Stock fund.  A00013-14 (SAC ¶¶ 36-38), A00015-16 (SAC ¶¶ 44-46).

Third, as is common in individual account plans, the Trust Agreements also confer on FMTC, in addition to its duties as Trustee, a variety of administrative responsibilities with respect to the maintenance of the Plans' individual accounts. A00070, A00190, A0005 (SAC ¶ 20) ("In addition [to being Trustee], FMTC is the Plans' record keeper, performing a variety of administrative tasks for the plans."). Because many individual account plans are participant-directed, they require a robust system for maintaining individual accounts and for permitting participants to access their accounts and change their investments.  FMTC provides those critical services to the Deere Plans and their participants, but only as directed by Deere and individual participants.  Because the performance of these administrative functions involves no discretion over the Plans or participants' investment selections, they are not fiduciary functions under ERISA § 3(21).  *See supra* at 7-8.

## C.    **Proceedings Below**

### 1.    *Plaintiffs' Allegations Against The Fidelity Entities*

Plaintiffs' complaint was filed in the Western District of Wisconsin on December 2, 2006; amended December 28, 2006; and amended again on March 2, 2007.  The operative complaint alleges that the Fidelity entities breached fiduciary duties owed to the Plans and their participants by accepting undisclosed and

excessive compensation from the Plans in the form of fee revenues from Fidelity

funds made available to Plan participants.  A00021-25 (SAC ¶¶ 68-90).

Plaintiffs' complaint asserts that the Fidelity entities wield fiduciary

authority relevant to plaintiffs' allegations in two respects.  Pls. Br. 41-42

(contending that FMR Co. and FMTC perform same two fiduciary functions).  First,

plaintiffs argue that both entities have fiduciary authority over the Plans' menu of

investment options because although the Trust Agreements give Deere sole

authority to choose the options, the "limitations" specified in the Agreements

"narrow Deere's choices to almost exclusively funds managed by or offered by

Fidelity."  Pls. Br. 39.  In the words of the complaint:

> FMTC also played a role in the selection of the investment options the
> Plans make available to participants.  Although Deere as Plan
> Administrator had final authority for the selection of the investment
> options, Deere and FMTC agreed that Deere would limit its selection
> to those securities issued by investment companies for which FMTC's
> affiliate company, [FMR Co.], serves as investment advisor or for
> which FMTC itself provides investment advice, subject to an exception
> for certain pre-existing guaranteed investment contracts (GICs) and
> the Deere Common Stock Fund.

A0005 (SAC ¶ 21); *see* A00013 (SAC ¶ 35) ("In the [trust] document … the parties

agreed that Deere's selection of mutual funds would be limited to funds operated,

managed, and/or advised by Fidelity, with an exception for certain pre-existing

investments and for the company stock fund.").  Because the Trust Agreements

limit Deere's choices mainly to Fidelity-managed investment products (except for

the BrokerageLink window and non-Fidelity collective investment funds, which

plaintiffs completely ignore), plaintiffs assert that the Fidelity entities act as

12

fiduciaries because they effectively cull Fidelity's funds from the "thousands of mutual funds" and other investment vehicles that could be made available. Pls. Br. at 40; *see id.* at 41 (by adhering to limitations in Trust Agreements, "Fidelity eliminates thousands of mutual funds and non-mutual-fund investment options").

Second, plaintiffs allege that FMR Co. and FMTC "decide[] how much the Plans pay for recordkeeping and other administrative services and to whom they pay it." *Id.* at 41. Although FMTC's compensation is set out in the Trust Agreements, plaintiffs allege that FMTC effectively receives additional undisclosed compensation in connection with the Plans, in the form of fees paid by Fidelity mutual funds to FMR Co. and allegedly shared with FMTC. A00021-25 (SAC ¶¶ 68-90). Like virtually all mutual funds, Fidelity mutual funds bear expenses, including "asset-based" fees (i.e., fees calculated as a percentage of a fund's overall assets). The mutual-fund adviser – here, FMR Co. – receives certain of these fees directly from the fund for the adviser's services. Plaintiffs allege that FMR Co. pays a portion of this fee revenue to its sister entity FMTC. A0006 (SAC ¶ 22). Plaintiffs contend that FMR Co.'s fee revenues are assets of the Deere Plans, and that therefore "FMRCo. exercises discretion over Plan assets when it decides how much Revenue Sharing to send to Fidelity affiliates, like FMTC, and thus offset the Plan's expenses." *Id.*[2]

---

[2] The Fidelity entities accept for pleading purposes the truth of the allegation that FMR Co. pays a portion of its mutual-fund-fee revenue to FMTC, but they wish to make clear – lest there be confusion potentially affecting other cases – that this allegation is false. Its accuracy, however, is irrelevant. As explained in the

Other than making mainly Fidelity funds available pursuant to the Trust Agreements, and allegedly allocating a portion of FMR Co.'s fund management fees to FMTC, the complaint does not allege that the Fidelity entities exercised any other form of discretionary control over the Plans' investment options or assets.[3]

2.     *Pre-trial Proceedings*

Deere and the Fidelity entities answered plaintiffs' initial December 2006 complaints separately, denying all liability.  The district court (Shabaz, J.) set a trial date of September 2, 2007, and a deadline of June 1, 2007 for dispositive motions.  When plaintiffs filed the SAC in March 2007, Deere and the Fidelity entities separately moved to dismiss, each asserting distinct grounds for dismissal. Deere argued that plaintiffs' action was barred by ERISA § 404(c), which provides a defense to a fiduciary-breach action where the asserted loss resulted from the participant's own exercise of control over assets in his or her account.  29 U.S.C. § 1104(c).  Deere also argued that § 404's general fiduciary standard does not include a specific duty to disclose the fee information plaintiffs sought.  MTD Op. 5.

The Fidelity entities moved to dismiss on the ground that they were not fiduciaries at all with respect to the conduct challenged by plaintiffs, and thus had

_____

argument below, plaintiffs' argument that FMR Co.'s revenues are plan assets is legally wrong.

[3] Plaintiffs criticize the district court for ignoring the fact that FMTC is a fiduciary to the extent it manages two of the investment options provided under the Deere Plans (Pls. Br. 38), but the fact is irrelevant because plaintiffs do not challenge FMTC's investment-management conduct.  Their allegations relate solely to FMTC's asserted role in Deere's choices of its Plans' investment options and to FMR Co.'s alleged allocation of mutual-fund management fees to FMTC.

no duty (or authority) to change the investment options selected by Deere or make plan disclosures concerning fees.

While defendants' motions to dismiss were pending, discovery and pre-trial proceedings continued. Deere and the Fidelity entities filed separate summary judgment motions on June 1, 2007. The parties exchanged lengthy expert reports five days later, based on the extensive evidence produced in discovery.

3.     *District Court's Ruling*

On June 22, 2007, the district court granted defendants' motions to dismiss with prejudice and entered judgment. As to Deere's submission, the court agreed that plaintiffs' suit was barred by the § 404(c) safe harbor for losses in participant-controlled assets because participants were offered the ability to invest in more than 2500 mutual funds, which meant they could select funds with lower expense ratios and therefore "were in a position to exercise control over expenses." MTD Op. 16. The court also held that additional information about whether a mutual-fund adviser shared revenue with a plan recordkeeper would not be relevant to a participant's investment choices: "In assessing the likely return on an investment the fees netted against the return are certainly relevant, but knowing the subsequent distribution of those fees has no impact on the investment's value." *Id*. at 14. And the court rejected plaintiffs' general fiduciary disclosure theory: "Where as here Congress has by statute and related regulation, created detailed rules governing disclosure requirements, it would be inappropriate to ignore and augment them using the general power to define fiduciary obligations." *Id*. at 11.

While recognizing that its acceptance of Deere's arguments required dismissal of plaintiffs' complaint in its entirety (*id.* at 17), the court went on to address the Fidelity entities' separate, threshold arguments, agreeing that the Fidelity entities were not acting as fiduciaries on the facts alleged by plaintiffs. *Id.* at 17-18. Thus, even if the plan disclosures concerning fees were "non-compliant or the [§ 404(c) safe harbor rule inapplicable, neither of the Fidelity defendants could be held liable because neither had fiduciary responsibility for making plan disclosures or selecting plan investments." *Id.* at 17. The Fidelity entities lacked fiduciary responsibility, the court explained, because "[t]he trust agreements governing the obligations of the parties, as reflected directly in the allegations of the second amended complaint, unequivocally provide that defendant Deere has sole responsibility for selection of plan investment options." *Id.* Given plaintiffs' own allegation that Deere had sole responsibility for plan investments – and in the absence of a contrary allegation that the Fidelity entities somehow controlled Deere's decisions – the court held that the Fidelity entities could not be liable as fiduciaries. *Id.* at 17-18.

    4.    *Post-Judgment Rulings*

Plaintiffs moved to alter or amend the judgment under Rule 59(e) on July 3, 2007, asserting that discovery had produced "new evidence" justifying reversal of the dismissal order and/or leave to file a third amended complaint. The court denied the motion on October 22, 2007. It held that plaintiffs' motion identified no new evidence and instead merely reflected "umbrage and rehash." *See* Pls. Br., Tab

C ("Rule 59 Op.") at 2.  The evidence cited by plaintiffs, the court explained, had no

bearing on its prior dismissal order because "all factual inferences were already

made in plaintiffs' favor" in that order, and thus the "facts" merely "tend[ed] to

show what the Court already presumed in its analysis."  *Id.* at 3; *see id.* at 4 ("the

alleged newly discovered evidence goes merely to amplify the allegations of the

second amended complaint and does not impact the legal conclusions in the

decision").  The evidence also failed to justify a post-judgment amendment of the

complaint because plaintiffs had not explained how the evidence was unavailable

prior to dismissal, nor had they "proffered a proposed third amended complaint to

consider." *Id.* at 3.  In short, the court concluded, "[p]laintiffs have not

demonstrated justification for the untimely request to amend, have not proffered an

amended complaint, and have not established how any of the additional evidence

would alter the legal conclusions which required dismissal of the second amended

complaint." *Id.* at 4-5.

On December 31, 2007, the court entered its order on costs, awarding the

Fidelity entities $159,728.40 in costs for electronically processing computerized

data.

## SUMMARY OF ARGUMENT

I.  The Fidelity entities did not perform fiduciary functions relevant to

plaintiffs' allegations.  Allegations of fiduciary status are routinely rejected at the

pleading stage when the complaint rests on a legally defective theory of fiduciary

status or fails to allege facts sufficient to establish fiduciary control over the plan or

its assets.  So it is here.  Plaintiffs' theory that Fidelity entities were functional

fiduciaries as to Deere's choice of Plan investment options is legally flawed, because

the Fidelity entities had no power to control Deere's choices.  Plaintiffs' theory rests

on the fact that the Trust Agreement limited Deere's choices to Fidelity funds.

Settled precedents establish, however, that Fidelity did not act as a fiduciary when

negotiating the terms of the Trust Agreement at arm's length.  Plaintiffs also err in

contending that the Fidelity entities acted as fiduciaries when FMR Co. allegedly

paid a portion of its mutual-fund fees to FMTC.  ERISA expressly provides – and

DOL agrees – that fees received by FMR Co. from the mutual funds were not assets

of the Deere Plans, and thus the Fidelity entities bore no fiduciary responsibility in

the handling of those fees.

    II.  If the Court affirms the judgment that the Fidelity entities did not

function as fiduciaries with respect to plaintiffs' allegations, it need not consider the

substance of those allegations (or the ERISA § 404(c) defense against them) as to

the Fidelity entities.  But if the Court concludes that the complaint does allege a

legitimate theory of fiduciary status, the disclosure duty plaintiffs urge remains

legally insupportable.  ERISA and DOL regulations already mandate a lengthy list

of disclosure obligations.  While some courts have recognized a duty to provide

additional specific information in "special circumstances" – e.g., when necessary to

provide a complete and accurate response to a specific inquiry from a participant –

courts generally have rejected efforts to impose duties to disclose broad categories of

information beyond those already specified by Congress and DOL.  It would make

little sense to do so here, especially given that mutual-fund disclosures are already governed by the securities laws, and those laws do not treat the information at issue here – the allocation of mutual-fund-fee revenue within the Fidelity corporate family – as material to mutual fund investors.

III.  The district court did not abuse its discretion in rejecting plaintiffs' post-judgment motion to amend the judgment or file an amended complaint on the basis of supposedly new evidence supporting their claims.  Plaintiffs did not even tender with their motion a proposed amended complaint showing how the new evidence would cure its defects, which was reason enough for the court to deny their motion. Beyond that, the evidence plaintiffs cited was not new at all, but was in their possession before judgment was entered, and the plaintiffs never showed how the cited evidence cured the legal defects in their fiduciary status theories.

IV.  The court also did not abuse its discretion in awarding the Fidelity entities their costs for the expenses of electronically uploading and converting electronic data into a searchable format.

## STANDARD OF REVIEW

A district court's dismissal of a complaint for failure to state a claim is reviewed de novo, "accepting the complaint's well-pleaded allegations as true and drawing all favorable inferences for the plaintiff." *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).  The allegations of the complaint are deemed to include the terms of documents upon which the complaint is predicated,

such as the Trust Agreements here.  *See Caremark*, 474 F.3d at 466; *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).

As for the sufficiency of the allegations needed to state a claim for relief, especially after the Supreme Court "retooled the federal pleading standards" in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), mere "labels and conclusions" will not suffice, *Killingsworth*, 507 F.3d at 618 (quoting *Twombly*, 127 S. Ct. at 1965) – the complaint must allege enough facts to establish a claim to recovery that is plausible under the governing legal standards.  "The old formula – that the complaint must not be dismissed unless it is beyond doubt without merit – was discarded by the *Bell Atlantic* decision."  *Limestone Dev. Corp. v. Vill. of Lemont*, __ F.3d __, 2008 U.S. App. LEXIS 6891, at *12 (7th Cir. Apr. 1, 2008).  In "a potentially complex litigation" in particular, the complaint "must have some degree of plausibility to survive dismissal," *id.* at *13 – "a defendant should not be forced to undergo costly discovery unless the complaint contains enough detail, factual or argumentative, to indicate that the plaintiff has a substantial case."  *Id.* at *12.

The denial of a Rule 59 motion to alter or amend a judgment is reviewed for abuse of discretion.  *Baptist v. City of Kankakee*, 481 F.3d 485, 490 (7th Cir. 2007).  The award of costs to a prevailing party is likewise reviewed for abuse of discretion.  *Little v. Mitsubishi Motors N. Am., Inc.*, 514 F.3d 699, 701 (7th Cir. 2008).

**ARGUMENT**

**I.     THE CONDUCT PLAINTIFFS ATTRIBUTE TO THE FIDELITY
        ENTITIES IS NOT FIDUCIARY CONDUCT UNDER ERISA**

FMTC and FMR Co. can be liable for breach of fiduciary duty under ERISA

only if the conduct challenged in the complaint is properly deemed an exercise of

fiduciary authority under ERISA.  *See Plumb*, 124 F.3d at 854.  Plaintiffs allege

that the Fidelity entities are fiduciaries as to the selection of investment options

offered in the Deere Plans because the Trust Agreements limit Deere's choices

mainly to Fidelity-managed funds.  Plaintiffs also allege that the Fidelity entities

exercise fiduciary control over Plan assets when FMR Co. supposedly pays to FMTC

a portion of the management fees collected from Fidelity mutual funds in which

Plan participants invest.

Plaintiffs are wrong on both counts.  It is the Trust Agreements themselves

that limit Deere's investment options mainly to Fidelity funds, and FMTC exercised

no fiduciary control over Deere in negotiating the Trust Agreements.  And

management and other fees collected from mutual funds are not Plan assets, so

FMR Co. performs no fiduciary act when it disposes of those revenues however it

sees fit, even if it pays a portion of the revenue to an affiliated company.

**A.     The Fidelity Entities' Lack Of Functional Fiduciary Status Can
        Properly Be Determined On The Basis Of The Pleadings And
        Plan Documents**

Before addressing the merits of plaintiffs' fiduciary-status allegations, it is

important to clarify one threshold misconception plaintiffs seek to create.  Plaintiffs

suggest that because evaluating a party's fiduciary status can be "fact-intensive," it

therefore categorically "cannot be accomplished in the context of a motion to dismiss." Pls. Br. 40. In fact, this Court, the Supreme Court, and other courts, have routinely rejected allegations of fiduciary status – including "functional fiduciary" status – at the pleading stage, where the theory of fiduciary status pleaded in the complaint was legally defective or where the complaint's factual allegations did not show that the defendant exercised discretionary authority over the plan or its assets. *See Pegram*, 530 U.S. at 223-26; *Mertens*, 508 U.S. at 251; *Caremark*, 474 F.3d at 476-77; *Plumb*, 124 F.3d at 854; *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 24 (1st Cir. 1998); *Custer v. Sweeney*, 89 F.3d 1156, 1162 (4th Cir. 1996); *DiFelice*, 397 F. Supp. 2d at 744-45. Indeed, one of this Court's seminal decisions addressing fiduciary status and describing it as a "fact-intensive inquiry" affirmed the dismissal of a complaint for failure to plead facts establishing the defendant's fiduciary status. *Pappas v. Buck Consultants, Inc.*, 923 F.2d 531, 537 (7th Cir. 1991). The force of this rule is all the greater in light of *Twombly*'s recent admonition that complex and costly litigation should not proceed unless the complaint pleads facts sufficient to demonstrate that the plaintiff has a "substantial case." *Limestone*, 2008 U.S. App. LEXIS 6891, at *12 (describing *Twombly*).[4]

---

[4] Where there is confusion at the outset concerning which entity exercised fiduciary functions – where plaintiffs find themselves in a pre-discovery "black box" (Pls. Br. 40) – dismissal on the pleadings might be premature. Plaintiffs' cases demonstrate why that is sometimes true. For example, in *Rankin v. Rots*, 278 F. Supp. 2d 853, 879 (E.D. Mich. 2003), there was confusion over which defendants had responsibility for which functions, because of "implicit finger pointing among the defendants," essentially leaving "no one responsible for discretionary decision making." *Id.* There is no such confusion in this case, just as there was none in the cases cited in text dismissing legally deficient complaints. Here there is a clearly

Many precedents reject allegations of fiduciary status at the pleading stage by relying on the accepted rule that the "starting point for reasoned analysis of [a party's] fiduciary status" is the plan document or trust agreement. *Beddall*, 137 F.3d at 19.  In this Court's words, "[t]he first place we look to make that determination is the … plan documents," because a party "generally will not be held to be a fiduciary with respect to an activity unless the plan documents show that the [party] was responsible for that activity." *Plumb*, 124 F.3d at 854.  And in several precedents of this Court and others, the plan documents have been not only the starting point for the analysis, but the ending point as well, where they clearly specified that only the named fiduciary, and no other entity, had discretionary authority over the plan.  *See Caremark*, 474 F.3d at 477 (rejecting fiduciary status allegations against plan service provider because "express language of the contracts" gave plan sponsor "final authority to administer" plan); *Beddall*, 137 F.3d at 24 ("Because the trust agreement … unambiguously establishes that the Bank retained no discretionary authority over the Plan's real estate investments, we hold that the complaint fails to state an actionable claim against the Bank."); *Coleman*, 969 F.2d at 61 ("The discretionary authority or responsibility which is pivotal to the statutory definition of 'fiduciary' is allocated by the plan documents themselves.").

---

identified named fiduciary; the authority of all defendants is unambiguously laid out in the Trust Agreements; and plaintiffs do not allege that the Fidelity entities usurped authority not found in those agreements.  In these circumstances, resolution of fiduciary status at the outset is not only appropriate, but it is preferred as a matter of judicial efficiency, as cases like *Twombly*, *Limestone*, and *Mertens* make clear.

These precedents are not inconsistent with the DOL's suggestion (DOL Br. 21) that plan documents may not always be conclusive of an entity's fiduciary status under ERISA's "functional" definition.  What the precedents make clear is that language in plan documents vesting sole discretionary authority in the named fiduciary will be conclusive, *unless* the plaintiff makes a plausible allegation that the defendant was *actually* exercising its own independent discretionary authority *contrary to the plan documents*.  In other words, where plan documents vest all discretionary authority over certain conduct solely in a named fiduciary, the plan documents preclude fiduciary breach actions against another entity for that conduct, unless the plaintiff can allege facts establishing that the other entity has, in practice, usurped the named fiduciary's exclusive discretionary authority.  *See*, *e.g.*, *Reich v. Lancaster*, 55 F.3d 1034, 1048 (5th Cir. 1995) (defendant was functional fiduciary because he "usurped the Trustees' independent discretion and effectively exercised authority and control over management and administration of the plan with respect to the insurance policies in question"); *Schloegel v. Boswell*, 994 F.2d 266, 271-72 (5th Cir. 1993) (plaintiff must show that defendant caused named fiduciary "to relinquish his independent discretion in investing the plan's funds and follow the course prescribed by [the defendant]"); *Custer*, 89 F.3d at 1162 (same); *Olson v. E.F. Hutton & Co.*, 957 F.2d 622, 626 (8th Cir. 1992) ("A person who usurps authority over a plan's assets and makes decisions about the use or disposition of those assets should know [he is] acting as a fiduciary.").  Absent such an allegation, the plan documents suffice to establish who possesses the

24

discretionary control required to establish fiduciary status under ERISA, and who does not.[5]

As shown in the next section, plaintiffs here do not and cannot make any allegation that the Fidelity entities usurped Deere's discretionary authority under the Trust Agreements and exercised independent control over the Plans' investment options or assets. The complaint against FMTC and FMR Co. therefore was properly dismissed.

### B.  Neither Of The Functions Cited By Plaintiffs Constitutes The Exercise Of Fiduciary Authority

Plaintiffs' allegations of fiduciary status fail as a matter of law. The facts asserted in the complaint, taken as true, establish that the Fidelity entities do not exercise discretionary control over the Plans' investment options. And ERISA itself establishes that mutual fund assets (and hence fees drawn directly from those assets) are not assets of the Plans.

---

[5] For the reasons explained in text, DOL's amicus brief is not contrary to the Fidelity entities' position on appeal. DOL contends that the district court erred only to the extent it referred *solely* to the trust documents in rejecting plaintiffs' fiduciary-status allegations (DOL Br. 21), since functional fiduciary status can be established by conduct outside the plan documents. The Fidelity entities agree that functional fiduciary status can be established by conduct outside the plan documents, and while one may quarrel with DOL's description of the court's analysis, *see supra* at 16, the point is academic:  no matter how concise the district court's explanation, because this is a de novo appeal this Court must answer *for itself* the question whether the complaint's allegations concerning the Fidelity entities' fiduciary status are legally sufficient under ERISA's functional test.  DOL's brief does not take a position on the adequacy of the complaint in that regard.  As shown in this brief, however, the functional fiduciary principles invoked by DOL compel dismissal of the complaint, given its failure to allege anything like the discretionary control required to create functional fiduciary status.

1.    *The Fidelity Entities Exercise No Discretion Over Deere's Investment Choices*

Plaintiffs' first theory of functional fiduciary liability is that FMTC and/or FMR Co. "played a role" in or "exercised discretion" over Deere's investment selections because "[a]lthough Deere as Plan Administrator had final authority for the selection of the investment options," the Trust Agreements expressly provide "that Deere would limit its selection to those securities issued by investment companies for which FMTC's affiliate company, [FMR Co.], serves as investment advisor or for which FMTC itself provides investment advice, subject to an exception for certain pre-existing guaranteed investment contracts (GICs) and the Deere Common Stock Fund." A0005-6 (SAC ¶ 21). In other words, according to plaintiffs, the Fidelity entities exercise control over Deere's investment option choices merely by adhering to the terms of the Trust Agreements, which "narrow Deere's choices to almost exclusively funds managed by or offered by Fidelity" (Pls. Br. 39), rather than the "thousands" of other mutual funds or investment options Fidelity could be offering. *Id.* at 40; *see id.* at 41 (in offering only Fidelity funds as required by the Trust Agreements, "Fidelity eliminates thousands of mutual funds and non-mutual-fund investment options").

The Fidelity entities' alleged role in Deere's investment-selection process is not a fiduciary function because the "limitation" on Deere's permissible choices does not reflect any control over either Deere or the Deere Plans *by Fidelity* – it is a limitation established by the terms of the Trust Agreements themselves. And although FMTC is a party to those Agreements, FMTC obviously was not

26

functioning as a fiduciary *when negotiating the terms of those Agreements at arm's length with Deere.*  The essence of fiduciary status is the exercise of discretionary control, *see supra* at 7-9, and plaintiffs do not and cannot allege that FMTC exercised control over either Deere or the Deere Plans during arm's length bargaining over any limitations on investment options allowable under the Trust Agreements.  In other words, because FMTC could not *require* Deere to limit its investment selections only to Fidelity funds, but could only bargain at arms' length over the terms by which FMTC would provide services to the Plans, the Trust Agreements' limitation on Deere's investment choices does not reflect the exercise of discretionary control over those options by FMTC.  Rather, it is Deere – the named fiduciary to the Plans – that exercises discretion on behalf of the Plans in bargaining with FMTC.  In these circumstances, FMTC does not function as a fiduciary with respect to the selection of investment options.

That result is also amply supported by this Court's precedents.  In *Caremark*, the plan entered into a contract with a pharmacy benefit manager ("PBM") to make available to plan participants the drug benefits provided under the plan.  The service contract adopted the PBM's standard "formulary" (i.e., list of drugs and coverage terms) as the drugs covered by the plan, but the plan fiduciary retained "sole discretion and authority to determine the formulary for the plan."  474 F.3d at 476.  The plan sued the PBM for breach of fiduciary duty under ERISA, alleging, *inter alia*, that the PBM had and breached fiduciary duties by listing overly expensive drugs on the formulary it provided in accordance with the service

contract.  *Id.* at 471.  This Court upheld the district court's dismissal of the complaint on its face.  The content of the formulary was not the fiduciary responsibility of the PBM, the Court explained, but was "a feature of [the] plan" adopted by the plan sponsor pursuant to the service agreement.  *Id.* at 477.  Even if the service agreement required the PBM to perform some fiduciary functions, establishing the content of the formulary itself was not a fiduciary act by the PBM because the PBM did not exercise the requisite control over the plan sponsor when "it was engaged in arm's-length negotiations with [the sponsor], prior to entering into any of the agreements."  *Id.*

*Schulist v. Blue Cross of Iowa*, 717 F.2d 1127 (7th Cir. 1983), is to similar effect.  In that case, the sponsor of a health benefit plan retained a health insurer to underwrite the plan's benefits and to make benefit determinations under the plan.  *Id.* at 1129-30.  Under the service contract with the sponsor, the insurer received a specified monthly premium per beneficiary, and it ultimately obtained a substantial "surplus" when its paid claims and administrative expenses were significantly lower than the premium calculations anticipated.  *Id.* at 1129.  Because the insurer's control over benefit determinations under the service agreement made the insurer a plan fiduciary, the plan alleged that the insurer had a fiduciary obligation to return the unanticipated surplus to the plan trust.  *Id.* at 1130-31.  This Court rejected that claim for the same reasons later applied in *Caremark*, *viz.*, the insurer was not acting in a fiduciary capacity "[a]s to the terms and conditions upon which it became a [benefit] provider," but instead "entered into an arm's length bargain presumably

governed by competition in the marketplace." *Id.* at 1132.  Even as to later years,
when the insurer was already a fiduciary as to claims-determination services, it was
not a fiduciary for purposes of its own compensation for those services, because the
insurer did not have "control" over the "terms" on which it would provide those
services, but was required to negotiate them with the plan sponsor in a competitive
market.  *Id.*

The analysis in *Schulist* and *Caremark* is controlling here.  *Schulist* confirms
the simple but crucial point that even where a service provider is a plan fiduciary, it
still does not act as a fiduciary with respect to the terms on which it will provide
services, so long as it does not control the named fiduciary's negotiation and
approval of those terms.  *Caremark*, in turn, applies that principle to facts that are
materially indistinguishable from this case.  There, as here, the plan fiduciary and
the service provider agreed in a freely bargained service agreement that the plan
would provide benefits limited to those offered by the service provider.  And because
there, as here, the service provider did not control the fiduciary's decision as to the
range of benefit options that would be provided under the agreement, the service
provider did not function as a fiduciary just by following the terms of the service
agreement and providing only those benefit options specified in the agreement,
rather than all options that might be available on the market.  The same conclusion
must follow here – the Fidelity entities did not function as fiduciaries merely by
following the terms of the Trust Agreements and making available only Fidelity
funds, rather than all potential investments available in the market.

29

DOL's amicus brief in this case is consistent with the foregoing analysis. DOL recognizes that neither FMTC nor FMR Co. would "bec[o]me a fiduciary merely by virtue of developing and presenting a list of investment options to Deere for its selection as a fiduciary." DOL Br. 22-23. As DOL explains, the Fidelity entities could become fiduciaries only if they "in fact selected the investment options that would be available under the plan and … Deere's role was understood to be merely a rubber-stamp of the investment selections actually made by the Fidelity defendants." DOL Br. 11. Plaintiffs' complaint includes no such "rubber stamping" allegation – to the contrary, the complaint states that Deere exercises sole authority to choose which Fidelity funds to offer. A0005-6 (SAC ¶ 21), A00013 (SAC ¶ 35). Instead, the complaint makes clear – and plaintiffs' brief on appeal reiterates, *see Pegram*, 530 U.S. at 230 n.10 (court may use appellate brief to clarify allegations of complaint) – that the only act allegedly constituting the exercise of discretionary authority over Deere's investment decisions is the Fidelity entities' adherence to the *Trust Agreements'* limitation on the range of Deere's investment options. *See supra* at 25-26. Plaintiffs' complaint does not even allege the further, separate act of "developing and presenting a list of investment options to Deere" deemed insufficient by the DOL, much less that the Fidelity entities so control Deere's authority to select from such a list that Deere is reduced to a mere "rubber stamp." There is only the allegation that the Fidelity entities effectively controlled Deere's investment decisions for the Plan *by bargaining at arm's length for a limitation on Deere's investment options in the Trust Agreement itself*. That is not a fiduciary act

30

under any conception of the term, and most certainly not under ERISA's functional

understanding.[6]

Plaintiffs' authorities are not to the contrary. In *Haddock v. Nationwide Fin.*

*Servs.*, 419 F. Supp. 2d 156 (D. Conn. 2006), and the Department of Labor's

Advisory Opinion 97-15A, 1997 WL 277980 (May 22, 1997), the service providers

did more than simply bargain for contractual limitations on the universe of

investment options that could be selected for the plan. Rather, the contract in each

case gave the service provider the unilateral right to add and delete mutual funds

from the menu of investment options available under the respective plans.

*Haddock*, 419 F. Supp. 2d at 16; DOL Adv. Op., 1997 WL 277980, at *3. Plaintiffs

---

[6] In their briefing below, plaintiffs did argue that the Fidelity entities "screened" and recommended investment options for Deere, which were adopted by Deere in amendments to the Trust Agreements. As the DOL's brief establishes (DOL Br. 22), this is a meritless argument wisely abandoned by plaintiffs on appeal. *See U.S. v. Dabney*, 498 F.3d 455, 460 (7th Cir. 2007) ("Because the argument was not raised or developed in the opening brief, it is waived."); *accord Bannon v. Univ. of Chi.*, 503 F.3d 623, 632 n.3 (7th Cir. 2007). As noted in text, the complaint includes no such "screening" allegation, and even if it did, that different factual theory would not cure its legal defects, since plaintiffs do not and cannot allege the crucial element of Fidelity control over Deere's actions. It is settled that the mere act of "screening" and identifying potential investment options is not an exercise of discretionary control. *See* DOL Br. 22-23; DOL Advisory Opinion No. 97-15A, 1997 WL 277980, at *5 (May 22, 1997); *accord Farm King*, 884 F.2d at 292 ("The only discretion that Jones had was to choose which few securities to recommend to the Plan. But this surely was not discretion within the meaning of ERISA nor within the meaning of the common sense definition of the term…. Those cases which hold that the person or firm was a fiduciary have a common theme conspicuously absent here, *viz.*, the authority to exercise control unilaterally over a portion of a plan's assets, not merely to propose investments."); *Schloegel*, 994 F.2d at 271 (similar). Finally, it bears noting that among the most significant amendments Deere adopted to the Trust Agreements was the 1997 addition of the BrokerageLink option, which provided participants access to thousands of *non*-Fidelity funds. The addition of this option belies any suggestion that Fidelity controlled Deere's decisions as to what funds should be provided under the Deere Plans.

have not alleged a similar arrangement here, and could not do so given the plain language of the Trust Agreements providing Deere with exclusive authority over the selection of investment options.  In short, the district court was correct in concluding that plaintiffs' complaint fails to establish that the Fidelity entities controlled Deere's investment choices, and thus fails to make out a plausible claim that the Fidelity entities functioned as fiduciaries with respect to the Plans' investment options.[7]

2.     _FMR Co.'s Decision About How To Dispose Of Its Fully Disclosed Fees For Managing Mutual Funds Is Not A Fiduciary Act_

Plaintiffs' second allegation of fiduciary conduct is that FMR Co. "exercises discretion over Plan assets when it decides how much Revenue Sharing to send to Fidelity affiliates, like FMTC, and thus offset Plan expenses."  A0006 (SAC ¶ 22); _see_ Pls. Br. 12 (FMR Co. functions as fiduciary by "unilaterally setting the amounts assessed against Plan assets as administrative and other fees").  That theory fails because the assets that plaintiffs contend are the subject of "revenue sharing" are not assets of the Deere Plans.

According to the complaint, the assets subject to "revenue sharing" were amounts paid by Fidelity mutual funds to FMR Co. and then passed on to FMTC. A00022 (SAC ¶¶ 72-76).  But as explained above, management and other fees paid

---

[7] Plaintiffs wrongly suggest that the court's decision turned on a conclusion that two parties can never have fiduciary responsibilities with respect to the same subject matter.  Pls. Br. 39.  It is true that two parties "_can_ share responsibility for the same plan function" (_id._), but where the contract unambiguously grants sole decision-making authority to one party, and there are no factual allegations indicating that another party has usurped that authority, then the two parties _do not_ share the responsibility.  That is the case here.

by a mutual fund are drawn from the assets of the mutual fund, which are *not assets of the plan*.  ERISA § 401(b)(1) expressly provides:  "In the case of a plan which invests in any security issued by [a mutual fund], the assets of such plan shall be deemed to include such security but shall not, solely by reason of such investment, be deemed to include any assets of such [mutual fund]."  29 U.S.C. § 1101(b)(1).  And when the fees are received by FMR Co., they are no longer even assets of the mutual fund, but are assets of FMR Co.  The decision of FMR Co. as to how to dispose of its management fees – whether to invest them, purchase new office furniture, give them to charity, or pay a portion to an affiliated entity such as FMTC – is thus entirely a decision by FMR Co. about what to do with its own assets, and entails no control over any plan assets.[8]  DOL endorses this conclusion and squarely rejects plaintiffs' position:   "The Secretary does not believe that [the 'revenue sharing' allegation], even if proven, would establish the fiduciary status of Fidelity Research, because the sums paid do not constitute plan assets."  DOL Br. 22 (citing 29 U.S.C. § 1101(b)(1)).

---

[8] Although their complaint contains no similar allegation that FMTC exercised control over "revenue sharing," plaintiffs now contend that FMTC "exercises discretion over the amount of 'revenue-sharing' payments it receives for two funds, and possibly for the funds managed by FMRCo."  Pls. Br. 42.  The complaint, however, alleges only that "*FMRCo* exercises discretion over Plan assets when it decides how much Revenue Sharing to send to Fidelity affiliates, like FMTC."  A0006 (SAC ¶ 22 (emphasis added)).  Even if this new argument had any basis in the complaint, it would still be meritless.  With respect to funds managed by FMR Co., the argument that FMTC is a fiduciary because it exercises discretion over the amount of payments it ostensibly receives from FMR Co. fails because, as shown in the text, any such payments do not involve assets of the plan.  With respect to the two funds FMTC itself manages, the argument would be that FMTC improperly shares revenue *with itself* – an absurd proposition on its face.

This Court's decision in *Caremark* again provides the controlling analysis. The *Caremark* Court held that rebates paid by drug manufacturers to a PBM based on sales to ERISA plans were not "plan assets" and that control over such rebates thus did not confer fiduciary status. 474 F.3d at 476 n.6 (rebates paid by manufacturers to PBM were "its own assets"). Plaintiffs argue that the rebates in *Caremark* differ from FMR Co.'s revenues here, because the PBM rebates "had no effect on the disposition of plan assets or the prices the plan paid because such prices were set according to benchmarks beyond the control of either party." Pls. Br. 42. Plaintiffs miss the point. The lesson of *Caremark* is simply that monies paid to a service provider in exchange for its services are the assets of the provider, not the plan, and therefore any control exercised over such monies does not constitute control over plan assets. *See also Pegram*, 530 U.S. at 227 (annual "payouts" of funds earned by service provider were not "fiduciary acts" because service provider that earned funds was "not the ERISA plan"). Here FMR Co.'s revenues are even further removed from the service-provider fees in *Caremark*, because FMR Co. is not even a service provider to the Plans, but is an adviser to mutual funds in which plan participants may choose to invest. And such mutual-fund advisers are expressly excluded from the definition of an ERISA fiduciary. *See* 29 U.S.C. § 1002(21)(B).

The cases cited by plaintiffs do not advance their position. *Johnson v. Georgia-Pacific Corp.*, 19 F.3d 1184 (7th Cir. 1994), did not involve "revenue sharing" at all, but instead affirmed dismissal of claims asserting that an

employer's treatment of a pension plan's surplus constituted a "disposition" of plan assets. The court noted that fiduciaries "may not deal with the plan for their own accounts," *id.* at 1189, but said nothing to suggest that the conduct alleged here would give rise to fiduciary status in the first place. And although *Haddock* did involve an alleged allocation of revenues from mutual fund assets, the decision is both wrong and distinguishable. Its conclusion that mutual fund revenues can be plan assets is contrary to ERISA's plain text, *see supra* at 33, and has been flatly rejected by DOL, *see* DOL Br. 22. And even if it correctly stated the law, *Haddock*'s rule would not help plaintiffs here. Rather than generally holding such revenues to be plan assets, *Haddock* enunciates a narrower test under which "revenue sharing" payments received by an entity constitute plan assets only if the entity receives such assets "as a result of its status as a fiduciary or its exercise of fiduciary discretion or authority." 419 F. Supp. 2d at 170. In other words, "revenue sharing" payments could be seen as fiduciary acts only if the entity *already* had or had exercised fiduciary authority over those payments. Thus, even under *Haddock*'s test, FMR Co.'s alleged control over "revenue sharing" payments cannot be the basis for FMR Co.'s supposed fiduciary status.

Finally, the conclusion that alleged "revenue sharing" monies are not plan assets is compelled not only by the law, but by logic and policy as well. To hold otherwise would create the bizarre result that a mutual-fund adviser could not be deemed to be a fiduciary merely by virtue of advising a fund in which a plan invests, as ERISA § 3(21)(B) provides, but would become a fiduciary simply by accepting

payment for those advisory services.  That cannot be – and is not – what Congress intended.

Indeed, the § 3(21)(B) "carve out" for mutual funds and their advisers more broadly exposes the flaws in plaintiffs' theory that FMR Co. should be deemed an ERISA fiduciary merely because it supposedly pays some of its mutual-fund-fee revenues to FMTC.  Congress carved mutual funds and their advisers out of ERISA's fiduciary definition specifically because additional regulation under ERISA was considered unnecessary:  "Since mutual funds are regulated under the Investment Company Act of 1940 ["the '40 Act"] and, since (under the Internal Revenue Code) mutual funds must be broadly held, it is not considered necessary to apply the [ERISA] fiduciary rules to mutual funds merely because plans invest in their shares."  H.R. Rep. No. 93-1280, at 296 (1974) (Conf. Rep.).  As Congress recognized, the '40 Act already imposes fiduciary duties on mutual-fund advisers with respect to the compensation they receive for their services, and provides for enforcement of this duty by the SEC or by a fund security holder.  *See* 15 U.S.C. § 80a-36(b); *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 534-35 (1984); *see also* S. Rep. 91-184 (May 21, 1969), *reprinted in* 1970 U.S.C.A.A.N. 4987, 4902 ("[W]e have added a new section 36(b) to the investment company act to specify that the adviser has a fiduciary duty with respect to compensation for services or other payments paid by the fund or its shareholders to the adviser or to affiliated persons of the adviser.").

Given that mutual-fund advisers are already subject to federal regulation as fiduciaries with respect to their compensation, it makes little sense to presume that Congress intended for ERISA to superimpose potentially conflicting fiduciary duties concerning compensation. *See Credit Suisse Secs. (USA) LLC v. Billing*, 127 S. Ct. 2383 (2007) (declining to apply antitrust law to conduct already extensively regulated by securities laws). Indeed, the fact that Congress took care to carve mutual-fund advisers out of ERISA's fiduciary regime compels the opposite presumption.

Superimposing multiple statutory fiduciary obligations would create serious practical problems. For one thing, while mutual-fund advisers already have duties under the securities laws to all fund investors, their new ERISA duties would extend only to those investors who are ERISA plan participants – an impossible line for advisers to draw. For another thing, applying ERISA's very generalized fiduciary duty standard to the conduct of mutual-fund advisers would invite plaintiffs' lawyers to invent novel theories of fiduciary breach, generating costly litigation with conflicting results and hence substantial confusion over advisers' legal duties. *See id.* at 2395 ("In light of the nuanced nature of the evidentiary evaluations necessary to separate the permissible from the impermissible, it will prove difficult for those many different courts to reach consistent results."). The costs of litigation defense (and the opportunity costs of litigation avoidance) generally would be passed through to plans themselves, depleting plan assets and harming participants. *See Mertens*, 508 U.S. at 262 (expanding fiduciary liability

"would impose high insurance costs upon persons who regularly deal with and offer advice to ERISA plans, and hence upon ERISA plans themselves"); *Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996) (noting "Congress' desire … not to create a system that is so complex that administrative costs, or litigation expenses, unduly discourage employers from offering welfare benefit plans in the first place").

There is no sound reason to impose the substantial costs of uncertainty and litigation on mutual funds and their advisers by expanding ERISA's fiduciary duties to encompass the disposition of mutual-fund-fee revenues. The '40 Act's fiduciary obligations, along with that Act's private remedies and public enforcement tools, already fully protect the interests of investors in mutual funds, and ERISA's fiduciary obligations separately protect the plan participants' interests in their plan assets. *See Pegram*, 530 U.S. at 235-36 (declining to recognize fiduciary status for conduct already regulated by other laws); *see also Billing*, 127 S. Ct. at 2396. Nothing a mutual-fund adviser decides to do with its own fees has anything to do with the assets of the plan. Accordingly, nothing FMR Co. did with its fees here – even if it had paid a portion to FMTC – made either Fidelity entity a Deere Plan fiduciary with respect to those fees.

## II.    THE FIDELITY ENTITIES BORE NO DISCLOSURE DUTY AS TO THEIR INTERNAL REVENUE ALLOCATIONS

Plaintiffs contend the Fidelity entities, as plan fiduciaries, bore a fiduciary duty to disclose to Deere their internal allocation of revenue received in connection with the Deere Plans. A00021-25 (SAC ¶¶ 68-90). Rejecting the premise of that contention, the district court held that because the Fidelity entities did *not* have any

relevant fiduciary status, they had no fiduciary obligation to disclose the fee revenue information. MTD Op. 17. The district court was correct for the reasons explained in Part I above. But even if this Court were to hold that the complaint adequately alleges the Fidelity entities' fiduciary status, plaintiffs' disclosure theory would still fail, because ERISA's general fiduciary duty does not encompass a duty to make categorical disclosures about mutual fund fee revenue allocations.

As an initial matter, ERISA expressly mandates in great detail the disclosures and details that must be provided to plan participants. *See* 29 U.S.C. §§ 1021-31; *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995) ("ERISA already *has* an elaborate scheme in place for enabling beneficiaries to learn their rights and obligations"). DOL has promulgated extensive regulations further delineating those disclosure requirements. 29 C.F.R. §§ 2520.101-1 *et seq.* In both the statute and the regulations, responsibility for such disclosures is placed squarely on the plan administrator – in this case Deere – not the directed trustee or recordkeeper. *See* 29 U.S.C. §§ 1021-31; 29 C.F.R. §§ 2520.101-1 *et seq.* Recognizing this express statutory and regulatory disclosure scheme, federal courts have refused to create additional categorical disclosure obligations through ERISA's more general fiduciary duty. *See, e.g.*, *Curtiss-Wright*, 514 U.S. at 84 (Congress did not intend statutory disclosure scheme "to be supplemented by a far-away provision in another part of the statute"); *Ehlmann v. Kaiser Found. Health Plan*, 198 F.3d 552, 554-56 (5th Cir. 2000) (rejecting claim that HMO had duty to disclose its physician compensation scheme; "[t]hat Congress and DOL were so capable of

enumerating disclosure requirements when they wanted to means that the absence of one regarding physician compensation plans was probably intentional"); *see also Nelson v. Hodowal*, 512 F.3d 347, 351 (7th Cir. 2008) ("There remains a possibility that participants in the Thrift Plan would have misunderstood the reasons for, and the significance of, defendants' sales, and changed their own investment allocations for that reason, but no regulation or decision requires ERISA fiduciaries to disclose facts that may lead to idiosyncratic reactions.").[9]  DOL itself explains in its amicus submission that it is "skeptical" that ERISA's  general duties of prudence and loyalty "would have required disclosure to plan participants of revenue sharing among Fidelity affiliates," absent affirmative misrepresentation.  DOL Br. 20.

Given that Congress and DOL could require additional categorical financial disclosures – including the types of disclosures regarding the sharing of investment-related fees that plaintiffs contend should have been provided here – plaintiffs' invitation to prescribe the same duty by ad hoc judicial decree is surely inappropriate.  Indeed, both Congress and DOL have actively considered, and continue to consider, whether sound policy warrants the type of plan fee disclosure

---

[9] Although categorical disclosure requirements have been rejected, courts have recognized a duty to provide particular information beyond legally mandated disclosures in individualized circumstances, such as where the participant has made a specific request and the additional information is necessary to provide a complete and accurate response. *See, e.g., Anweiler v. Am. Elec. Power Co.*, 3 F.3d 986, 991 (7th Cir. 1993); *Eddy v. Colonial Life Ins. Co.*, 919 F.2d 747, 750 (D.C. Cir. 1990); *see Ehlmann*, 198 F.3d at 556 (noting that cases finding extra-statutory disclosure duty generally "involve[] the failure to disclose material information after a specific inquiry or some other special circumstance").  That kind of "special circumstance" disclosure duty is not at issue here.  What plaintiffs seek is a general court-made duty to disclose to all participants an entire category of information that neither Congress nor the DOL has deemed necessary to disclose.

sought by plaintiffs in this private litigation.[10]  Judicial creation of a new disclosure rule based on ERISA's general fiduciary requirements would supersede this vigorous policy debate.  And unlike legislation or rule-making with nationwide effect, imposing legislative judgments through case-by-case disposition of separate lawsuits filed around the country would produce a fragmentary scheme of regulation inconsistent with ERISA's "core concern" of ensuring "nationally uniform plan administration."  *Egelhoff v. Egelhoff*, 532 U.S. 141, 148 (2001).

Creating such a duty would be particularly inappropriate in the context of the mutual funds advised by FMR Co., since disclosures regarding such funds and their expenses are already governed by a robust set of securities laws including the Investment Company Act of 1940, 15 U.S.C. § 80a-1, *et seq*.; the Investment Advisers Act of 1940, 15 U.S.C. § 80b-1, *et seq*.; the Securities Act of 1933, 15 U.S.C. § 77a, *et seq*., and the Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq*.[11]

---

[10] In April 2007, DOL issued a request for information seeking suggestions and comments from plan participants, sponsors, service providers and others regarding the rules applicable to disclosure of plan administrative and investment-related expense information to participants in 401(k) plans.  *See* Fee and Expense Disclosures to Participants in Individual Account Plans, 72 Fed. Reg. 20,457 (Apr. 25, 2007).  Several dozen individuals and entities responded, providing a wide variety of competing views on the issue.  *See* http://www.dol.gov/ebsa/regs/cmt-feedisclosures.html (last viewed May 8, 2008).  In addition, the House Committee on Education and Labor recently approved a bill that would require plan administrators to provide further disclosures regarding 401(k) plan fees and expenses.  *See* H.R. 3185, 110th Cong. (as reported by H. Comm. on Educ. & Labor, April 16, 2008).

[11] *See* 15 U.S.C. § 77aa (requiring disclosure of financial and operational information for offer or sale of securities under Securities Act of 1933); 15 U.S.C. § 78l (requiring disclosure of financial and operational information for securities registered under Exchange Act of 1934); 15 U.S.C. § 80a-8(b) (requiring mutual funds to file registration statements containing disclosures prescribed by SEC

Those statutory requirements are augmented by SEC regulations and rules that specifically address the disclosure of fees. *See In re Morgan Stanley & Van Kampen Mut. Fund Sec. Litig.*, 2006 U.S. Dist. LEXIS 20758, at *30 (S.D.N.Y. Apr. 18, 2006) ("SEC Form N-1A sets forth the requirements for information that must be contained in offering prospectuses and statements of additional information…. Form N-1A requires the disclosure of the total fees paid by the investor in connection with a securities purchase, as well as total commissions paid by the fund, but it does not require disclosure of how differential compensation is allocated.").[12]  There is no reason to expand ERISA's fiduciary obligations to cover conduct already regulated by securities laws. *See Pegram*, 530 U.S. 235-36; *Billing*, 127 S. Ct. at 2396.

Notably, in applying this securities law regime, several courts have held that the type of information that plaintiffs allege should have been disclosed here – i.e., the manner in which fees paid to mutual funds are shared among service providers – is not material to an investor's decision to purchase mutual fund shares. *In re Merrill Lynch Inv. Mgmt. Funds Sec. Litig.*, 434 F. Supp. 2d 233, 238 (S.D.N.Y. 2006) ("Defendants disclosed the fees and commissions charged to shareholders. The precise allocation of those fees is not material information under the securities

---

rules); 15 U.S.C. § 80a-8(b)(5) (requiring that mutual fund registration statements contain all information required under the Securities Act of 1933 and the Exchange Act of 1934); 15 U.S.C. § 80a-29(e) (requiring investment companies to transmit semi-annual reports to shareholders).

[12] *See also* 17 C.F.R. § 270.30e-1 (requiring semi-annual shareholder reports to contain all of the information required by the investment company's registration statement).

laws."); *Morgan Stanley*, 2006 U.S. Dist. LEXIS 20758, at *37-38 ("All fees charged to the shareholder were disclosed in the offering prospectuses …. The allocation of the fees is immaterial, because it could have no effect on share price.").[13]  The information that is material is the price of services and the total expense levels paid by the mutual fund – information that is fully disclosed to Deere Plan participants like other Fidelity mutual-fund investors.  How FMR Co. chooses to dispose of its revenues from these fully disclosed expenses is no more material to an ERISA plan participant who invests in the fund than it is to any other investor in the fund.

## III.  THE DISTRICT COURT CORRECTLY REJECTED PLAINTIFFS' RULE 59 MOTION

The district court did not abuse its broad discretion in rejecting plaintiffs' motion to amend the judgment or for leave to file an amended complaint.

### A.  Plaintiffs' Failure To Proffer An Amended Complaint Justified Rejection Of Their Motion

The district court denied plaintiffs' motion in part because they did not "proffer[] an amended complaint" along with their motion.  Rule 59 Op. 4.  Contrary to plaintiffs' submission (Pls. Br. 52), the district court did not abuse its discretion in considering this lack of diligence in assessing whether plaintiffs offered a "good reason" why the amendment was not offered before dismissal.  *Bressner v. Ambroziak*, 379 F.3d 478, 484 (7th Cir. 2004).  This Court has repeatedly agreed

---

[13] Plaintiffs cite a single decision holding otherwise, *see Siemers v. Wells Fargo & Co.*, 2007 WL 760750 (N.D. Cal. 2007), but the decision is incorrect.  It is not the precise allocation of fees, but "the total fees charged that would affect the asset value of a mutual fund and the decision to invest."  *Morgan Stanley*, 2006 U.S. Dist. LEXIS 20758, at *37 (quotation omitted).

that a movant's "failure to attach a proposed amendment certainly indicates a lack
of diligence and good faith," justifying denial of the motion. *Vicom, Inc. v.
Harbridge Merchant Servs.*, 20 F.3d 771, 785 (7th Cir. 1994) (quotation omitted); *see
Twohy v. First Nat'l Bank*, 758 F.2d 1185 (7th Cir. 1985) (same); *accord Crestview
Vill. Apartments v. U.S. Dept. of Hous. & Urban Dev.*, 383 F.3d 552, 558 (7th Cir.
2004) (affirming denial of leave to amend where movant failed to attach an
amended complaint with the motion for reconsideration); *Otto v. Variable Annuity
Life Ins. Co.*, 814 F.2d 1127, 1139 (7th Cir. 1986) (post-judgment "motion to amend
… should be accompanied by the proposed amendment").

    A proposed amended complaint was especially necessary here, because
plaintiffs' Rule 59 submission included hundreds of documents and deposition
pages, but did not bother to distill those materials into a "short and plain statement
of the claim" showing plaintiffs' entitlement to relief. Fed. R. Civ. P. 8(a)(2).
Plaintiffs essentially asked the court to wade through the evidence and draft a
legally adequate complaint for them. That is not how the adversarial process
works. "Our system of justice is adversarial, and our judges are busy people. If
they are given plausible reasons for dismissing a complaint, they are not going to do
the plaintiff's research and try to discover whether there might be something to say
against the defendants' reasoning." *County of McHenry v. Ins. Co. of the West*, 438
F.3d 813, 819 (7th Cir. 2006) (citation omitted). If plaintiffs could not demonstrate
through a proposed amended complaint how the evidence cured the flaws in their
theories, the court was not required to allow them yet another tilt at the windmill.

**B.    Because Plaintiffs' Rule 59 Motion Did Not Rest On New
        Evidence, Their Request To Amend Their Complaint Was
        Untimely**

A motion to amend or alter the judgment under Rule 59(e) based on newly

discovered evidence is proper only when the evidence was unavailable to the

movant prior to the judgment.  *See Figgie Int'l, Inc. v. Miller*, 966 F.2d 1178, 1180

(7th Cir. 1992) (affirming district court's decision to deny a Rule 59 motion in the

context of a dismissal pursuant to Rule 12(b)(6) where the movant "presented no

competent evidence that was not previously available"); *accord Schiller v.

Physicians Res. Group, Inc.*, 342 F.3d 563, 569 (5th Cir. 2003); *Comm. for First

Amendment v. Campbell*, 962 F.2d 1517, 1523 (10th Cir. 1992).  As the court below

noted (Rule 59 Op. 3), the documentary evidence and deposition testimony plaintiffs

cited as "new" was in their possession before the June 21 dismissal:  information on

which plaintiffs relied contending that the Fidelity entities' "screened" mutual

funds from which Deere made choices was in their possession by May 4; information

forming the basis for their assertions that the Fidelity entities controlled the

"mapping" of participants' investments in their former plans to the options in the

Plans' investment lineup was in plaintiffs' possession by May 8, and materials

relating to their "float" assertions were provided in mid-May.  *See* R.109 (Fidelity

Defendants' Opp. to Rule 59 Motion) (identifying deposition and document

production dates).[14]

---

[14] Plaintiffs cannot contend that the discovery schedule prevented them from
analyzing the discovery materials and adapting them to plead new allegations.  On
June 6, 2007, weeks before the court ruled on the then-pending dismissal motions,

Because the discovery material was available to them before the dismissal order, plaintiffs are forced to argue that their Rule 59 motion was proper because the evidence was not available before *briefing* on the dismissal motion was closed. Pls. Br. 48.  Plaintiffs cite no authority supporting that position  They instead misrepresent one unreported, out-of-circuit district court decision as holding that "documents plaintiffs had obtained before the dismissal, but after the motion to dismiss was filed, constituted 'newly discovered evidence'" pursuant to Rule 59. Pls. Br. 48 (citing *Kurzweil v. Philip Morris Cos., Inc.*, 1997 WL 167043, at *3 (S.D.N.Y. Apr. 9, 1997)).  *Kurzweil* holds nothing of the kind.  Virtually all of the "newly-discovered" evidence at issue in *Kurzweil* came into plaintiffs' possession six months *after* the dismissal order in that case, not before.[15]  By contrast, plaintiffs here had actual possession of all the "newly-discovered" evidence, and demonstrated in their expert reports that they fully understood its alleged significance for their fiduciary allegations, weeks before the dismissal order.

If indeed discovery had revealed relevant new facts, *but see infra* at 47-48, the correct approach for the plaintiffs would have been to proffer an amended complaint *before judgment*, reformulating their allegations and theories to state a viable claim drawn from those new allegations.  Plaintiffs cannot justify their

---

plaintiffs disclosed no less than five separate expert reports which were, as plaintiffs freely admit, "based, in large part, *on their analysis of the newly discovered evidence*."  Pls. Br. 49 (emphasis added).

[15] The sole exception involved an item that first entered the public domain about a month before dismissal, but the court specifically found that plaintiffs did not have possession of it until after dismissal, and could not reasonably have been expected to discover it and call it to the court's attention through an amendment to their pleadings.  *Id.* at *4.

failure to do so.  *See Bressner*, 379 F.3d at 484 ("Without offering the district court, or this court, any reason (never mind a *good* reason) an amendment should have been permitted so late in the game, we cannot say the district court abused its discretion."); *Figgie Int'l*, 966 F.2d at 1180-81 (upholding Rule 12(b)(6) dismissal against Rule 59(e) and 15(a) challenges where movant did "not provide[] an adequate explanation for failing to ask for leave to amend before judgment was entered").  As this Court recently explained, plaintiffs who believe they can cure defects in their complaints are not "entitled to wait and see what the district court s[ays] before making any changes to the complaint," because allowing such gamesmanship "would impose unnecessary costs and inefficiencies on both the courts and party opponents."  *Pugh v. Tribune Co.*, __ F.3d __, 2008 U.S. App. LEXIS 6912, at *27 (7th Cir. Apr. 2, 2008).  Plaintiffs forfeited their opportunity to cure their defective complaint by failing to act in a timely manner.

### C.     The Evidence Plaintiffs Cited Did Nothing To Cure The Defects In Their Complaint

Plaintiffs likely did not proffer an amended complaint curing the complaint's defects because they could not.  As the district court concluded, plaintiffs' evidence showed, at most, that Fidelity identified possible investment options for Deere, and that Deere then chose options for the Plans.  Rule 59 Op. 4.  None of this evidence showed that the Fidelity entities dictated Deere's decisions as to which funds would be offered under the Plans – the only issue relevant to the Fidelity entities' fiduciary status.  *See supra* at 6-7, 26-30.

As shown above, an entity does not become a fiduciary merely by identifying potential investment options, where the named fiduciary retains authority over the decision whether to adopt the options. *See supra* note 6; DOL Br. 22. Thus, even if the Fidelity entities screened possible investment choices prior to identifying particular candidate funds for Deere's consideration (Pls. Br. 51), the Trust Agreements provided the Fidelity entities no authority to compel Deere to accept the suggested funds. The Trust Agreements gave Deere sole authority to choose the Plans' investment options, and nothing in plaintiffs' evidence comes close to demonstrating that the Fidelity entities somehow usurped Deere's authority and controlled its decisionmaking.[16]

## IV. THE DISTRICT COURT'S COSTS AWARD WAS NOT AN ABUSE OF DISCRETION

There is no merit to plaintiffs' contention that the district court's costs award included non-recoverable electronic document processing costs. Pls. Br. 53-54.

---

[16] Plaintiffs asserted below that the evidence showed that the Fidelity entities controlled Deere's choices because they made available to Deere only non-Fidelity funds that were "operationally compatible" with the Fidelity recordkeeping platform, and in "most cases," required non-Fidelity funds were required "to pay the Fidelity entity fees in exchange for being included on the Fidelity platform." A00300 ¶¶ 66-67. This charge, of course, is fundamentally at odds with plaintiffs' core theory that Fidelity somehow forced Deere to select only Fidelity investment options. And the Trust Agreements establish that Deere was at all times free to terminate its relationship with FMTC and select a different recordkeeper if it became dissatisfied with the thousands of Fidelity *and non-Fidelity* investment products supported on Fidelity's platform (A00066, A00186) – just as the plan sponsor in *Caremark* was free to terminate its PBM contract if it ever became dissatisfied with the prescription-drug options made available by the PBM's formulary. As to the fees, the cited deposition testimony does *not* show that most non-Fidelity mutual funds were required to pay fees to Fidelity. And even if some non-Fidelity funds make such payments, they in no way establish that the Fidelity entities control Deere's decisions about which funds to include in the Plans.

Electronic document processing costs generally are recoverable under 28 U.S.C. § 1920.  *See BDT Prods. v. Lexmark Int'l, Inc.*, 405 F.3d 415, 420 (6th Cir. 2005); *Ridings v. Riverside Med. Ctr.*, 2007 U.S. Dist. LEXIS 21145, at *5 (C.D. Ill. 2007).  Plaintiffs do not disagree, but they contend that the processing costs here impermissibly included $141,022 for document "selection."  Pls. Br. 54.  Plaintiffs simply misunderstand the processing costs at issue.  The costs awarded by the district court did not include the hourly costs of professional (attorney or paralegal) document review, as in the precedent plaintiffs cite, *Allen v. U.S. Steel Corp.*, 665 F.2d 689, 697 n.5 (5th Cir. 1982).  As the invoices examined by the district court showed, the electronic processing costs involved substantial per-gigabyte costs for loading and processing data collected from Fidelity servers and custodian hard drives, so that the material would be reviewable by standard discovery review tools and producible to plaintiffs.  R.120, Exs. 31-33 (showing "initial" processing charges for downloading and "final" processing charges for converting to reviewable and producible format that included metadata specifically requested by plaintiffs).  These functions were no different in substance from the scanning of paper documents into producible electronic formats, which plaintiffs agree constitutes recoverable costs.  Data within a computer system (including emails, documents, spreadsheets, and the like) cannot be reviewed until it is uploaded and converted into a readable format.  The district court did not abuse its discretion in taxing these standard and necessary document processing costs.

## CONCLUSION

For the foregoing reasons, the judgment below should be affirmed.

Respectfully submitted,

STEPHEN M. SHAPIRO
TIMOTHY S. BISHOP
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
(312) 782-0600
(312) 701-7711 (fax)

_____
WALTER DELLINGER
ROBERT N. ECCLES
BRIAN D. BOYLE
JONATHAN D. HACKER
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
(202) 383-5285
(202) 383-5414 (fax)

*Attorneys for Defendants-Appellees Fidelity Management Trust Company
and Fidelity Management & Research Company*

50

# STATUTORY ADDENDUM

29 U.S.C. § 1002(21)

(A) Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 405(c)(1)(B) [29 U.S.C. § 1105(c)(1)(B)].

(B) If any money or other property of an employee benefit plan is invested in securities issued by an investment company registered under the Investment Company Act of 1940, such investment shall not by itself cause such investment company or such investment company's investment adviser or principal underwriter to be deemed to be a fiduciary or a party in interest as those terms are defined in this title, except insofar as such investment company or its investment adviser or principal underwriter acts in connection with an employee benefit plan covering employees of the investment company, the investment adviser, or its principal underwriter. Nothing contained in this subparagraph shall limit the duties imposed on such investment company, investment adviser, or principal underwriter by any other law.

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 13,814 words excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface and type style requirements of Fed. R. App. 32(a)(5)&(6) and Circuit Rule 32(b) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2003 in 12-point Century Schoolbook for the main text and footnotes.


Dated: May 9, 2008                    _____
                                      Walter Dellinger
                                      O'MELVENY & MYERS LLP
                                      Attorney for Defendants-Appellees
                                      Fidelity Management Trust
                                      Company and Fidelity Management
                                      & Research Company

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of May, 2008, two copies of the Brief of

Defendants-Appellees Fidelity Management Trust Company and Fidelity

Management & Research Company, as well as a digital version of the Brief, were

delivered by first-class mail and electronic mail, respectively, to the following

counsel:

Jerome J. Schlichter
Daniel V. Conlisk
SCHLICTER, BOGARD & DENTON
100 South Fourth Street, Ste. 900
St. Louis, MO 63102
(314) 621-6115

Attorneys for Plaintiffs-Appellants

Charles C. Jackson
Sari M. Alamuddin
James E. Bayles, Jr.
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive, Fifth Floor
Chicago, Illinois  60601
(312) 324-1000

Attorneys for Defendant-Appellee Deere
& Co.

_____

Walter Dellinger
O'MELVENY & MYERS LLP
Attorney for Defendants-Appellees
Fidelity Management Trust Company
and Fidelity Management & Research
Company